Slip Op. 25-157

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| SEAH STEEL VINA CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant,<br><br>and<br><br>BULL MOOSE TUBE COMPANY; MARUICHI AMERICAN CORPORATION; WHEATLAND TUBE COMPANY; THE UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC; AND NUCOR TUBULAR PRODUCTS INC.,<br><br>Defendant-Intervenors. | Before: Mark A. Barnett, Chief Judge<br>Court Nos. 23-00256, 23-00257, 23-00258 |

## OPINION AND ORDER

[Remanding the U.S. Department of Commerce's affirmative finding of circumvention of the antidumping duty and countervailing duty orders on certain circular welded steel pipe products from the Republic of Korea, India, and the People's Republic of China.]

Dated: December 16, 2025

Jeffrey M. Winton, Amrietha Nellan, and Vi N. Mai, Winton & Chapman PLLC, of Washington, DC, argued for Plaintiff SeAH Steel VINA Corporation. Also on the brief were Jooyoun Jeong and Ruby Rodriguez.

Tate Walker, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for Defendant United States. On the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M.

McCarthy, Director, Franklin E. White, Jr., Assistant Director, and Stephen C. Tosini, Senior Trial Counsel.  Of counsel was Vania Y. Wang, Office of Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

Jeffrey D. Gerrish, Schagrin Associates, of Washington, DC, argued for Defendant-Intervenors Bull Moose Tube Company; Maruichi American Corporation; Wheatland Tube Company; The United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC.  Also on the brief were Roger B. Schagrin and Nicholas C. Phillips.

Alan H. Price, Robert E. DeFrancesco, III, Jake R. Frischknecht, Theodore P. Brackemyre, Kimberly A. Reynolds, and Paul A. Devamithran, Wiley Rein LLP, of Washington, DC, for Defendant-Intervenor Nucor Tubular Products Inc.

Barnett, Chief Judge: These cases come to the court as parallel challenges to three circumvention determinations by the U.S. Department of Commerce ("Commerce" or "the agency").  All orders concern some type of circular welded steel pipe ("CWP") (and tube, in the case of India) exported from the Socialist Republic of Vietnam ("Vietnam") and made using hot-rolled steel ("HRS") produced in the Republic of Korea ("Korea"), India, or the People's Republic of China ("China") (collectively referred to as "CWP products").  *See Certain Circular Welded Non-Alloy Steel Pipe From the Republic of Korea*, 88 Fed. Reg. 77,270 (Dep't Commerce Nov. 9, 2023) (final affirmative determination of circumvention of the antidumping duty order) ("*Korea Final Determination*"), and accompanying Issues & Decision Mem., A-580-809 (Nov. 2, 2023) ("*Korea I&D Mem.*");[1] *Certain Welded Carbon Steel Standard Pipes and Tubes From*

---

[1] Plaintiff challenged *Korea Final Determination* in Court No. 23-00256.  The Administrative Record for that determination is divided into a Public Administrative Record, ECF No. 28-1, and a Confidential Administrative Record, ECF No. 28-2; *see also* Analysis for the Prelim. Determination of the Antidumping Duty Investigation of CWP from Vietnam, A-552-811 (May 23, 2012), ECF No. 40-1 (contained in the

*India*, 88 Fed. Reg. 77,279 (Dep't Commerce Nov. 9, 2023) (final affirmative

determination of circumvention of the antidumping duty order) ("*India Final*

*Determination*"), and accompanying Issues & Decision Mem., A-533-502 (Nov. 2, 2023)

("India I&D Mem.");[2] *Circular Welded Carbon Quality Steel Pipe From the People's*

*Republic of China*, 88 Fed. Reg. 77,287 (Dep't Commerce Nov. 9, 2023) (final

affirmative determination of circumvention of the antidumping duty and countervailing

duty orders) ("*China Final Determination*"), and accompanying Issues & Decision Mem.,

A-570-910/C-570-911 (Nov. 2, 2023) ("China I&D Mem.")[3] (collectively, "*Circumvention*

*Determinations*").  In these *Circumvention Determinations*, Commerce found that

---

administrative record pursuant to Slip Op. 24-134 (Dec. 5, 2024)).  The public record filings also contain the relevant Federal Register notice and Issues and Decision Memorandum.  Plaintiff submitted joint appendices containing record documents from that proceeding that were cited in the parties' briefs.  *See* Confid. J.A. ("23-256 CJA"), ECF Nos. 55–58; Public J.A. ("23-256 PJA"), ECF Nos. 59–62.  Except for citations to documents contained in the respective joint appendices filed in each case, ECF citations are to filings in Court No. 23-00256.

[2] Plaintiff challenged *India Final Determination* in Court No. 23-00257.  The Administrative Record for that determination is filed on that court docket and is divided into a Public Administrative Record, ECF No. 28-1, and a Confidential Administrative Record, ECF No. 28-2.  The public record filings also contain the relevant Federal Register notice and Issues and Decision Memorandum.  Plaintiff submitted joint appendices on the docket of that case containing record documents from *India Final Determination* that were cited in the parties' briefs.  *See* Confid. J.A. ("23-257 CJA"), ECF Nos. 50–55; Public J.A. ("23-257 PJA"), ECF Nos. 56–59.

[3] Plaintiff challenged *China Final Determination* in Court No. 23-00258.  The Administrative Record for that determination is filed on that court docket and is divided into a Public Administrative Record, ECF Nos. 30-1 (antidumping), 30-3 (countervailing duty), and a Confidential Administrative Record, ECF No. 30-2 (antidumping).  The public record filings also contain the relevant Federal Register notice and Issues and Decision Memorandum.  Plaintiff submitted joint appendices on the docket of that case containing record documents from *China Final Determination* that were cited in the parties' briefs.  *See* Confid. J.A. ("23-258 CJA"), ECF Nos. 52–58; Public J.A. ("23-258 PJA"), ECF Nos. 59–62.

imports of certain CWP products completed in Vietnam using HRS inputs produced in Korea, India, or China were circumventing antidumping duty ("AD") or countervailing duty ("CVD") orders on CWP products from these countries.

Plaintiff SeAH Steel VINA Corporation ("SeAH"), a producer and exporter of CWP products from Vietnam, challenged the *Circumvention Determinations* in three separate actions, which the court joined for consideration in this proceeding.[4]  Plaintiff filed a motion for judgment on the agency record for these joined cases pursuant to U.S. Court of International Trade Rule 56.2.  Confid. Br. of Pl. [SeAH] in Supp. of its Rule 56.2 Mot. for J. on the Agency R. ("Pl.'s Br."), ECF No. 38-1; *see also* Reply Br. of Pl. [SeAH] ("Pl.'s Reply"), ECF No. 51.  Defendant United States and Defendant-Intervenors support Commerce's determinations.  *See* Def.'s Resp. to Pl.'s Mot. for J. on the Admin. Rs. ("Def.'s Resp."), ECF No. 42; Def-Ints.' Resp. in Opp'n to Pl.'s Rule 56.2 Mot. for J. on the Agency R. ("Def.-Ints.' Resp."), ECF No. 44.[5]   For the reasons

---

[4] Defendant-Intervenors moved to consolidate these cases.  Mot. to Consolidate, ECF No. 32.  Defendant opposed that motion.  Def.'s Opp'n to Def.-Ints.' Mot. to Consolidate, ECF No. 33.  Plaintiff "believe[d] that the three appeals should be consolidated but only for the purposes of briefing and argument, while the joint appendix for each appeal should be prepared and submitted separately."  Pl.'s Resp. to Mot. to Consolidate at 1, ECF No. 34.  The court "joined [the cases] for hearing and decision" and ordered the parties to submit a separate joint appendix for each case.  Order (Apr. 9, 2024) at 2, ECF No. 35.

[5] Defendant-Intervenors are Bull Moose Tube Company; Maruichi American Corporation; Wheatland Tube Company; the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC; and Nucor Tubular Products, Inc ("Nucor").  Nucor joined the response brief filed by the other Defendant-Intervenors but did not participate in the oral argument.

Court Nos. 23-00256, 23-00257, 23-00258                                    Page 5

discussed below, the court remands the *Circumvention Determinations* for reconsideration or further explanation consistent with this opinion.

BACKGROUND

I.    **Legal Framework**

If certain criteria are met through investigations by Commerce and the U.S. International Trade Commission ("ITC"), the United States may impose antidumping and countervailing duty orders on goods determined to be sold in the U.S. market at less than fair value or subsidized by a foreign government and materially injuring a U.S. industry.  *See* 19 U.S.C. §§ 1671, 1673 (governing countervailing and antidumping duties, respectively).

To prevent companies from avoiding or circumventing such orders, among other things, Congress authorized Commerce, upon making certain findings, to include "[m]erchandise completed or assembled in other foreign countries" within the scope of the orders.  *Id.* § 1677j(b).  Three subsections guide Commerce's decision making.

Pursuant to subsection (b)(1), Commerce must determine that five enumerated statutory requirements are met to reach an affirmative determination.  *Id.* § 1677j(b)(1)(A)–(E).  First, the merchandise imported into the United States must be "of the same class or kind" of merchandise that is subject to the duty order.  *Id.* § 1677j(b)(1)(A).  Second, the imported merchandise must have been "completed or assembled in another foreign country from merchandise which . . . is subject to such an order or finding, or . . . is produced in the foreign country with respect to which such order or finding applies."  *Id.* § 1677j(b)(1)(B).  Third, "the process of assembly or

completion" must be "minor or insignificant." *Id.* § 1677j(b)(1)(C). Fourth, "the value of the merchandise produced in the foreign country" to which the antidumping duty order applies[6] must be "a significant portion of the total value of the merchandise exported to the United States." *Id.* § 1677j(b)(1)(D). Finally, Commerce must "determine[] that action is appropriate . . . to prevent evasion of such order." *Id.* § 1677j(b)(1)(E). These factors comprise the "so-called mandatory factors," meaning they are required for an affirmative circumvention finding. Uruguay Round Agreements Act, Statement of Administrative Action ("SAA"), H.R. Doc. No. 103–316 vol. 1, at 893 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4216.[7]

To determine if the process of assembly or completion is "minor or insignificant," subsection (b)(2) requires Commerce to "take into account":

> (A) the level of investment in the foreign country,
> (B) the level of research and development in the foreign country,
> (C) the nature of the production process in the foreign country
> (D) the extent of production facilities in the foreign country, and
> (E) whether the value of the processing performed in the foreign country represents a small proportion of the value of the merchandise imported into the United States.

19 U.S.C. § 1677j(b)(2).

Finally, subsection (b)(3) directs Commerce to consider the following factors in determining whether to include the assembled or completed merchandise in the underlying order:

> (A) the pattern of trade, including sourcing patterns,

---

[6] The statute does not contain a parallel reference to a countervailing duty order; however, no party has argued that the absence of such parallel language is meaningful in this litigation.

[7] The SAA is the authoritative interpretation of the statute. 19 U.S.C. § 3512(d).

(B) whether the manufacturer or exporter of the merchandise [from the country subject to the order] is affiliated with the [third-country] person who uses [that] merchandise . . . to assemble or complete in the foreign country the merchandise that is subsequently imported into the United States, and
(C) whether imports into the foreign country of the merchandise [from the country subject to the order] have increased after the initiation of the investigation which resulted in the issuance of such order or finding.

*Id.* § 1677j(b)(3).

## II.  Factual Background

The United States has antidumping and countervailing duty orders on various CWP products from Korea, India, and China.  *Certain Welded Carbon Steel Standard Pipes and Tubes from India*, 51 Fed. Reg. 17,384 (Dep't Commerce May 12, 1986) (antidumping duty order); *Certain Circular Welded Non-Alloy Steel Pipe from Brazil, the Republic of Korea (Korea), Mexico, and Venezuela*, 57 Fed. Reg. 49,453 (Dep't Commerce Nov. 2, 1992) (notice of antidumping orders; amendment to final determination of sales at less than fair value); *Circular Welded Carbon Quality Steel Pipe from the People's Republic of China*, 73 Fed. Reg. 42,547 (Dep't Commerce July 22, 2008) (notice of antidumping duty order); *Circular Welded Carbon Quality Steel Pipe from the People's Republic of China*, 73 Fed. Reg. 42,545 (Dep't Commerce July 22, 2008) (notice of am. final affirmative countervailing duty determination and notice of countervailing duty order).

Commerce and the ITC investigated imports of CWP products from Vietnam in 2012 and 2016, but the investigations did not result in any duty orders.[8]  In 2012, Commerce reached an affirmative determination that CWP from Vietnam was being sold at less than fair value.  *Circular Welded Carbon-Quality Steel Pipe from the Socialist Republic of Vietnam*, 77 Fed. Reg. 64,483 (Dep't Commerce Oct. 22, 2012) (notice of final determination of sales at less than fair value).  However, Commerce did not find that countervailable subsidies were being provided to Vietnamese CWP producers or exporters, and the ITC reached a negative injury determination in the antidumping investigation.  *Circular Welded Carbon-Quality Steel Pipe From the Socialist Republic of Vietnam*, 77 Fed. Reg. 64,471 (Dep't Commerce Oct. 22, 2012) (final negative countervailing duty determination); *Circular Welded Carbon-Quality Steel Pipe from India, Oman, the United Arab Emirates, and Vietnam*, Inv. Nos. 701-TA-482-484 and 731-TA-1191-1194, USITC Pub. 4362 (Dec. 2012) (final).

In 2016, Commerce again reached an affirmative determination that CWP from Vietnam was being sold at less than fair value.  *Circular Welded Carbon-Quality Steel Pipe From the Socialist Republic of Vietnam*, 81 Fed. Reg. 75,042 (Dep't Commerce

---

[8] In each case, SeAH was selected as a mandatory respondent and individually investigated.  *See Circular Welded Carbon-Quality Steel Pipe From the Socialist Republic of Vietnam*, 77 Fed. Reg. 32,552 (Dep't Commerce June 1, 2012) (prelim. determination of sales at less than fair value and postponement of final determination); *Circular Welded Carbon-Quality Steel Pipe From the Socialist Republic of Vietnam*, 77 Fed. Reg. 19,211 (Dep't Commerce Mar. 30, 2012) (prelim. affirmative countervailing duty determination and alignment of final countervailing duty determination with final antidumping duty determination); *Circular Welded Carbon-Quality Steel Pipe From the Socialist Republic of Vietnam*, 81 Fed. Reg. 75,042 (Dep't Commerce Oct. 28, 2016) (final determination of sales at less than fair value).

Oct. 28, 2016) (final determination of sales at less than fair value).  The ITC, however,

determined that imports from Vietnam were negligible and terminated the investigation.

*Circular Welded Carbon-Quality Steel Pipe from Oman, Pakistan, the United Arab*

*Emirates, and Vietnam*, Inv. Nos. 701-TA-549, 731-TA-1299-1300, 731-TA-1299-1302-

1303, USITC Pub. 4651 (Dec. 2016) (final).

    In 2022, in response to requests by domestic parties, Commerce initiated an

inquiry into whether CWP products completed in Vietnam were circumventing the

AD/CVD orders on CWP products from Korea, India, or China.  *Circular Welded Carbon*

*Quality Steel Pipe From the People's Republic of China; Certain Circular Welded Non-*

*Alloy Steel Pipe From the Republic of Korea; Certain Welded Carbon Steel Standard*

*Pipes and Tubes From India; Certain Circular Welded Non-Alloy Steel Pipe From*

*Taiwan; Light-Walled Rectangular Pipe and Tube From the People's Republic of China;*

*Light-Walled Rectangular Pipe and Tube From the Republic of Korea; Light-Walled*

*Welded Rectangular Carbon Steel Tubing From Taiwan*, 87 Fed. Reg. 47,711 (Dep't

Commerce Aug. 4, 2022) (initiation of circumvention inquiries on the antidumping and

countervailing duty orders).[9]  SeAH was selected as a mandatory respondent for these

inquiries.  [Korea] Resp't Selection (Aug. 30, 2022), 23-256 CJA, ECF No. 55-1; [India]

---

[9] Commerce issued a negative determination for circumvention of the AD orders on
CWP products from Taiwan, finding that CWP products imported into the United States
during the inquiry period were not completed in Vietnam using HRS manufactured in
Taiwan.  *Certain Circular Welded Carbon Steel Pipes and Tubes From Taiwan and
Circular Welded Non-Alloy Steel Pipe From Taiwan*, 88 Fed. Reg. 53,864 (Dep't
Commerce Aug. 9, 2023) (negative final determinations of circumvention of the
antidumping duty orders).

Court Nos. 23-00256, 23-00257, 23-00258                                      Page 10

Resp't Selection (Aug. 30, 2022), 23-257 CJA, ECF No. 50-2; [China] Resp't Selection

(Aug. 30, 2022), 23-258 CJA, ECF No. 52-2.

Commerce issued preliminary determinations of circumvention for all four orders

regarding the three countries.  *Certain Circular Welded Non-Alloy Steel Pipe From the*

*Republic of Korea*, 88 Fed. Reg. 21,989 (Dep't Commerce Apr. 12, 2023) (prelim.

affirmative determination of circumvention of the antidumping duty order), and

accompanying Prelim. Decision Mem. (Apr. 6, 2023) ("Korea Prelim. Mem."), 23-256

PJA, ECF No. 61-2; *Certain Welded Carbon Steel Standard Pipes and Tubes From*

*India*, 88 Fed. Reg. 21,994 (Dep't Commerce Apr. 12, 2023) (prelim. affirmative

determination of circumvention of the antidumping duty order), and accompanying

Prelim. Decision Mem. (Apr. 6, 2023) ("India Prelim. Mem."), 23-257 PJA, ECF No. 58-

2; *Circular Welded Carbon Quality Steel Pipe From the People's Republic of China*, 88

Fed. Reg. 21,975 (Dep't Commerce Apr. 12, 2023) (prelim. affirmative determination of

circumvention of the antidumping duty and countervailing duty orders), and

accompanying Prelim. Decision Mem. (Apr. 6, 2023) ("China Prelim. Mem."), 23-258

PJA, ECF No. 61-2.

In its final determination, Commerce continued to find that CWP products

completed or assembled in Vietnam using HRS from Korea, India or China were

circumventing the relevant duty orders.  *See Circumvention Determinations*.  These

Court Nos. 23-00256, 23-00257, 23-00258                                      Page 11

appeals followed.  The court heard oral argument on September 30, 2025.  Oral Arg.

(Sept. 30, 2025), ECF No. 75.[10]

JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to section 516A(a)(2)(B)(vi) of the Tariff Act of

1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(vi) (2018), and 28 U.S.C. § 1581(c)

(2018).[11]  The court will uphold an agency determination that is supported by substantial

evidence and otherwise in accordance with law.  19 U.S.C. § 1516a(b)(1)(B)(i).

DISCUSSION

**I.    Relevance of Prior AD/CVD Investigations**

**A.  Parties' Contentions**

Plaintiff first argues that Commerce was bound by its previous determinations

that CWP products from Vietnam were not dumped or subsidized and therefore exports

from Vietnam could not be subject to antidumping or countervailing duty duties.  Pl.'s Br.

at 11–22; Pl.'s Reply at 3–12.  Plaintiff contends that for SeAH's U.S. shipments to be

subject to antidumping or countervailing duties, Commerce must first make an

affirmative dumping or subsidy finding with respect to CWP products produced in

Vietnam, and Commerce has not done so.  Pl.'s Br. at 15.  Plaintiff argues that

---

[10] Subsequent citations to the oral argument include the time stamp from the recording, which is available at https://www.cit.uscourts.gov/sites/cit/files/20250930_23-256_MAB.mp3.

[11] Citations to the Tariff Act of 1930, as amended, are to Title 19 of the U.S. Code.  All references to the U.S. Code are to the 2018 edition unless otherwise specified.

Commerce was without authority to initiate circumvention inquiries after the negative AD/CVD determinations.  *Id.* at 20–22.[12]

Defendant contends that Commerce properly rejected Plaintiff's argument that previous investigation determinations preclude a circumvention finding here.  Def.'s Resp. at 13–23; *see also* Def.-Ints.' Resp. at 14–20.  Defendant explains that nothing in the circumvention statute requires Commerce to consider such previous determinations, Def.'s Resp. at 13, and an investigation involves distinct statutory provisions, *id.* at 14–15.  Defendant points out that if affirmative circumvention findings may only occur when there has been a previous antidumping or countervailing duty determination, then the circumvention provision would be superfluous.  *Id.* at 15.

### B.  Analysis

Plaintiff fails to provide statutory support for its argument that Commerce must make an affirmative finding of dumping or subsidization with respect to CWP products from Vietnam in order to make an affirmative finding of circumvention.[13]  Countervailing

---

[12] Plaintiff also argues that Commerce may not assign the dumping margins or subsidy rates of other companies to SeAH.  Pl.'s Br. at 22–24; Pl.'s Reply at 12–14.  However, Plaintiff did not raise this issue in its administrative case brief to Commerce.  *See, e.g.,* Second Case Br. of SeAH Steel VINA Corp. (June 1, 2023) ("Second Case Br."), 23-256 CJA, ECF No. 58-3.  Plaintiff failed to exhaust its administrative remedies by raising this issue in the first instance before this court and has not argued that any exception to the exhaustion requirement applies.  Therefore, the court declines to consider the issue.  *See* 28 U.S.C. § 2637(d).

[13] During oral argument, Plaintiff pointed to section 1677j(b)(1)(E) as the statutory basis for its claim.  Oral Arg. 0:05:05–0:11:16.  Plaintiff argued that the dictionary definition of "evasion"—the act of avoiding a duty or responsibility—as used in that subsection, means that prior investigations into dumping or subsidization are relevant to the circumvention determination.  However, this argument is forfeited because Plaintiff

and antidumping duties are imposed in accordance with 19 U.S.C. §§ 1671 (CVD) and 1673 (AD), while circumvention of those orders is addressed by 19 U.S.C. § 1677j.  For the purposes of a circumvention inquiry, the relevant AD or CVD orders are those that have been imposed on the country subject to the original order (the source of the input material that is assembled or completed in the third country), rather than any AD/CVD investigations that may have been conducted with respect to the third country that is the alleged conduit of circumvention.  Indeed, "[c]ircumvention can only occur if the articles are from a country *not* covered by the relevant AD or CVD orders."  *Bell Supply Co., LLC v. United States*, 888 F.3d 1222, 1229 (Fed. Cir. 2018) (emphasis added).  To the extent that Plaintiff emphasizes "the concern expressed by Congress . . . that products subject to an *existing* antidumping order might be shipped in incomplete form and completed elsewhere," Pl.'s Br. at 18, that concern applies to the existing orders covering the three *subject* countries that are being evaded through assembly and completion in Vietnam (the third country).  That concern is not obviated simply because Commerce and the ITC did not find injurious dumping or countervailable subsidies with respect to the third country in earlier investigations.  Accordingly, Commerce's prior negative AD/CVD determinations on CWP products from Vietnam do not constrain

---

failed to raise it in its moving brief (and only alluded to it in Plaintiff's reply brief).  Pl.'s Reply at 11; *see Novosteel SA v. United States*, 284 F.3d 1261, 1273–74 (Fed. Cir. 2002).  Even if the argument had been timely raised, Plaintiff did not adequately explain why the duty being avoided must pertain to an order on CWP products from Vietnam as opposed to CWP products from the three countries subject to the AD/CVD orders.

Commerce's ability to find circumvention with respect to those same CWP products made from HRS inputs produced in Korea, India or China.

## II.   Requirements for "Assembly or Completion"

### A. Parties' Contentions

Plaintiff argues that "production" of a finished good, here, the CWP products in question, is not completion or assembly.  Pl.'s Br. at 24–25.  Plaintiff first focuses on the legislative history of the circumvention provision, discussing actions that occurred after an antidumping duty order was placed on color televisions.  *Id.* at 26–30.  According to Plaintiff, the House Committee Report on the bill adding the circumvention provisions to the statute indicates that "'completed or assembled' must be understood as the process by which an 'incomplete' product is turned into a finished product."  *Id*. at 28 (discussing H.R. Rep. No. 100-40, pt. 1, at 134 (1987)).  Plaintiff further relies on the General Rules of Interpretation ("GRI(s)") to the Harmonized Tariff Schedule of the United States ("HTSUS"), which provide that an "incomplete" article must have the same "essential character" as the completed item.  *Id*. at 28–29 (citing GRI 2(a)); *see also* Pl.'s Reply at 15.[14]  Finally, Plaintiff points to legislative history to argue that the circumvention provisions were meant to address "slight" changes to the method of production, and that SeAH's "production of pipe using steel coils purchased from the same suppliers" from

---

[14] In the reply brief, Plaintiff argues for the court to apply *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), as a "new standard of review."  Pl.'s Reply at 2.  *Loper Bright* does not alter the court's statutory standard of review, *see* 19 U.S.C. § 1516a; rather, it declares that "[c]ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority," *Loper Bright*, 603 U.S. at 412.  Plaintiff does not otherwise develop arguments based on *Loper Bright* and the court will not develop such arguments on Plaintiff's behalf.

which SeAH's Korean parent purchases coils for its own production process does not constitute a slight change because the "*entire* production process for [SeAH's] Korean parent had been transferred to Vietnam."  Pl.'s Br. at 31.

Defendant disagrees with Plaintiff's interpretation of what constitutes "assembly or completion."  Def.'s Resp. at 23–27; *see also* Def.-Ints.' Resp.at 20–28.  Defendant argues that Plaintiff's "reading of 'assembly or completion' . . . is contradicted by the ordinary meaning of these terms" and unsupported by case law.  Def.'s Resp. at 24.

### B.  Analysis

Producing finished CWP products "commences with the production of the input or component made in and imported from the subject country (in this case, HRS)." Korea I&D Mem. at 29.  The production process for HRS consists of "high-intensity steps to turn raw materials into processed products," including "(1) melting and refining; (2) casting molten steel into semifinished forms; and (3) hot-rolling semi-finished forms into HRS."  *Id.* at 23.  This is followed by "slitting, welding, forming, testing, finishing, and galvanizing" to produce pipe from the HRS.  *Id.*  Commerce's determination that the latter steps taken to finalize the purchased HRS into CWP products in Vietnam constitute assembly or completion in the context of the overall production process, *see id.*, is supported by substantial record evidence and past precedent, *see Al Ghurair Iron & Steel LLC v. United States,* 45 CIT __, __, 536 F. Supp. 3d 1357, 1366 (2021) (sustaining Commerce's affirmative circumvention determination when the latter steps of production in the foreign country involved "trimming, pickling, cold rolling, hot-dip galvanizing, coating, slitting and cutting"), *aff'd*, 65 F.4th 1351 (Fed. Cir. 2023).

Plaintiff relies on the discussion of the color televisions proceeding in the legislative history to define "assembly or completion" as the "process by which an 'incomplete' product is turned into a finished item." Pl.'s Br. at 28. Plaintiff's claim that, for circumvention purposes, an incomplete article must bear the "essential character" of the complete product, *id.* at 29, and that production of pipe from imported coils does not constitute completion because steel coils lack the essential characteristics of steel pipe, *id.* at 30, is not grounded in the law. Plaintiff offers no reason why the HTSUS or GRIs should guide the court's interpretation of the circumvention statute, 19 U.S.C. § 1677j. The HTSUS and the circumvention provision of the Tariff Act are distinct statutes.[15] While the GRIs, on their face, govern the "[c]lassification of goods in the tariff schedule," HTSUS, General Rules of Interpretation (preamble to the rules), the court interprets the circumvention statute using the rules of statutory interpretation. And considering how the concepts of "process" and "production" are intertwined, Plaintiff's definition of assembly as a process of completion does not undermine Commerce's application of that definition to the production of a finished good. *See* 19 U.S.C. § 1677j(b)(2)(C) (listing "the nature of the *production process*" as a factor "[i]n determining whether the *process* of assembly or completion is minor or insignificant" (emphases added)).

---

[15] While the HTSUS is considered statutory law, pursuant to 19 U.S.C. § 1202, "[t]he Harmonized Tariff Schedule of the United States . . . is not published in the Code. A current version of the Harmonized Tariff Schedule is maintained and published periodically by the United States International Trade Commission." 19 U.S.C. § 1202.

Moreover, a process employed in a third country that substantially transforms the merchandise—beyond a "slight" change[16]—and consequently locates the merchandise's country of origin in the third country pursuant to the regulations governing scope inquiries, can nevertheless be found to be "minor or insignificant" pursuant to a circumvention inquiry and, thus, subject that merchandise to an AD or CVD order. *Bell Supply*, 888 F.3d at 1230–31 ("[E]ven if a product assumes a new identity, the process of 'assembly or completion' may still be minor or insignificant, and undertaken for the purpose of evading an AD or CVD order.").[17]  Thus, Plaintiff has

---

[16] Plaintiff suggests that SeAH's production in Vietnam using coil supplied from the countries subject to the orders is a "transfer" of the "entire production process" and thus not a "slight" change as intended by the circumvention statute.  Pl.'s Br. at 30–31.  Plaintiff does not, however, identify factual support for its argument that SeAH's use of subject country HRS to produce CWP products was a transfer of the entire production process.

[17] For example, the *Bell Supply* court discussed that while "hot-rolled steel or cold-rolled steel from China [may] be 'substantially transformed' when it is processed into corrosion-resistant steel [("CORE")] in Vietnam," Commerce nevertheless "preliminarily determine[d] that imported [CORE] products from Vietnam circumvented AD and CVD orders directed to steel products from China."  888 F.3d at 1230–31 (internal citation omitted).  In its final determination, Commerce "continue[d] to find, consistent with the *Preliminary Determination*, that CORE, produced in [Vietnam] . . . [is] circumventing the AD and CVD orders on CORE from China" even "where we have previously found that a particular process results in substantial transformation."  Issues and Decision Mem. for Anti-Circumvention Inquiries on AD/CVD Orders on Certain CORE Prods. from China, A-570-026/C-570-027 (May 16, 2018) at 1, 13–14.  Commerce further explained that "[t]here is nothing inherently contradictory in finding input substrate to be substantially transformed into a finished product, in terms of its physical characteristics and uses, while also finding the process of effecting that transformation to be minor vis-à-vis the manufacturing process, as a whole, for producing the finished product."  *Id.* at 18.  Commerce's decision memoranda are publicly available at https://access.trade.gov/public/FRNoticesListLayout.aspx, with separate links for pre- and post- June 2021 memoranda.

failed to identify any flaw in Commerce's minor or insignificant completion or assembly analysis.

### III.  U.S. Production as Comparator

#### A.  Parties' Contentions

Plaintiff contends that its operations in Vietnam cannot be minor or insignificant because the operations are essentially identical to those of U.S. producers of CWP products that requested the circumvention inquiry.  Pl.'s Br. at 33–34; Pl.'s Reply 21–24. Plaintiff argues that Commerce erred by not comparing Vietnamese production to the U.S. production process because the agency is not limited to only the factors listed in the statute.  *See* Pl.'s Br. at 34.

Defendant responds that Commerce properly rejected SeAH's proposal to use the U.S. industry as a comparator.  Def.'s Resp. at 27–29; *see also* Def.-Ints.' Resp. at 13.  According to Defendant, because 19 U.S.C. § 1677j(b)(2) directs Commerce to "take into account" certain factors in determining whether assembly or completion is minor or insignificant, and the comparability of U.S. industry is not a listed factor, Commerce is not obligated to consider the comparability with the U.S. industry.  Def.'s Resp. at 27–28; *see also* Def.-Ints.' Resp. at 28–30.  Defendant maintains that the statute instead directs Commerce to compare production information for manufacturing the CWP products in Vietnam to the production information for the HRS from a country subject to the AD/CVD orders.  Def.'s Resp. at 27–28.

### B. Analysis

In determining whether the process of assembly or completion in Vietnam is minor or insignificant, Commerce considered various factors pursuant to 19 U.S.C. § 1677j(b)(2)—level of investment, research and development, production process, and extent of production facilities—in the foreign country where merchandise is completed or assembled from merchandise subject to an AD/CVD order.  Specifically, Commerce compared SeAH's level of investment in Vietnam, the nature of the production process in Vietnam, and the extent of production facilities and equipment in Vietnam—to those of input (HRS) producers in the subject countries (Korea, India, and China).  *See, e.g.*, Korea I&D Mem. at 28–29.  Relying on its explanations in past proceedings "examining circumvention in the context of downstream steel production," *id.* at 29, Commerce acknowledged that although HRS is not the same class or kind of merchandise as finished pipe, the production of HRS is relevant to understanding how the latter steps fit into the overall production process, *see, e.g.*, *id.* at 29–30 (first citing, *inter alia*, Issues and Decision Mem. for Oil Country Tubular Goods from China, A-570-943/C-570-944 (Nov. 19, 2021) at 6–7; then citing Issues and Decision Mem. for the Anti-Circumvention Inquiries Involving the UAE on the AD/CVD Orders on Certain CORE from China, A-570-026/C-570-027 (July 6, 2020) at 18).  Commerce also explained that comparing the levels of investment, production processes, and production facilities in Vietnam to the corresponding upstream factors in the countries subject to the AD/CVD orders is consistent with its judicially-affirmed practice.  *See, e.g.*, *id.* at 30–31 (citing *Al Ghurair*, 65 F.4th at 1359–61).

Court Nos. 23-00256, 23-00257, 23-00258                          Page 20

While Plaintiff would prefer Commerce to compare the Vietnamese production process to the production process utilized by the U.S. companies that requested the circumvention inquiry, Plaintiff provides no statutory basis for that preference. Moreover, the statutory circumvention provisions are consistent with Commerce's comparison to the production process for the HRS in the countries subject to the AD/CVD orders. Specifically, both sections 1677j(b)(1)(D) and 1677j(b)(2)(E) speak in terms of the value of the merchandise exported to the United States as compared, respectively, to the value of the input produced in the country subject to the AD/CVD orders or to the value of the processing performed in the third country (here, Vietnam). Commerce's comparison parallels that of section 1677j(b)(1)(D), which directs the administering authority here to compare the value of the HRS produced in the subject countries with the value of the CWP products completed or assembled in Vietnam and exported to the United States.

Furthermore, Plaintiff has failed to establish that a comparison to the U.S. industry is relevant for the purposes of the circumvention determination. While Plaintiff suggests that the domestic industry may no longer be considered "producers" by Commerce as a result of such a comparison, Pl.'s Br. at 34; Pl.'s Reply at 23–24, Plaintiff did not challenge the domestic industry's ability to request the circumvention inquiry or otherwise challenge its standing with respect to the AD/CVD orders. Absent a justiciable challenge to the domestic industry's status, the court will not engage with Plaintiff's "what if" scenarios.

**IV.    Substantial Evidence to Support Commerce's Determination**

          **A.  Parties' Contentions**

Plaintiff contends that Commerce failed to consider properly the factors identified in 19 U.S.C. § 1677j(b)(3) ("the (b)(3) factors").  Pl.'s Br. at 35–41; Pl.'s Reply 24–27. Plaintiff argues that Commerce was required to make a finding pursuant to 19 U.S.C. § 1677j(b)(1)(E) and that such a finding must be informed by the (b)(3) factors.  Pl.'s Br. at 35–36.  Plaintiff further argues that, because Commerce's findings on the (b)(3) factors were "mixed and inconclusive" and Commerce failed to explain what "other factors" the agency considered, Commerce's affirmative determinations lack substantial evidence.  *Id.* at 36–37; *see also id.* at 40–41 (acknowledging that Commerce may consider other factors beyond the three enumerated in subsection (b)(3)).  Plaintiff also asserts that the three enumerated factors do not support Commerce's finding.  *Id.* at 37–40.[18]

---

[18] Commerce, in its preliminary decision memoranda, pointed to "the totality of factors," including the (b)(3) factors, to "determine that action is appropriate to prevent evasion . . . pursuant to [subsection (b)(1)(E)]."  Korea Prelim. Mem. at 23; *see also* India Prelim. Mem. at 23; China Prelim. Mem. at 24.  While Plaintiff did not include in its administrative case brief any argument that Commerce did not explain, or point to evidence supporting, its subsidiary finding with respect to 19 U.S.C. § 1677j(b)(1)(E), Plaintiff did make arguments as to the evidentiary basis for each of the (b)(3) factors. *See, e.g.*, Second Case Br. at 21–23.  To the extent that Plaintiff did not exhaust its administrative remedies for the particular argument it makes before this court, neither Defendant nor Defendant-Intervenors argue that the court should decline to address it. Non-jurisdictional exhaustion claims are "subject to waiver and forfeiture."  *Santos-Zacaria v. Garland*, 598 U.S. 411, 423 (2023).  Here, Defendant has waived any failure-to-exhaust claim, and the record and arguments made are sufficient to permit the court to address Plaintiff's argument (which is otherwise intertwined with its (b)(3) arguments).

Defendant takes a different approach to the role of subsection (b)(3).  According to Defendant, "[i]f other statutory criteria and factors in (b)(1) and (b)(2) supportive of affirmative determinations outweigh the (b)(3) factors, then such determinations are both reasonable and lawful."  Def.'s Resp. at 30; *see also* Def.-Ints.' Resp. at 33.

### B.  Additional Legal Background

Subsection (b)(1)(E) requires Commerce to "determine that action is appropriate . . . to prevent evasion."  The statute uses "and" to conjoin subsection (b)(1)(E) with the factors enumerated in subsection (b)(1)(A)–(D), thereby signaling that it is a coequal factor that must be independently satisfied for an affirmative circumvention finding.  The significance of subsection (b)(1)(E) beyond the factors in subsection (b)(1)(A)–(D) is also highlighted by the former subsection's omission from section 1677j(a)(1), which addresses merchandise completed or assembled in the United States.  Section 1677j(a)(1) otherwise mirrors section 1677j(b)(1) by listing the same four factors (A) through (D) as are found in subsection (b)(1).  It is well settled "that a statute must, if possible, be construed in such a fashion that every word has some operative effect." *United States v. Nordic Village Inc.*, 503 U.S. 30, 36 (1992); *see also China Diesel Imports, Inc. v. United States*, 18 CIT 1086, 1090, 870 F. Supp. 347, 351 (1994) ("Courts are required to give effect to each word of a statute, whenever possible.").  Therefore, Congress's addition of subsection (b)(1)(E) to section 1677j(b) indicates that it intended for the determination of whether action is appropriate with respect to merchandise completed or assembled in other foreign countries to require something more than evaluating the factors in subsection (b)(1)(A)–(D).

### C.  Summary of (b)(3) Factors

Commerce evaluated the (b)(3) factors to determine whether action is appropriate pursuant to subsection (b)(1)(E).  *See, e.g.*, Korea I&D Mem. at 34.  For all three countries, Commerce found "that [the (b)(3) factors] are mixed, but none of them are dispositive in [the] circumvention analysis," and that the "totality of factors in this inquiry" warranted an affirmative finding of circumvention.[19]  *Id.* at 35; *see also* India I&D Mem. at 35; China I&D Mem. at 37.

### 1.  Affiliation

With respect to affiliation, Commerce acknowledged that SeAH is not affiliated with any company producing HRS in any of the subject countries.  Korea I&D Mem. at 35; India I&D Mem. at 35; China I&D Mem. at 37.  Commerce noted that while

---

[19] Plaintiff claims that "all three of the [(b)(3)] statutory factors pointed against taking anticircumvention actions."  Pl.'s Br. at 6; *see also* Pl.'s Reply at 26.  With respect to patterns of trade, Plaintiff points to the reduction in SeAH's exports of CWP from Vietnam to the United States from 2017 to 2021, which is "not consistent with a claim that the third-country producer is circumventing an order" given that "Commerce takes circumvention action only when imports from the third-country have increased much faster than the imports from the countries subject to the order."  Pl.'s Br. at 37–38.  With respect to imports into Vietnam, Plaintiff noted that from 2017 to 2021, SeAH's purchases of hot-rolled coils from Korea and China decreased, and that while SeAH's purchases of hot-rolled coil from India increased, these were "necessarily . . . used in the production of products other than CWP exported to the United States, since . . . [SeAH's] total exports of CWP produced using India hot-rolled coils to the United States fell."  *Id.* at 40.  While Plaintiff has pointed to *some* data that may not support a finding of circumvention, this is not inconsistent with Commerce's claim that the data are "mixed."  For example, as Defendant explains, Plaintiff did not consider SeAH's data showing an "increase in the quantity of its CWP exports to the United States produced from hot-rolled steel imported from Korea."  Def.'s Resp. at 31–32.  In addition, SeAH's argument appears to be based only on data examining the four-year period from 2017 to 2021, though Commerce also compared country-wide data across two periods, 2012 to 2016 and 2017 to 2021.

circumvention is more likely to occur when the producer in the country subject to an order is affiliated with the third country company performing the completion or assembly, such affiliation is not a prerequisite to finding circumvention.  Korea I&D Mem. at 36; India I&D Mem. at 36; China I&D Mem. at 37.

### 2. Patterns of Trade and Imports into Vietnam

While Commerce's analysis of SeAH's patterns of trade and imports of HRS was limited to the inquiry period (i.e., 2017–2021), Commerce's analysis of country-wide data not only evaluated changes within the 2017–2021 period but also compared the pre-inquiry 2012–2016 period to the 2017–2021 period.  Patterns of trade and imports into Vietnam specific to each country are summarized below.

### i. Korea

Comparing the 2012–2016 period to the 2017–2021 period, "exports of CWP from Vietnam increased to the United States and . . . the quantity of CWP exported from Korea to the United States also increased" while "Vietnam's sourcing of HRS from Korea decreased."  Korea Prelim. Mem. at 19.  On the other hand, within that 2017 to 2021 period, imports of CWP products into the United States from Vietnam and Korea both decreased.  [Korea] Prelim. Analysis Mem. (Apr. 6, 2023) at 6, 23-256 CJA, ECF No. 58-3.

Examining the later four-year period, from 2017 to 2021, SeAH's data on its purchases of HRS and sales of CWP to the United States "do not show that there is a definitive increase in the quantity of HRS imported [into Vietnam] from Korea" but do show an increase in CWP products exported to the United States produced from

Korean HRS.  Korea Prelim. Mem. at 19.  Total imports of CWP products into the United

States from SeAH decreased but were "nonetheless . . . not insignificant."  Korea I&D

Mem. at 38.  In any case, Commerce stated that "this factor alone is [not] dispositive"

and that SeAH's fluctuations of HRS purchases from the subject country "did not detract

from the totality of evidence considerations which supported an affirmative

circumvention determination."  *Id.*

### ii.    India

Comparing the 2012–2016 period to the 2017–2021 period, "the quantity of pipe

and tube exported from India to the United States increased even more [than the

increase in exports of pipe and tube from Vietnam to the United States]," and "Vietnam's

sourcing of HRS from India increased."  India Prelim. Mem. at 19.

Examining the later four-year period, from 2017 to 2021, SeAH's data "show an

increase in the quantity of HRS imported from India," but "[t]he data do not show . . .

that there was a subsequent increase in the quantity of pipe and tube exports to the

United States produced from HRS imported from India."  India Prelim. Mem. at 19.

SeAH's "pipe exports to the United States produced from HRS imported from India

declined from 2017 to 2021" but were "nonetheless . . . not insignificant."  India I&D

Mem. at 38.  As with Korea, Commerce stated that "this factor alone is [not] dispositive"

and that SeAH's fluctuations of HRS purchases from the subject country "did not detract

from the totality of evidence considerations which supported an affirmative

circumvention determination."  *Id.*

### iii. China

Comparing the 2012–2016 period to the 2017–2021 period, exports of CWP from Vietnam increased to the United States and the quantity of CWP exported from China to the United States decreased while Vietnam's sourcing of HRS from China increased. China Prelim. Mem. at 20.

Within the 2017 to 2021 period, SeAH's "pipe exports to the United States produced from HRS imported from China declined" but were "nonetheless . . . not insignificant." China I&D Mem. at 39. As with Korea and India, Commerce stated that "this factor alone is [not] dispositive" and that SeAH's fluctuations of HRS purchases from the subject country[20] "did not detract from the totality of evidence considerations which supported an affirmative circumvention determination." *Id.* at 39–40.

### D. Analysis

Commerce ultimately concluded that the (b)(3) factors were "mixed and inconclusive" for all countries but nevertheless found that action was appropriate to prevent evasion. Korea Prelim. Mem. at 20; India Prelim. Mem. at 20; China Prelim. Mem. at 22. Specifically, Commerce concluded its preliminary determination with the assessment that "[u]pon taking into consideration [section 1677j(b)(3)], . . . action is appropriate to prevent evasion of the *Order* pursuant to [section 1677j(b)(1)(E)]." Korea

---

[20] SeAH's imports of HRS from China decreased in this time frame. [China] Prelim. Analysis Mem. (Apr. 6, 2023) at 7, 23-258 CJA, ECF No. 58-1 ("[T]he quantity of HRS imported from China decreased from . . . 2017 to . . . 2021."). Commerce seems to have stated in error that the data "show an increase in the quantity of HRS imported from China." China Prelim. Mem. at 21.

Prelim. Mem. at 23; *see also* India Prelim. Mem. at 23; China Prelim. Mem. at 24.

Commerce, however, failed to explain how factors that are "mixed" enabled the agency

to reach the conclusion that action was appropriate.  In fact, Commerce's final

determination suggests that action was deemed appropriate based, instead, on its

consideration of factors (b)(1)(A)–(D):

> [N]otwithstanding Commerce's finding . . . that [SeAH] is not affiliated with
> any company located in the subject country that produces [HRS],
> Commerce nevertheless determined, based on the totality of factors in this
> inquiry . . . that an affirmative finding of circumvention of the order is
> warranted.  In other words, we determined . . . that a lack of affiliation
> under section [1677j(b)(3)(B)], in itself, does not outweigh our
> determination that the statutory criteria under sections [1677j(b)(1)(A)–(D)]
> have been satisfied, and the remaining elements under section
> [1677j(b)(3)] otherwise *did not detract from a finding that an action is
> appropriate* pursuant to section [1677j(b)(1)(E)].

Korea I&D Mem. at 35; India I&D Mem. at 35; China I&D Mem. at 37 (emphasis added).

The assertion that the (b)(3) factors did not detract from a finding that an action is

appropriate assumes that action was found to be appropriate on some other grounds.

However, Commerce did not identify any other grounds beyond the factors that it was

already required to find pursuant to section 1677j(b)(1)(A)–(D).  Because section

1677j(b)(1)(E) must be construed to have some operative effect, *see Nordic Village Inc.*,

503 U.S. at 36, Commerce must reconsider or further explain its basis for the affirmative

circumvention finding.[21]  To the extent that Commerce has in fact relied upon "other"

---

[21] Section 1677j(b)(3)(C) requires consideration of "whether imports into the foreign
country of the merchandise [from the country subject to the order] have increased after
the initiation of the investigation which resulted in the issuance of such order or finding."
19 U.S.C. § 1677j(b)(3)(C); *see also Al Ghurair*, 65 F.4th at 1356 (comparing the
periods before and after it initiated the investigations that led to the *original* AD/CVD

factors that are distinct from factors (b)(1)(A)–(D) to support its determination that action is appropriate pursuant to subsection (b)(1)(E), Commerce must identify what these "other" factors are and identify the substantial evidence that supports its finding. *See* Korea Prelim. Mem. at 20; India Prelim. Mem. at 20; China Prelim. Mem. at 21–22 ("Commerce finds that, in this instance, placing more weight on the patterns of trade is not appropriate when *other* factors support an affirmative determination." (emphasis added)).

**CONCLUSION AND ORDER**

In accordance with the foregoing, it is hereby

**ORDERED** that Commerce's *Circumvention Determinations* are remanded to the agency for reconsideration or further explanation consistent with this opinion; it is further

**ORDERED** that Commerce shall file a separate remand redetermination for each final determination on the docket of the appropriate case on or before March 16, 2026; it is further

---

orders).  To the extent that Commerce reconsiders its analysis of the (b)(3) factors, it should explain the basis for the time periods that it used.  According to the preliminary decision memorandum, Commerce considered "whether imports of HRS into Vietnam have increased after initiation of the investigation that resulted in the issuance of the *Order*, which dates back to 1992."  Korea Prelim. Mem. at 20; *see also* India Prelim. Mem. at 20 ("*Order* . . . dates back to 1986"); China Prelim. Mem. at 22 ("*Orders* . . . date back to 2008").  However, Commerce has not reconciled these statements and the statutory requirements with its consideration of the 2012–2016 versus 2017–2021 periods, as well as changes within the latter period, i.e., 2017–2021, for each of the three countries.

Court Nos. 23-00256, 23-00257, 23-00258                                   Page 29

     **ORDERED** that, within 10 days of filing each remand redetermination, Commerce shall file a certified list of any new administrative record documents accompanying each remand on the relevant case docket; and it is further

     **ORDERED** that, within 10 days of filing each remand redetermination, the parties shall file a joint status report on the docket of each case addressing (1) whether the court should continue to join these cases for hearing and decision or should review each remand redetermination individually; (2) if proposing to continue with joint consideration, whether it is necessary to maintain separate joint appendices for the briefing on remand; and (3) a proposed briefing schedule (or schedules, if proceeding individually) consistent with the parties' views on items (1) and (2).

                                          /s/     Mark A. Barnett
                                          Mark A. Barnett, Chief Judge

Dated: <u>December 16, 2025</u>
        New York, New York