A-570-910
Remand
Slip Op. 25-157
**Public Version**
E&C/IV:  KH

**SeAH Steel VINA Corporation v. United States**
**Court No. 23-00258, Slip Op. 25-157 (CIT 2025)**
**Circular Welded Carbon Quality Steel Pipe from the People's Republic of China**

**FINAL RESULTS OF REDETERMINATION**
**PURSUANT TO COURT REMAND**

**I.      SUMMARY**

The U.S. Department of Commerce (Commerce) prepared these final results of redetermination pursuant to the remand order of the U.S. Court of International Trade (CIT or the Court) in *SeAH Steel VINA Corporation v. United States*, Court No. 23-00258, Slip Op. 25-157 (CIT December 16, 2025) (*Remand Order*).  These final results of redetermination concern *Circular Welded Carbon Quality Steel Pipe From the People's Republic of China:  Final Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders*, 88 FR 77287 (November 9, 2023) (*Final Determination*), and accompanying Issues and Decision Memorandum (IDM).

In the *Remand Order*, the Court remanded the *Final Determination* to Commerce to explain what other factors, besides those under sections 781(b)(1)(A) through (D) of the Tariff Act of 1930, as amended (the Act), supported its affirmative finding under section 781(b)(1)(E) of the Act.[1]  On remand, we have reconsidered our determination in the *Final Determination* and now find that action, in the form of an affirmative circumvention determination, is not appropriate to prevent evasion of the *Orders*[2] pursuant to section 781(b)(1)(E) of the Act.  In

---

[1] *See Remand Order* at 21-28.
[2] *See Notice of Antidumping Duty Order:  Circular Welded Carbon Quality Steel Pipe from the People's Republic of China*, 73 FR 42547 (July 22, 2008); and *Circular Welded Carbon Quality Steel Pipe from the People's Republic of*

making this redetermination, pursuant to the Court's *Remand Order*,[3] we considered the factors under section 781(b)(3) of the Act and find that patterns of trade show that U.S. imports of circular welded carbon quality steel pipe (CWP) from the Socialist Republic of Vietnam (Vietnam) have increased, and that Vietnamese imports of hot-rolled steel (HRS) sourced from the People's Republic of China (China) have increased.  In making this determination, we accounted for and further explain the factors under section 781(b)(3) of the Act in accordance with the *Remand Order*.[4]  Accordingly, in these final results of redetermination, we find that record evidence does not support that action is appropriate to prevent evasion of the *Orders* under section 781(b)(1)(E) of the Act, and as a result we make a negative determination of circumvention.

## II.    BACKGROUND

In the *Final Determination*, Commerce determined that CWP completed in Vietnam using China-origin HRS and subsequently exported from Vietnam to the United States is circumventing the *Orders* on a country-wide basis.[5]  As a result, in accordance with section 781(b) of the Act, Commerce determined that the merchandise subject to the circumvention inquiry should be included within the scope of the *Orders*.[6]  Commerce determined, in relevant part, that action is appropriate to prevent evasion of the *Orders*, pursuant to section 781(b)(1)(E) of Act.  Specifically, in determining whether to include merchandise completed in Vietnam within the scope of the *Orders*, Commerce considered additional factors under section 781(b)(3) of the Act, *i.e.*, the patterns of trade, including sourcing patterns, affiliation between Chinese

---

*China:  Notice of Amended Final Affirmative Countervailing Duty Determination and Notice of Countervailing Duty Order*, 73 FR 42545 (July 22, 2008) (collectively, *Orders*).

[3] *See Remand Order* at 27-28.

[4] *Id*.

[5] *See Final Determination*, 88 FR at 77288.

[6] *Id*.

HRS or CWP producers and SeAH VINA, and whether imports into Vietnam of Chinese-origin HRS have increased after the initiation of the investigations which resulted in the issuance of the *Orders*.[7]

Concerning the patterns of trade, including sourcing patterns, we first compared publicly available U.S. import statistics for HRS and CWP between the periods 2012-2016 and 2017-2021 (*i.e.*, the period of inquiry). The data show that the share of total quantity of HRS exported from China to Vietnam in relation to total quantity of HRS exported from China to all countries, increased from 23.6 percent to 26.3 percent.[8] A comparison of the same periods show that the share of the quantity of U.S. imports of CWP from Vietnam in relation to the overall U.S. imports of CWP from the world increased from 7.9 percent to 8.8 percent.[9] Further, a comparison of the five-year periods indicates that the quantity of U.S. imports of CWP from Vietnam increased by 8.2 percent, while the quantity of U.S. imports of CWP from China decreased by 16.2 percent.[10] The quantity of Chinese exports of HRS to Vietnam increased by 1.7 percent, while the quantity of Chinese exports of HRS to the rest of the world (excluding Vietnam) decreased by 12.2 percent.[11]

We then analyzed patterns of trade with respect to SeAH VINA during the 2017-2021 period. The data show that from 2017 to 2021, (1) the quantity of HRS imported from China

---

[7] *See Circular Welded Carbon Quality Steel Pipe from the People's Republic of China: Preliminary Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing Duty Order*, 88 FR 21975 (April 12, 2023) (*Preliminary Determination*), and accompanying Preliminary Decision Memorandum (PDM) at 20-23.

[8] *See Preliminary Determination* PDM at 23 (citing the Domestic Interested Parties' Letter, "Circumvention Inquiry Supplemental Questionnaire Response," dated June 28, 2022 (Circumvention Allegation Supplement), at Exhibit Supp-1). The domestic interested parties are Bull Moose Tube Company, Maruichi American Corporation, Nucor Tubular Products Inc., Wheatland Tube Company, and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC (collectively, the domestic interested parties).

[9] *See Preliminary Determination* PDM at 23 (citing Circumvention Allegation Supplement at Exhibit Supp-2).

[10] *See Preliminary Determination* PDM at 20; *see also* Circumvention Allegation Supplement at Exhibit Supp-2.

[11] *See Preliminary Determination* PDM at 20-21; *see also* Circumvention Allegation Supplement at Exhibit Supp-1.

[                              ],[12] (2) the quantity of domestic and third-country sales of CWP

produced from China-origin HRS [                              ],[13] and (3) the quantity of U.S.

sales of CWP produced from China-origin HRS [                              ].[14]

Based on this analysis, we found that the patterns of trade and sourcing of HRS are not

dispositive with respect to either an affirmative or a negative circumvention determination, *i.e.*,

"the evidence with respect to these factors is mixed and inconclusive."[15]

Concerning affiliation, we found that SeAH VINA is not affiliated with any Chinese

CWP or HRS producer or supplier.[16]  In summary, we found that the results of our analysis of

factors under section 781(b)(3) of the Act (*i.e.*, patterns of trade, affiliation, and imports of HRS

from China) were mixed and that none of these factors were dispositive in our circumvention

analysis.[17]  Commerce ultimately found that "the totality of factors in this inquiry warrant an

affirmative finding of circumvention of the *Orders*."[18]

## III.    REMAND ORDER

In the *Remand Order*, the Court found that "Congress's addition of subsection (b)(1)(E)

to section {781}(b) indicates that it intended for the determination of whether action is

appropriate with respect to merchandise completed or assembled in other foreign countries to

require something more than evaluating the factors in subsection (b)(1)(A)-(D)."[19]  The Court

---

[12] *See* SeAH VINA's Letter, "Response to the Department's September 6 Questionnaire," dated October 7, 2022 (SeAH VINA's IQR), at Appendix 10, "the quantity of HRS imported from China decreased from [    ] metric tons (MTs) in 2017 to [    ] MTs in 2021."  *See* PDM at 21 and Memorandum, "Preliminary Analysis Memorandum for SeAH Steel VINA Corporation," dated April 6, 2023 (SeAH VINA's Preliminary Analysis Memorandum), at 7.  We confirm that we were mistaken on that aforementioned statement in the PDM, and that SeAH VINA's imports of HRS from China decreased from 2017 to 2021.
[13] *See* SeAH VINA's Preliminary Analysis Memorandum at 6; *see also* SeAH VINA's IQR at Appendix 33-C.
[14] *See* SeAH VINA's Preliminary Analysis Memorandum at 6; *see also* SeAH VINA's IQR at Appendix 10.
[15] *See Preliminary Determination* PDM at 22.
[16] *Id*. at 22-23.
[17] *Id*. at 20-24.
[18] *Id*. at 24.
[19] *See Remand Order* at 22.

found that Commerce "failed to explain how factors that are 'mixed' {under subsection (b)(3)} enabled the agency to reach the conclusion that action was appropriate."[20]  Specifically, the Court reasoned, Commerce's assertion in the *Final Determination* that the (b)(3) factors did not detract from a finding that an action is appropriate assumes that action was found to be appropriate on some other grounds, but Commerce did not identify any other grounds beyond the factors that it was already required to find pursuant to section 781(b)(1)(A)-(D) of the Act.[21]  The Court found that, "{b}ecause section {781}(b)(1)(E) must be construed to have some operative effect… Commerce must reconsider or further explain its basis for the affirmative circumvention finding."[22]  Specifically, the Court stated, "{t}o the extent that Commerce has in fact relied upon 'other' factors that are distinct from factors (b)(1)(A)–(D) to support its determination that action is appropriate pursuant to subsection (b)(1)(E), Commerce must identify what these 'other' factors are and identify the substantial evidence that supports its finding."[23]  The Court also observed that subsection 781(b)(3)(C) requires consideration of "whether imports into the foreign country of the merchandise {from the country subject to the order} have increased after the initiation of the investigation which resulted in the issuance of such order or finding."[24]  The Court found that, "{t}o the extent that Commerce reconsiders its analysis of the (b)(3) factors, it should explain the basis for the time periods that it used – {reconcile} the statutory requirements with its consideration of the 2012-2016 versus 2017-2021 periods, as well as changes within the latter period, *i.e.*, 2017-2021."[25]

---

[20] *Id*. at 27.
[21] *Id*.
[22] *Id*.
[23] *Id*. at 27-28.
[24] *Id*. at 27, FN 21.
[25] *Id*.

## IV.    FINAL RESULTS OF REDETERMINATION

In evaluating whether an action is appropriate under section 781(b)(1)(E) of the Act, Commerce determined that its analysis would be enhanced by additional information provided by interested parties in the Draft Remand.  Thus, on February 6, 2026, Commerce reopened the record and issued a letter to interested parties, requesting information, previously absent from the record, demonstrating other grounds (apart from those under sections 781(b)(1)(A) through (D) of the Act), that warrant action to prevent evasion of the *Orders*.[26]  Commerce received no additional information.  On March 9, 2026, Commerce placed on the record entry data obtained from the U.S. Customs and Border Protection (CBP) covering the periods 2017 through 2021 and 2025, and U.S. International Trade Commission (USITC) import data for 2025, for the Harmonized Tariff Schedule of the United States subheadings under which imports of CWP primarily entered the United States.[27]  On March 13, 2026, the domestic interested parties and SeAH VINA submitted factual information to rebut, clarify, or correct the March 9, 2026, information.[28]  Specifically, the domestic interested parties submitted data showing the quantity of HRS exported from China to Vietnam for the 2012-2016 and 2017-2021 periods.  SeAH VINA submitted its quantity of CWP exported to the United States for the years 2022 through 2025.

In light of the Court's *Remand Order*, and absent any new information, as requested from interested parties, demonstrating other grounds, apart from those under sections 781(b)(1)(A) through (D) of the Act that warrant action to prevent evasion of the *Orders*, Commerce further

---

[26] *See* Commerce's Letter to All Interested Parties, dated February 6, 2026.
[27] *See* Memorandum, "U.S. Customs and Border Protection Entry Data," dated March 9, 2026.
[28] *See* Domestic Interested Parties' Letter, "Submission of New Factual Information," dated March 13, 2026 (Domestic Interested Parties' RFI); *see also* SeAH VINA's Letter, "Submission of Factual Information Relating to Imports," dated March 13, 2026.

evaluated its consideration of factors under section 781(b)(3) of the Act.  In the Draft Remand Commerce found that, based on its further evaluation of factors under section 781(b)(3) of the Act, and absent any information to the contrary, continued action was appropriate to prevent evasion of the *Orders*, pursuant to section 781(b)(1)(E) of Act.

On March 31, 2026, we released the Draft Remand and provided interested parties with an opportunity to comment.[29]  On April 14, 2026, we received comments on the Draft Remand from SeAH VINA and the domestic interested parties.[30]  We have responded to those comments below.

In its comments on the Draft Remand, SeAH VINA disagreed with Commerce's analysis, primarily the use of post inquiry-period data.  The domestic interested parties supported Commerce's decision in the Draft Remand.  Based on our review of these comments, we find that the facts on the record do not support a determination that sections 781(b)(3)(A) and (C) support finding that action is appropriate to prevent evasion of t*he Orders* pursuant to section 781(b)(1)(E).

Factors Under Section 781(b)(3) of the Act

With respect to section 781(b)(3)(A) of the Act, aggregated data for the 2012-2016 and 2017-2021 periods show that the quantity of U.S. imports of CWP from Vietnam increased by 8.2 percent from the 2012-2016 period to the 2017-2021 period (*i.e.*, from 281,799 MTs to 304,987 MTs), while the quantity of U.S. imports of CWP from China decreased by 16.2 percent from the 2012-2016 period to the 2017-2021 period (*i.e.*, from 114,246 MTs to 95,730 MTs).[31]

---

[29] *See* Draft Results of Redetermination Pursuant to Court Remand, *SeAH Steel VINA Corporation v. United States*, Court No. 24-00085, Slip Op. 25-157 (CIT December 16, 2025), dated April 16, 2026 (Draft Remand).

[30] *See* SeAH VINA's Letter, "Comments on Draft Remand Redetermination, dated April 14, 2026 (SeAH VINA's Comments); *see also* Domestic Interested Parties' Letter, "Comments on Draft Results of Redetermination Pursuant to Court Remand in CIT Court No. 23-00256, Slip Op. 25-157," dated April 14, 2026 (Domestic Interested Parties' Comments).

[31] *See Preliminary Determination* PDM at 20; *see also* Circumvention Allegation Supplement at Exhibit Supp-2.

Additionally, comparison of the 2012-2016 to the 2017-2021 periods show that the quantity of U.S. imports of CWP from Vietnam in relation to the quantity U.S. imports of CWP from the world increased from 7.9 percent to 8.8 percent.[32]  However, U.S. imports of CWP from Vietnam decreased annually during the entire period of inquiry, *i.e.*, 2017 to 2021.[33]  Data for SeAH VINA show [                         ] in the quantity of U.S. CWP sales produced from China-origin HRS, and [                         ] in the quantity of domestic and third-country sales of CWP produced from China-origin HRS, from 2017 to 2021.[34]  This [                         ] in the quantity of SeAH VINA's sales of U.S. exports of CWP produced from China-origin HRS, together with [                         ] in the quantity of domestic and third-country sales of CWP produced from China-origin HRS, do not support a finding that Chinese producers were diverting production to Vietnam to evade antidumping duties.  Therefore, the above patterns of trade under section 781(b)(3)(A)) do not demonstrate evasion of the *Orders* has likely taken place because there is only marginal increases in the quantity of U.S. imports of CWP from Vietnam in relation to small decreases in the volume of U.S. imports of CWP from China, along with [                         ] in the quantity of SeAH VINA's sales of U.S. exports of CWP produced from China-origin HRS and [                         ] in the quantity of domestic and third-country sales of CWP produced from China-origin HRS when comparing the 2012-2016 period to the 2017-2021 period.  The quantity of U.S. imports of CWP from Vietnam in relation to the quantity U.S. imports of CWP from the world increased only marginally from the 2012-2016 to the 2017-2021 period.

---

[32] *See Preliminary Determination* PDM at 23 (citing Circumvention Allegation Supplement at Exhibit Supp-2).
[33] *See* Circumvention Allegation Supplement at Exhibit Supp-2.
[34] *See* SeAH VINA's Preliminary Analysis Memorandum at 6; *see also* SeAH VINA's IQR at Appendices 10 and 33-C.

With respect to section 781(b)(3)(B) of the Act, Commerce found that:  (1) SeAH VINA is not affiliated with any of its HRS suppliers or any Chinese HRS producers; (2) there are no facts (*e.g.*, close supplier relationships) that suggest control of SeAH VINA by the Chinese producers of HRS with regards to CWP production in Vietnam; (3) there is no evidence to indicate that the Chinese CWP or Chinese HRS producers had arrangements with SeAH VINA which would allow them to export HRS to Vietnam for processing into CWP for export to the United States and avoid the discipline of the *Orders*; and (4) SeAH VINA's purchases of HRS were not made directly from Chinese HRS producers but through unaffiliated resellers.  While there is no evidence that SeAH VINA is affiliated with any company located in China that produces or exports HRS, and irrespective of our overall final determination, Commerce does not find this factor alone to be dispositive.

While affiliation can contribute towards a determination of circumvention and the need to take action to prevent evasion of the *Orders*, the lack of affiliation does not weigh against a finding that a determination of circumvention is appropriate if other factors pursuant to section 781(b)(3) of the Act demonstrate otherwise.  Commerce has previously made a finding that determinations of circumvention is appropriate even when no evidence of affiliation was found.[35] An affirmative affiliation finding under section 781(b)(3)(B) of the Act naturally supports finding that it is appropriate to make an affirmative determination of circumvention as it speaks to the level of cooperation and planning between two companies that potentially share common goals concerning sales, profit, personnel, management, production planning, *etc.*  However, an

---

[35] *See Circular Welded Carbon Quality Steel Pipe From the People's Republic of China:  Final Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders*, 91 FR 4871 (February 3, 2026), and accompanying IDM at Comment 4; *see also Certain Corrosion-Resistant Steel Products from the People's Republic of China:  Affirmative Final Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders*, 83 FR 23895 (May 23, 2018), and accompanying IDM at Comment 12.

affirmative finding with regard to the other factors under section 781(b)(3) of the Act, and certainly an affirmative finding with regard to all of the other such factors, does not preclude Commerce from finding circumvention if there is no finding of affiliation. In such a situation a finding of no affiliation is considered as neither helpful nor hurtful (*i.e.*, neutral). Two companies that do not share common goals concerning sales, profit, personnel, management, production planning, *etc.* are not precluded from engaging in circumvention, either knowingly or unknowingly, which is fueled by a commercial desire to avoid duties and thus, increase sales and profits. Accordingly, while affiliation is a factor to be investigated and weighed, we do not consider it to be dispositive as to the question of whether an affirmative determination of circumvention is appropriate to avoid evasion of the *Orders* without taking into consideration other factors.

With respect to section 781(b)(3)(C) of the Act, aggregate data for the periods 2012-2016 to 2017-2021 show that the quantity of Chinese exports of HRS to Vietnam increased by 1.7 percent from the 2012-2016 period to the 2017-2021 period, while the quantity of Chinese exports of HRS to the rest of the world (excluding Vietnam) decreased by 12.2 percent from the 2012-2016 period to the 2017-2021 period.[36] Additionally, the quantity of Chinese exports of HRS to Vietnam in relation to the quantity of Chinese exports of HRS to all countries, increased for the 2017-2021 period compared to the 2012-2016 period from 23.6 percent to 26.3 percent.[37] Moreover, data for SeAH VINA show that the quantity of HRS it imported from China [                              ] from 2017 to 2021.[38] The above patterns of HRS imports from China to Vietnam under section 781(b)(3)(C) do not demonstrate evasion of the *Orders* has

---

[36] *See Preliminary Determination* PDM at 20-21; *see also* Circumvention Allegation Supplement at Exhibit Supp-1.
[37] *See Preliminary Determination* PDM at 23; *see also* Circumvention Allegation Supplement at Exhibit Supp-1; and Domestic Interested Parties' RFI.
[38] *See* SeAH VINA's IQR at Appendix 10.

likely taken place as the aggregate data indicates that Chinese exports of HRS to Vietnam

increased negligibly from the 2012-2016 to the 2017-2021 periods, the Chinese exports of HRS

to Vietnam in relation to the quantity of Chinese exports of HRS to all countries marginally

increased from the 2012-2016 to the 2017-2021 periods, and data for SeAH VINA show that the

quantity of HRS it imported from China [                                    ] from 2017 to 2021.

Time Periods Used In Evaluating the Patterns of Trade, Including Sourcing Patterns

For this redetermination, Commerce continues to rely on the comparison of the 2012-

2016 to 2017-2021 periods, as it did in the underlying circumvention inquiry.  Commerce

published the *Orders* in 2008.  Section 781(b)(3)(C) of the Act stipulates that Commerce

account, *inter alia*, "whether imports into the foreign country of the merchandise described in

paragraph (1)(b) have increased *after the initiation of the investigation which resulted in the*

*issuance of such order or finding*."  It has been Commerce's practice to interpret this statutory

provision as providing us with discretion to select the comparison period at any time after the

initiation of the investigation.  For example, in *Diamond Sawblades from China 2019*,

Commerce conducted two circumvention determinations.[39]  In 2009, Commerce published the

antidumping duty (AD) order on diamond sawblades from China, and in the first of these 2019

circumvention determinations, Commerce used the annual data between 2014-2016.  In the

second of these circumvention determinations, Commerce used the periods January-October

2017 and January-October 2018.  In *OCTG from China (2021)*, the AD and countervailing duty

---

[39] *See Diamond Sawblades and Parts Thereof from the People's Republic of China:  Preliminary Affirmative Determination of Circumvention*, 83 FR 57425 (November 15, 2018) and accompanying PDM, unchanged in *Diamond Sawblades and Parts Thereof from the People's Republic of China:  Final Determination of Anti-Circumvention Inquiry*, 84 FR 33920 (July 16, 2019), and *Diamond Sawblades and Parts Thereof from the People's Republic of China:  Preliminary Affirmative Determination of Circumvention*, 84 FR 58130 (October 30, 2019) and accompanying PDM, unchanged in *Diamond Sawblades and Parts Thereof from the People's Republic of China: Final Determination of Anti-Circumvention Inquiry*, 85 FR 9737 (February 20, 2020) (collectively, *Diamond Sawblades from China 2019*).

(CVD) orders were published in 2010, and Commerce compared the 2014-2016 period to the 2017-2019 period.[40]  Practically, such a restrictive interpretation of this statutory provision is impracticable because foreign companies can commence circumvention at any time after the initiation of the investigation.  Here, in particular, aligning the comparison period to the time of the initiation of the investigation, and requesting data going back in the 2000's, considering the age of this order, is impractical, as the companies subject to the circumvention inquiry are not required to maintain such data for taxation and financial reporting purposes.

## V.    INTERESTED PARTY COMMENTS

*Domestic Interested Parties' Comments*

The following is a verbatim summary of arguments submitted by the domestic interested parties.  For further details, *see* Domestic Interested Parties' Comments at 2 and 4.

> Domestic Interested Parties agree with and support the draft remand redeterminations that Commerce has issued in these proceedings.  The draft remand redeterminations comply with the remand order by identifying substantial evidence that supports Commerce's findings that action is appropriate to prevent evasion of the antidumping duty orders on { CWP } from Korea, China, and India pursuant to Section 781(b)(1)(E) of the Tariff Act of 1930, as amended (the "Act").  Commerce should continue to reach affirmative determinations of circumvention in its final remand redeterminations in these proceedings.

*SeAH VINA's Comments*

The following is a verbatim summary of arguments submitted by SeAH VINA. For further details, *see* SeAH VINA's Comments at 4-10 (internal citations omitted).

> The Draft Redetermination fails to comply with the Court's remand instruction to identify "other factors" under 19 U.S.C. § 1677j(b)(1)(E) that are genuinely distinct from the criteria already required under subsections (A) through (D).  Although {Commerce} reopened the record, it failed to find new evidence of such factors, relying instead on a mere recharacterization of the existing pattern-of-trade and

---

[40] *See Oil Country Tubular Goods from the People's Republic of China:  Preliminary Affirmative Determinations of Circumvention*, 86 FR 43627 (August 10, 2021), and accompanying PDM, unchanged in *Oil Country Tubular Goods from the People's Republic of China:  Final Affirmative Determinations of Circumvention*, 86 FR 67443 (November 26, 2021) (*OCTG from China (2021)*).

affiliation data. This approach ignores the Court's finding that subsection (E) must have a unique operative effect, as evidenced by its deliberate inclusion in foreign-country circumvention cases but exclusion from domestic completion cases. Ultimately, {Commerce} has still not identified the "other factors" it previously claimed were necessary to support its affirmative determination.

{Commerce} placed CWP entry data from the U.S. Customs and Border Protection ("CBP") covering the period of 2017 through 2021 and 2025, as well as publicly available {USITC} import data for 2025 on the record. The Draft Redetermination relied on the 2025 public data to establish that Vietnam's share of U.S. CWP imports had risen from 8.8 percent to 18.43 percent from the inquiry period to 2025, which {Commerce} treated as central evidence for its 19 U.S.C. § 1677j(b)(3)(A) finding.  The Draft Redetermination also relied on SeAH VINA's annual average of CWP U.S. exports from 2022 through 2025, which constituted an increase from the inquiry period, as additional evidence of circumvention.  This reliance is improper.  The inquiry period that led to the affirmative circumvention decision in this case only covered the period from 2017 through 2021.  Any information pertaining to the time period following the inquiry period is irrelevant to {Commerce's} circumvention decision.  The 2022-25 data should play no role in the final remand redetermination.

Even if the 2025 data were considered, it contradicts {Commerce's} circumvention theory.  The 2025 USITC data shows Vietnam's share of U.S. CWP imports at 18.43 percent compared to 8.8 percent during the inquiry period from 2017 to 2021. This growth is particularly difficult to reconcile with a duty-evasion narrative in this case because the total CWP imports to the United States from Vietnam actually decreased from 2017 to 2021.  Evasion-dependent exports do not contract during the alleged evasion period and then expand substantially after the evasion mechanism is closed. The growth following {Commerce's} imposition of anticircumvention measures reflects independent competitive factors unrelated to Chinese HRS or the China antidumping orders. If anything, the consistent rise in Vietnam's share of U.S. CWP imports from the 2012-2016 base period to the 2017-2021 inquiry period as well as in 2025 demonstrates a sustained trajectory of market growth driven by factors independent of any foreign input sources.

Although aggregate data show a modest 1.7 percent increase in Chinese HRS exports to Vietnam between the two five-year periods, the annual within-period data reveal that those exports peaked in 2016 and declined sharply thereafter, which is inconsistent with an escalating circumvention scheme. {Commerce's} own acknowledgment that SeAH VINA's Chinese HRS imports decreased during the inquiry period is irreconcilable with a finding that SeAH VINA used Chinese-origin HRS to evade the orders.

**Commerce's Position:**  In the Draft Remand, Commerce found that continued action is appropriate to prevent evasion of the *Orders*, pursuant to section 781(b)(1)(E) of Act, based on

an evaluation of factors under section 781(b)(3) of the Act. We reviewed parties' comments submitted for these final results of redetermination and, upon further consideration of those comments and the facts present on the record, we find that the record evidence does not support that action is appropriate to prevent evasion of the *Orders* pursuant to section 781(b)(1)(E) of the Act and, as a result, we make a negative determination of circumvention.

As a preliminary matter, we disagree with SeAH VINA that Commerce's Draft Remand "fails to comply with the Court's remand instruction to identify 'other factors' under {section 781}(b)(1)(E) that are genuinely distinct from the criteria already required under subsections (A) through (D)." Commerce's re-examination of the section 781(b)(3) factors was in accordance with the CIT's remand order. SeAH VINA's arguments misunderstand the CIT's opinion and the statute. Section 781(b)(3) of the Act states:

> In determining whether to include merchandise assembled or completed in a foreign country in a countervailing duty order or an antidumping duty order or finding under {section 781(b)(1)}, the administering authority shall take into account such factors as:
>
> (A) the pattern of trade, including sourcing patterns,
> (B) whether the manufacturer or exporter of the merchandise described in paragraph (1)(B) is affiliated with the person who uses the merchandise described in paragraph (1)(B) to assemble or complete in the foreign country the merchandise that is subsequently imported into the United States, and
> (C) whether imports into the foreign country of the merchandise described in paragraph (1)(B) have increased after the initiation of the investigation which resulted in the issuance of such order or finding.

Additionally, the SAA[41] states:

> {B}efore deciding to include imported parts within the scope of an antidumping or countervailing duty order, Commerce will consider: (1) changes in the pattern of trade; (2) whether the producer of the finished product subject to the order is related to the assembler in the United States (or the third country); and (3) whether imports of parts from the country subject to the order into the United States (or the third

---

[41] *See* Statement of Administrative Action accompanying the Uruguay Round Agreements Act, H.R. Doc. No. 103-316, vol. 1 (1994) (SAA).

country) have increased after the initiation of the investigation resulting in the issuance of the order.[42]

Therefore, Commerce is following the statute in considering the factors listed in section 781(b)(3).  The Court's analysis that section 781(b)(1)(E) must have some operative effect does not preclude Commerce from using the section 781(b)(3) factors to determine whether action is appropriate to prevent evasion of the *Orders*.[43]  The Court required that "*{t}o the extent* that Commerce has in fact relied upon 'other' factors that are distinct from factors (b)(1)(A)–(D) to support its determination that action is appropriate pursuant to subsection (b)(1)(E), Commerce must identify what these 'other' factors are and identify the substantial evidence that supports its finding."[44]  Here, Commerce analyzes and relies upon the section 781(b)(3) factors, which are not part of section 781(b)(1)(A)–(D), to determine whether action is appropriate to prevent evasion of the *Orders*.  We explicitly stated, "...absent any new information, as requested from interested parties, demonstrating other grounds, apart from those under section 781(b)(1)(A)-(D) of the Act that warrant action to prevent evasion of the *Orders*, Commerce further evaluated its consideration of factors under section 781(b)(3) of the Act."[45]  Although Commerce found these factors mixed in the final determination, the Court permit Commerce to reconsider its basis for the affirmative circumvention finding, explicitly stating, "{t}o the extent that Commerce reconsiders its analysis of the (b)(3) factors, it should explain the basis for the time periods that it used."[46]  The instructions in the *Remand Order* make it clear that our consideration of factors under section 781(b)(3) of the Act is a permissible approach in determining other grounds, apart

---

[42] *Id.* at 894.
[43] *See* Remand Order at 27-28.
[44] *Id*. (emphasis added).
[45] *See* Draft Remand at 6.
[46] *See* Remand Order at 27-28, FN 21.

from those under section 781(b)(1)(A)-(D) of the Act, that may warrant an action to prevent evasion of the *Orders* pursuant to section 781(b)(1)(E) of the Act.

We have reconsidered our use of 2022-2025 data and we have not relied on the following post-inquiry period data for these final results of redetermination:  (1) USITC import data for 2025; (2) CBP Data for 2025; and (3) SeAH VINA's 2022-2025 data on CWP exports to the United States.

With regard to analyzing the periods of 2012 through 2016 to 2017 through 2021 as opposed to periods associated with the date when the *Orders* was published, we note that these are the best periods to use to analyze whether circumvention of the *Orders* is occurring.  The statutory language in section 781(b)(3) of the Act does not specify that only imports immediately following the establishment of an AD/CVD order, or the initiation of the investigation that led to such an AD/CVD order, will satisfy the criteria under section 781(b)(3)(C) of the Act.  However, an inquiry period that accurately reflects the start of the alleged circumvention activity of an AD or CVD order and is after the "the initiation of the investigation which resulted in the issuance of such order or finding" fulfills the requirements for this factor of the circumvention analysis. Periods of inquiry and comparison periods are based on the timing of the suspected circumvention, which can occur any time, even years after an AD/CVD investigation is initiated, as is the case here.  While the circumvention inquiry period usually involves a comparison of periods before and after the publication of the *Orders*, the *Orders* were published in 2008.  Any data collected and analyzed for that time would have very little probative value to a potential remedy were Commerce to find circumvention.

With respect to sourcing and patterns of trade, when we consider data only from the inquiry period and the comparison period, we find that the facts do not support a determination

that sections 781(b)(3)(A) and (C) support finding action is appropriate to prevent evasion of the *Orders*. Specifically, with respect to section 781(b)(3)(A) of the Act, while the quantity of U.S. imports of CWP from Vietnam increased by 8.2 percent from the 2012-2016 period to the 2017-2021 period, U.S. imports of CWP from Vietnam decreased annually during the entire period of inquiry, *i.e.*, 2017 to 2021. Data for SeAH VINA show [                    ] in the quantity of U.S. CWP sales produced from China-origin HRS, and [

] in the quantity of domestic and third-country sales of CWP produced from China-origin HRS, from 2017 to 2021.[47] This [                    ] in the quantity of SeAH VINA's sales of U.S. exports of CWP produced from China-origin HRS, together with [

] in the quantity of domestic and third-country sales of CWP produced from China-origin HRS, do not support a finding that Chinese producers were diverting production to Vietnam to evade antidumping duties.

With respect to section 781(b)(3)(B) of the Act, as noted above, there are no affiliations.

With respect to section 781(b)(3)(C) of the Act, import statistics show a negligible 1.7 percent increase in Chinese HRS exports to Vietnam from the 2012-2016 period to the 2017-2021 period. A closer look at the data also shows that Chinese HRS exports to Vietnam decreased annually from 2016 to 2020.[48] Additionally, data for SeAH VINA show that the quantity of HRS it imported from China [                    ] from 2017 to 2021.[49]

As discussed above, for these final results of redetermination, Commerce finds that the statutory factor under section 781(b)(1)(E) of the Act has not been met.

---

[47] *See* SeAH VINA's Preliminary Analysis Memorandum at 6; *see also* SeAH VINA's IQR at Appendices 10 and 33-C.
[48] *See* Circumvention Allegation Supplement at Exhibit Supp-1.
[49] *See* SeAH VINA's IQR at Appendix 10.

In accordance with the Court's *Remand Order*, Commerce has, as discussed above, revised certain aspects of its analysis.  Because our final remand results in a revision from the *Final Determination*, should the Court affirm these final results of redetermination, we intend to publish a notice of court decision not in harmony with the results of the *Final Determination*[50] and notice of amended final determination in the *Federal Register*, and issue appropriate instructions to CBP, consistent with the discussion above.

4/30/2026

X _Chris J Abbott_

Signed by: CHRISTOPHER ABBOTT

Christopher Abbott
Deputy Assistant Secretary
  for Policy and Negotiations,
  performing the non-exclusive functions and duties
  of the Assistant Secretary for Enforcement and Compliance

---

[50] *See Timken Co. v. United States*, 893 F.2d 337 (Fed. Cir. 1990); *see also Diamond Sawblades Manufacturers Coalition v. United States*, 626 F.3d 1374 (Fed. Cir. 2010).