**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE MARK A. BARNETT, JUDGE**

SEAH STEEL VINA CORPORATION,

*Plaintiff,*

*v.*

UNITED STATES,

*Defendant,*

*and*

BULL MOOSE TUBE COMPANY; MARUICHI AMERICAN CORPORATION; WHEATLAND TUBE COMPANY; THE UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC; NUCOR TUBULAR PRODUCTS INC.,

*Defendant-Intervenors.*

Court No. 23-258

**PUBLIC VERSION**
Business proprietary information removed from brackets on pages 3-4, 9-11.

**DEFENDANT-INTERVENORS' COMMENTS**
**IN OPPOSITION TO FINAL REDETERMINATION ON REMAND**

Roger B. Schagrin
Jeffrey D. Gerrish
Nicholas C. Phillips
**SCHAGRIN ASSOCIATES**
900 Seventh Street, NW
Suite 500
Washington, DC 20001
*Counsel to Bull Moose Tube Company; Maruichi American Corporation; Wheatland Tube Company; The United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC*

Alan H. Price, Esq.
Robert E. DeFrancesco, III, Esq.
Theodore P. Brackemyre, Esq.
Kimberly A. Reynolds, Esq.
Paul A. Devamithran, Esq.
**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
*Counsel to Nucor Tubular Products Inc.*

June 30, 2026

# TABLE OF CONTENTS

I. FACTUAL BACKGROUND ........ 1
II. ARGUMENT ........ 4
A. Commerce Treated Identical Data Differently Across the Remand Redeterminations ........ 5
B. Commerce Unreasonably and Arbitrarily Ignored Country-Wide Data that Uniformly Supported a Circumvention Finding ........ 8
III. CONCLUSION ........ 11

# TABLE OF AUTHORITIES

**Cases**

*Al Ghurair Iron & Steel LLC v. United States*, 65 F.4th 1351, 1359 (Fed. Cir. 2023)............. 9, 11

*Canadian Solar, Inc. v. United States*, 918 F.3d 909, 917-18 (Fed. Cir. 2019) ............................ 5

*FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515-16, 132 S. Ct. 1882 (2009) ................... 5

*KG Dongbu Steel Co., Ltd. v. United States*, 695 F. Supp. 3d 1338, 1347 (CIT 2024).................. 8

*SeAH Steel VINA Corporation v. United States*, Court No. 23-00258,
Slip Op. 25-157 (CIT Dec. 16, 2025) ("Remand Order") ........................................................ 1

*SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001).................................... 5, 8

*Trina Solar (Vietnam Science & Technology Co., Ltd. v. United States*,
789 F. Supp. 3d 1248, 1255 (CIT 2025)..................................................................................... 9

**Statutes**

19 U.S.C. §1677j(b)(3) ................................................................................................................ 2

19 U.S.C. §1677j(b)(3)(A)............................................................................................................. 6

19 U.S.C. §1677j(b)(3)(A) and (C)................................................................................................ 8

19 U.S.C. §1677j(b)(3)(A), (B), (C) ........................................................................................... 2, 4

**Administrative Determinations**

*Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea* (May 1, 2026)
("Korea Final Remand Redetermination") .................................................................................. 6

*Certain Circular Welded Non-Alloy Steel Pipe From the Republic of Korea*, 88 Fed. Reg.
77,270 (Dep't Commerce Nov. 9, 2023) ("Korea Original Final Determination")................... 2

*Certain Welded Carbon Steel Standard Pipes and Tubes From India*, 88 Fed. Reg. 77,279
(Dep't Commerce Nov. 9, 2023) ("India Original Final Determination") ................................ 2

*Circular Welded Carbon Quality Steel Pipe From the People's Republic of China: Final Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders*, 88 Fed. Reg. 77,287 (Dep't Commerce Nov. 9, 2023)
("China Original Final Determination") ..................................................................................... 1

On behalf of Defendant-Intervenors Bull Moose Tube Company, Maruichi American Corporation, Wheatland Tube Company, the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC, and Nucor Tubular Products Inc. ("Defendant-Intervenors"), we hereby submit comments in opposition to the final redetermination on remand issued by the U.S. Department of Commerce's ("Commerce") pursuant to this Court's decision in *SeAH Steel VINA Corporation v. United States*, Court No. 23-00258, Slip Op. 25-157 (Court of Int'l Trade Dec. 16, 2025) ("Remand Order"). In the Remand Order, this Court instructed Commerce to reconsider its final determination reached in *Circular Welded Carbon Quality Steel Pipe From the People's Republic of China: Final Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders*, 88 Fed. Reg. 77,287 (Dep't Commerce Nov. 9, 2023) ("China Original Final Determination") and the accompanying Issues and Decision Memorandum ("IDM"). On remand, Commerce reconsidered its affirmative determination of circumvention and made a negative determination. *See* Final Results of Redetermination Pursuant to Court Remand, *Circular Welded Carbon Quality Steel Pipe from the People's Republic of China* (Apr. 30, 2026) ("China Final Remand Redetermination"). For the reasons described below, the China Final Remand Redetermination is unsupported by substantial evidence and not in accordance with law and is arbitrary and capricious. This Court should remand this matter to Commerce for redetermination consistent with the Court's opinion.

## I. FACTUAL BACKGROUND

This Court's Remand Order directed Commerce to reconsider its circumvention finding in the China Original Final Determination as well as its findings in two other parallel circumvention inquiries: *Certain Circular Welded Non-Alloy Steel Pipe From the Republic of*

*Korea*, 88 Fed. Reg. 77,270 (Dep't Commerce Nov. 9, 2023) ("Korea Original Final Determination") and *Certain Welded Carbon Steel Standard Pipes and Tubes From India*, 88 Fed. Reg. 77,279 (Dep't Commerce Nov. 9, 2023) ("India Original Final Determination"). All three circumvention proceedings for China, Korea, and India concerned hot-rolled steel ("HRS") from these three countries that had been exported to Vietnam to be finished into circular welded steel pipe ("CWP") that was then exported to the United States.

In conducting circumvention inquiries involving merchandise completed or assembled in third countries under 19 U.S.C. §1677j(b)(3), the statute provides for Commerce to "take into account" certain factors. Specifically, for the circumvention inquiries on CWP from China, Korea, and India, this provision required Commerce to take into account "the pattern of trade, including sourcing patterns," whether there was evidence of affiliation between HRS suppliers in China, Korea, and India and CWP producers in Vietnam, and "whether imports into {Vietnam} of {HRS} have increased after initiation of the investigation which resulted in the issuance of {the antidumping order}." 19 U.S.C. §1677j(b)(3)(A), (B), (C). Because Commerce concluded that the so-called (b)(3) factors were mixed for all countries, yet "failed to explain how factors that are 'mixed' enabled the agency to reach the conclusion that action was appropriate," this Court ordered Commerce to further explain its analysis of the (b)(3) factors. Remand Order at 27-28.

In the China circumvention inquiry, each and every country-wide data trend that Commerce examined relating to the pattern of trade and HRS imports from China into Vietnam supported a finding of circumvention. *Each and every one*. Between the comparison period (2012-2016) and the inquiry period (2017-2021), the record shows that the following occurred:

- The quantity of Chinese exports of HRS to Vietnam increased by 1.7 percent from 12,057,205 metric tons to 12,259,676 metric tons, while the quantity of its exports of HRS to the rest of the world fell by 12.2 percent;

- The share of Chinese exports of HRS to Vietnam in relation to the share of Chinese exports of HRS to all countries increased from 23.6 percent to 26.3 percent;

- Chinese exports of CWP to the United States declined by 16.2 percent;

- Vietnamese exports of CWP to the United States increased by 8.2 percent;

- The share of U.S. imports of CWP from Vietnam in relation to the share of U.S. imports of CWP from all countries increased from 7.9 percent to 8.8 percent.

*See* China Final Remand Redetermination at 3 (citing Commerce's preliminary determination of circumvention).

In Commerce's Draft Results of Redetermination Pursuant to Court Remand, Commerce recognized that these facts demonstrated circumvention of the orders on CWP from China. *Circular Welded Carbon Quality Steel Pipe from the People's Republic of China* (Mar. 31, 2026) ("China Draft Remand Redetermination"). Regarding the pattern of trade, Commerce concluded as follows:

> The above patterns of trade…demonstrate evasion of the *Orders* has likely taken place as indicated by increases in the quantity of U.S. imports of CWP from Vietnam and decreases in the volume of U.S. imports of CWP from China, when comparing the 2012-2016 period to the 2017-2021 period. Moreover, the increase in the quantity of U.S. imports of CWP from Vietnam in relation to U.S. imports of CWP from the world demonstrate shifting trade patterns likely intended to avoid the duties associated with the *Orders*.

China Draft Remand Redetermination at 7-8. Similarly, Commerce made the following finding regarding imports of Chinese HRS into Vietnam:

> The above patterns of HRS imports from China to Vietnam under section 781(b)(3)(C) demonstrate evasion of the *Orders* has likely taken place as the aggregate data indicates that Chinese exports of HRS to Vietnam increased from the 2012-2016 to the 2017-2021 periods, and the Chinese exports of HRS to Vietnam in relation to the quantity of Chinese exports of HRS to all countries, increased from the 2012-2016 to the 2017-2021 periods.

China Draft Remand Redetermination at 10. Indeed, the only data that Commerce examined under these statutory factors that [ ] was the data particular to the mandatory respondent, SeAH Steel VINA Corp. ("SeAH Steel"), which showed that the company [ ] between the comparison and inquiry periods and [ ]. *See* China Draft Remand Redetermination at 3-4. However, this was no bar to Commerce's finding that, in aggregate, the pattern of trade and HRS import data demonstrated that circumvention had likely occurred.

In the China Final Remand Redetermination, Commerce reversed itself and instead determined that "the facts on the record do not support a determination that sections 781(b)(3)(A) and (C) support finding that action is appropriate to prevent evasion of the *Orders*{.}" China Final Remand Determination at 7.[1] No facts had changed. Instead, Commerce had simply decided to [ ] into a dispositive factor that, by itself, was enough to demonstrate on a country-wide basis that circumvention had likely not occurred. *See id.* at 8, 11. *No other data supported Commerce's reversal*. As demonstrated below, Commerce's reversal is flawed and should be remanded.

## II. ARGUMENT

In order to reverse its position from the draft to the final determination on remand, Commerce dispensed with reason and its prior practice, rendering the China Final Remand Redetermination unsupported by substantial evidence, arbitrary and capricious, and not in accordance with law. First, Commerce treated data that were identical across the three

---

[1] Because there were never any facts on the record showing that the mandatory respondent was affiliated with HRS producers in China, that meant that Commerce had determined that none of the three (b)(3) "factors to consider" supported a circumvention finding. *See* 19 U.S.C. §1677j(b)(3)(A)-(C).

determinations in opposite ways depending on the conclusion it reached, making the result of the China Final Remand Redetermination mutually incompatible with the determinations in the Korea and India circumvention proceedings. Second, Commerce's newfound decision to treat the respondent-specific data as dispositive when examining the full body of data on the pattern of trade and HRS imports both lacked any explanation and broke with Commerce's well-established circumvention practice.

It is axiomatic that "an agency action is arbitrary when the agency offers insufficient reasons for treating similar situations differently." *SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001). Although Commerce may change methodologies, it must provide a reasoned explanation, supported by substantial evidence, showing that Commerce had good reasons for making the change. *Canadian Solar, Inc. v. United States*, 918 F.3d 909, 917-18 (Fed. Cir. 2019). Furthermore, "if Commerce's 'new policy rests upon factual findings that contradict those which underlay its prior policy,' the reasoned explanation must justify 'disregarding facts and circumstances that underlay or were engendered by the prior policy.'" *Id.* (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515-16, 132 S. Ct. 1882 (2009)). Commerce failed to meet that standard. Accordingly, this Court should remand the China Final Remand Redetermination for further reconsideration.

### A. Commerce Treated Identical Data Differently Across the Remand Redeterminations

All three circumvention proceedings covered by the Remand Order concerned HRS that had been exported to Vietnam to be finished into CWP that was then exported to the United States. Accordingly, each circumvention determination dealt with identical data concerning the export of CWP from Vietnam to the United States. The data showed that Vietnamese exports of CWP to the United States increased by 8.2 percent between the comparison period (2012-2016)

and the inquiry period (2017-2021), but fell annually within the inquiry period, and that the share of U.S. imports of CWP from Vietnam in relation to imports of CWP from the world increased from 7.9 percent to 8.8 percent during the same period. *See* China Final Remand Redetermination at 7-8; Final Results of Redetermination Pursuant to Court Remand, *Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea* (May 1, 2026) ("Korea Final Remand Redetermination") at 7; Final Results of Redetermination Pursuant to Court Remand, *Certain Welded Carbon Steel Standard Pipes and Tubes from India* (May 1, 2026) ("India Final Remand Redetermination") at 7.

Although these data were identical across the three circumvention proceedings, Commerce drew opposite conclusions from the data. In the Korea Final Remand Redetermination and the India Final Remand Redeterminations the increase in Vietnamese exports of CWP to the United States and the growth in Vietnam's share of U.S. worldwide CWP imports were described as "significant" and cited to support affirmative circumvention findings. For instance, in the India Remand Redetermination, Commerce stated:

> We find that the statutory factor under section 781(b)(3)(A) is met because: (1) aggregate import data show *a significant increase* in the quantity of U.S. imports of pipe and tube from Vietnam from the 2012-2016 period to the 2017-2021 period; and 2) aggregate import data show *a significant increase* in the share of U.S. imports of pipe and tube from Vietnam in relation to the overall U.S. imports of pipe and tube from the world from the 2012-2016 period to the 2017-2021 period.

India Final Remand Redetermination at 7 (emphasis added). Thus, Commerce's finding that the pattern of trade pursuant to 19 U.S.C. §1677j(b)(3)(A) supported a determination of circumvention was driven by its finding that the increases in U.S. imports of CWP from Vietnam and in the share of overall U.S. imports of CWP represented by Vietnam were "significant." Commerce reached the same finding in the Korea Final Remand Redetermination:

> The above patterns of trade under section 781(b)(3)(A) of the Act demonstrate circumvention of the Order because (1) aggregate import data show *a significant increase* in the quantity of U.S. imports of CWP from Vietnam from the 2012-2016 period to the 2017-2021 period; (2) aggregate import data show *a significant increase* in the share of U.S. imports of CWP from Vietnam in relation to the overall U.S. imports of CWP from the world from the 2012-2016 period to the 2017-2021 period; and (3) SeAH VINA's CWP exports to the United States produced from HRS imported from Korea increased significantly from 2017 to 2021.

Korea Final Remand Redetermination at 7 (emphasis added). These findings make sense – an increase in the volume of CWP exported from Vietnam to the United States and Vietnam's growing share of such imports relative to the rest of the world support a finding that CWP that otherwise would have been exported from Korea or India was being circumvented through Vietnam.

But that was not what Commerce found when it considered China. Suddenly, identical data showing increases in U.S. imports of CWP from Vietnam that Commerce described as "significant" in the Korea and India Final Remand Redeterminations became "marginal" in the China Final Remand Redetermination. Despite finding that "patterns of trade show that U.S. imports of CWP from Vietnam have increased, and that Vietnamese imports of HRS sourced from China have increased," China Final Remand Redetermination at 2, Commerce decided that:

> …the above patterns of trade under Section 781(b)(3)(A) do not demonstrate evasion of the *Orders* has likely taken place because there is *only marginal increases* in the quantity of U.S. imports of CWP from Vietnam in relation to small decreases in the volume of U.S. imports of CWP from China….The quantity of U.S. imports of CWP from Vietnam in relation to the quantity {of} U.S. imports of CWP from the world *increased only marginally* from the 2012-2016 to the 2017-2021 period.

China Final Remand Redetermination at 8 (emphasis added).

All data considered relating to U.S. imports of CWP from Vietnam covered the same time periods and were necessarily identical across the three proceedings. Commerce provided no

explanation for why it found that the same import increase was "significant" in the affirmative circumvention redeterminations for Korea and India but "only marginal" in the negative circumvention redetermination for China at issue here. This is a paradigmatic example of "treating similar situations differently" without any reasonable explanation. *SKF*, 263 F.3d at 1382. That alone is grounds for a remand. *See id.* (remanding to the agency to explain why it had "interpreted virtually identical language…in conflicting ways"); *see also KG Dongbu Steel Co., Ltd. v. United States*, 695 F. Supp. 3d 1338, 1347 (Ct. Int'l Trade 2024) (remanding to Commerce for a second time and finding that its remand redetermination "is not supported by substantial evidence because it does not satisfy the standard in *SKF USA* (requiring Commerce to provide a reasonable explanation for treating similar situations differently.)").

### B. Commerce Unreasonably and Arbitrarily Ignored Country-Wide Data that Uniformly Supported a Circumvention Finding

When analyzing the pattern of trade and import data pursuant to 19 U.S.C. §1677j(b)(3)(A) and (C) in circumvention proceedings being conducted on a country-wide basis like the proceedings involving CWP from China, Korea, and India, Commerce examines both country-wide data and data specific to the mandatory respondent. Although both are properly part of Commerce's holistic consideration of the pattern of trade and imports, in a country-wide circumvention inquiry, Commerce does not consider only respondent-specific data to the exclusion of country-wide data. In *Al Ghurair Iron & Steel LLC v. United States*, the respondent argued that Commerce was required to favor respondent-specific data over countrywide data. Commerce rejected this argument, and this determination was upheld by the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit"). Indeed, the Federal Circuit stated as follows in upholding Commerce's determination:

> AGIS identifies data specific to AGIS that it argues show that Commerce's decision is unsupported by substantial evidence. For instance, AGIS claims that it has not shipped CORE to the United States made from Chinese hot-rolled or cold-rolled steel since December 2017. Commerce reasonably explained that its analysis was country-wide, so AGIS-specific data were less probative than the data concerning the UAE as a whole.

*Al Ghurair Iron & Steel LLC v. United States*, 65 F.4th 1351, 1359 (Fed. Cir. 2023). The Federal Circuit went on to state in *Al Ghurair* that because "Commerce's {circumvention} determination was countrywide," its analysis of respondent-specific data "was only one part of the broader inquiry" for a given statutory factor. *Id.* at 1363; *see also Trina Solar (Vietnam Science & Technology Co., Ltd. v. United States*, 789 F. Supp. 3d 1248, 1255 (Ct. Int'l Trade 2025) (finding that Commerce "reasonably explained" that "the agency 'cannot limit its decision solely to the results of its analysis of the individually examined respondents, but must consider the entire results of its inquiry.").

Here, Commerce abandoned the practice described in these decisions and instead "limit{ed} its decision solely to the results of its analysis of {the} individually examined respondent{}." *Trina Solar*, 789 F. Supp. 3d at 1255. It treated SeAH Steel's respondent-specific data as dispositive and ignored countrywide data that was uniformly supportive of an affirmative finding of circumvention. In the China Final Remand Redetermination, Commerce found that "{d}ata for SeAH VINA show [ ] in the quantity of U.S. CWP sales produced from China-origin HRS, and [ ] in the quantity of domestic and third-country sales of CWP produced from China-origin HRS, from 2017 to 2021." China Final Remand Redetermination at 8. Because Commerce had re-contextualized the rest of the pattern of trade data as "only marginal," [ ] was the sole basis for its finding that the pattern of trade did not demonstrate evasion of the orders on CWP from China. *See id.*

Commerce performed the same flawed analysis for the HRS import data. All of the countrywide data were supportive of circumvention, as HRS exports from China to Vietnam had increased by 1.7 percent from 12,057,205 metric tons to 12,259,676 metric tons at the same time that China's exports of HRS to the rest of the world had fallen by 12.2 percent. Furthermore, the share of Chinese exports of HRS to Vietnam in relation to the share of Chinese exports of HRS to all countries increased from 23.6 percent to 26.3 percent. When considering these data in the China Draft Remand Redetermination, Commerce found that:

> The above pattern of HRS imports from China to Vietnam under section 781(b)(3)(C) demonstrate evasion of the *Orders* has likely taken place as the aggregate data indicates that Chinese exports of HRS to Vietnam increased from the 2012-2016 to the 2017-2021 periods, and the Chinese exports of HRS to Vietnam in relation to the quantity of Chinese exports of HRS to all countries, increased from the 2012-2016 to the 2017-2021 periods.

China Draft Remand Redetermination at 10. However, in the China Final Remand Redetermination, the countrywide HRS import data suddenly changed their character and impact and inexplicably supported the opposite conclusion:

> The above patterns of HRS imports from China to Vietnam under section 781(b)(3)(C) do not demonstrate evasion of the *Orders* has likely taken place as the aggregate data indicates that Chinese exports of HRS to Vietnam *increased negligibly* from the 2012-20216 to the 2017-2021 periods, the Chinese exports of HRS to Vietnam in relation to the quantity of Chinese exports of HRS to all countries *marginally increased* from the 2012-2016 to the 2017-2021 periods, and data for SeAH VINA show that the quantity of HRS it imported from China [ ] from 2017 to 2021.

China Final Remand Redetermination at 10-11 (emphasis added).[2]

The countrywide data, showing an increase in China's exports of HRS to Vietnam in the midst of a global downturn of such exports, were plainly supportive of a finding of circumvention, and Commerce concluded thus in its China Draft Remand Redetermination. [

[2] Notably, Commerce's characterization of the increase in Chinese exports of HRS to Vietnam as "negligible" omitted that this increase took place in the context of a worldwide drop of Chinese HRS exports by 12.2 percent.

]. In order to find that the HRS import data did not support a circumvention finding, Commerce decided to dismiss the countrywide increase as "negligible" and "marginal" and [ ] for its negative finding.

Commerce offered no explanation for this reversal of its normal practice to consider *both* countrywide and respondent-specific data as part of a holistic inquiry. Indeed, Commerce previously had taken the position that respondent-specific data were "less probative than the data concerning the {country} as a whole." *Al Ghurair*, 65 F.4th at 1359. Here, Commerce assigned no weight whatsoever to the countrywide data, despite coming to the opposite conclusion in its draft remand redetermination. Furthermore, it adopted a position concerning the relationship between countrywide and respondent-specific data that was diametrically opposed to the position it took in *Al Ghurair*. Once again, Commerce treated similar situations differently and provided no reasoned explanation for this change in practice. As a result, the China Final Remand Redetermination is unsupported by substantial evidence, arbitrary and capricious, and contrary to Commerce's standard practice. This Court should remand it for further reconsideration to remedy these defects.

## III. CONCLUSION

For these reasons, Defendant-Intervenors respectfully request that the Court remand this matter to Commerce for redetermination consistent with the judgment of this Court.

Respectfully submitted,

/s/ Jeffrey D. Gerrish
Roger B. Schagrin, Esq.
Jeffrey D. Gerrish, Esq.
Nicholas C. Phillips, Esq.*
**SCHAGRIN ASSOCIATES**
900 Seventh Street, NW
Suite 500
Washington, DC 20001
*Counsel to Bull Moose Tube Company; Maruichi American Corporation; Wheatland Tube Company; The United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC*

*Only admitted in New York. Practice limited to matters before federal courts and agencies.

/s/ Robert E. DeFrancesco, III
Alan H. Price, Esq.
Robert E. DeFrancesco, III, Esq.
Theodore P. Brackemyre, Esq.
Kimberly A. Reynolds, Esq.
Paul A. Devamithran, Esq.
**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
*Counsel to Nucor Tubular Products Inc.*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing Comments in Opposition to Final Redetermination on Remand contains 3,508 words (including text, quotations, footnotes, headings, and attachments) and therefore complies with the word limitation set forth in this Court's Chamber's Procedures. In preparing this certificate of compliance, I have relied upon the word count function of the word processing system used to prepare the brief.

Dated: June 30, 2026

/s/ Jeffrey D. Gerrish
Jeffrey D. Gerrish

## CERTIFICATE OF SERVICE

*SeAH Steel VINA Corporation v. United States,*
U.S. Court of International Trade Court No. 23-00258

Pursuant to Rule 5 of the U.S. Court of International Trade and Administrative Order 25-01, I certify that on June 30, 2026, copies of the confidential version of the *Defendant-Intervenors' Comments in Opposition to Final Redetermination on Remand* were served via File Transfer Protocol (FTP) on the following parties:

Jeffrey Michael Winton
**Winton & Chapman PLLC**
1100 13th Street, NW
Suite 825
Washington, DC 20005
jwinton@winton.law

Tate Nathan Walker
**U.S. Department of Justice**
*Commercial Litigation Branch - Civil Division*
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
tate.walker@usdoj.gov

Alan Hayden Price
**Wiley Rein, LLP**
2050 M Street, NW
Washington, DC 20036
aprice@wiley.law

*/s/ Jeffrey D. Gerrish*
Jeffrey D. Gerrish
Schagrin Associates