UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE MARK A. BARNETT, JUDGE

| | |
|---|---|
| SEAH STEEL VINA CORPORATION,<br>*Plaintiff,*<br>v.<br>UNITED STATES,<br>*Defendant,*<br>*and*<br>BULL MOOSE TUBE COMPANY; MARUICHI AMERICAN CORPORATION; WHEATLAND TUBE COMPANY; THE UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC; NUCOR TUBULAR PRODUCTS INC.,<br>*Defendant-Intervenors* | Court No. 23-258 |

COMMENTS OF SEAH STEEL VINA CORPORATION
ON FINAL REDETERMINATION ON REMAND

WINTON & CHAPMAN PLLC
1100 13th Street, N.W., Suite 825
Washington, D.C. 20005
(202) 774-5500

Attorneys for SeAH Steel VINA Corporation

August 18, 2026

Table of Contents

Page

INTRODUCTION ..... 2

ARGUMENT ..... 3

A. Commerce's Negative Determination Is Supported by Substantial Evidence and Complies with the Court's Remand Order ..... 3

1. The Section 1677j(b)(3)(A) Pattern-of-Trade Data Does Not Support an Affirmative Finding ..... 4

2. The Section 1677j(b)(3)(C) Data Does Not Support an Affirmative Finding ..... 5

B. Defendant-Intervenors' Arguments Are Without Merit ..... 5

1. The China Record Supports a Negative Determination ..... 5

2. Commerce Did Not Improperly Elevate Respondent-Specific Data to a Dispositive Factor ..... 7

3. Commerce's Reversal from the Draft Remand Was Appropriate and Explained ..... 9

CONCLUSION ..... 10

# Table of Authorities

Page

CASES

*Al Ghurair Iron & Steel LLC v. United States*,
65 F.4th 1351 (Fed. Cir. 2023) ........ 7

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) ........ 9

*SeAH Steel VINA Corporation v. United States,*
Court No. 23-00258, Slip Op. 25-157 (CIT December 16, 2025) ........ 1, 3

*SKF USA Inc. v. United States*,
263 F.3d 1369 (Fed. Cir. 2001) ........ 7

STATUTES

19 U.S.C. § 1677j(b)(1)(A)-(D) ........ 3

19 U.S.C. § 1677j(b)(3) ........ 2, 3, 5

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE MARK A. BARNETT, JUDGE

SEAH STEEL VINA CORPORATION,

*Plaintiff,*

v.

UNITED STATES,

*Defendant,*

*and*

BULL MOOSE TUBE COMPANY; MARUICHI AMERICAN CORPORATION; WHEATLAND TUBE COMPANY; THE UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC; NUCOR TUBULAR PRODUCTS INC.,

*Defendant-Intervenors*

Court No. 23-258

COMMENTS OF SEAH STEEL VINA CORPORATION
ON FINAL REDETERMINATION ON REMAND

These comments are submitted on behalf of SeAH Steel VINA Corporation ("SeAH VINA") to comment on the final redetermination by the U.S. Department of Commerce ("Commerce") dated April 30, 2026, ECF Nos. 76-77, addressing the December 16, 2025, decision by this Court in *SeAH Steel VINA Corporation v. United States,* Court No. 23-00258, Slip Op. 25-157 (CIT December 16, 2025) ("Remand Order"), concerning Commerce's final determination in the circumvention inquiry of the antidumping order and

countervailing duty orders on Circular Welded Carbon Quality Steel Pipe ("CWP") from the People's Republic of China.[1]

## INTRODUCTION

Commerce's Redetermination complies with the Court's remand order and should be affirmed. On remand, Commerce reconsidered its analysis under section 781(b)(3) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1677j(b)(3) as the Court instructed, examined the within-period annual data during 2017-2021, and reached the only conclusion the record supports: that neither the pattern-of-trade nor the import data of hot-rolled coil ("HRS") support an affirmative circumvention finding, and that a negative determination is warranted.

Defendant-Intervenors oppose the negative determination on two grounds.[2] First, they argue that Commerce treated "identical data" differently across the China, Korea, and India proceedings, calling the same 8.2 percent CWP import increase "significant" in Korea and India but "marginal" in China.[3] Second, they argue that Commerce improperly elevated respondent-specific data to a dispositive factor while ignoring country-wide data that allegedly supported circumvention.[4] Both arguments fail.

As an initial matter, SeAH VINA submitted comments on Commerce's affirmative circumvention redeterminations in the Korea and India proceedings, in which it explained

---

[1] The Department's April 30 redetermination is hereinafter referred to as the "Redetermination."

[2] *See* Defendant-Intervenors' June 30, 2026, Comments in Opposition to Final Redetermination on Remand, ECF Nos. 83-84 (hereinafter, "Opposition Comments").

[3] *See id.* at 5-8.

[4] *See id.* at 8-11.

why Commerce's redeterminations failed to comply with the Remand Order and must be remanded.[5] Furthermore, while data across three proceedings share certain similarities on an aggregate basis, those similarities alone are not sufficient to satisfy the statutory requirement under section 1677j(b)(1)(E) that there was evasion of the Orders, let alone that "action is appropriate … to prevent evasion" of the Orders. Commerce has an obligation to evaluate each record on its own. The China record supports a negative determination. And Commerce did not treat respondent-specific data as dispositive to the exclusion of country-wide data. It considered both, found the country-wide data insufficient to support an affirmative finding in the China context, and explained its reasoning. The Court should affirm.

## ARGUMENT

### *A. Commerce's Negative Determination Is Supported by Substantial Evidence and Complies with the Court's Remand Order*

The Court's remand order gave Commerce two alternative paths: identify "other" factors distinct from those in 19 U.S.C. § 1677j(b)(1)(A)-(D) and the substantial evidence supporting them, or reconsider its section 1677j(b)(3) analysis and explain the basis for the time periods used, including the within-period changes during 2017-2021.[6] Commerce took the second path and conducted a thorough reassessment of the section 1677j(b)(3) factors, with specific attention to the within-period annual data. On that reassessment, Commerce correctly found that neither section 1677j(b)(3)(A) nor section 1677j(b)(3)(C) supported an affirmative finding and made a negative determination.

---

[5] *See* SeAH VINA's June 26 Comments in Opposition, Ct. No. 23-256, ECF No. 85; SeAH VINA's June 26 Comments in Opposition, Ct. No. 23-257, ECF No. 80.

[6] *See* Remand Order, at 27-28 & n.21.

*1. The Section 1677j(b)(3)(A) Pattern-of-Trade Data Does Not Support an Affirmative Finding*

Commerce correctly found that the section 1677j(b)(3)(A) evidence does not support an affirmative circumvention finding. While aggregate data show that U.S. imports of CWP from Vietnam increased by 8.2 percent comparing the 2012-2016 and 2017-2021 five-year periods, Commerce appropriately considered what actually happened within the 2017-2021 inquiry period.[7] The within-period data is unambiguous: U.S. imports of CWP from Vietnam decreased annually throughout the entire 2017-2021 inquiry period.[8] A circumvention scheme premised on diverting Chinese-origin HRS to Vietnam for processing and re-export to the United States does not produce consistently declining export volumes during the very years in which the alleged evasion is occurring.

Additionally, SeAH VINA's own company-level data show a decrease in U.S. CWP sales produced from Chinese-origin HRS during the inquiry period, as well as a decrease in domestic and third-country sales of CWP produced from Chinese-origin HRS.[9] Commerce correctly found that these company-level figures, viewed in conjunction with the within-period aggregate decline, do not support a finding that Chinese producers were diverting production to Vietnam to evade the Orders.[10]

[7] *See* Redetermination at 7-8, 17.

[8] *See id.*

[9] *See id.*

[10] *See id.*

*2. The Section 1677j(b)(3)(C) Data Does Not Support an Affirmative Finding*

Commerce correctly found that the section 1677j(b)(3)(C) factor was not met.[11] The aggregate data show a negligible 1.7 percent increase in Chinese HRS exports to Vietnam from the 2012-2016 period to the 2017-2021 period, while Chinese HRS exports to the rest of the world decreased by 12.2 percent.[12] Critically, Chinese HRS exports to Vietnam actually declined annually from 2016 to 2020, which is a trajectory fundamentally inconsistent with an escalating circumvention scheme.[13] Additionally, SeAH VINA's own data show that its imports of Chinese-origin HRS decreased during the inquiry period.[14] Commerce appropriately characterized the aggregate increase as negligible and recognized that the annual within-period trend directly contradicted a finding of increased input diversion.[15]

*B. Defendant-Intervenors' Arguments Are Without Merit*

*1. The China Record Supports a Negative Determination*

Defendant-Intervenors argue that Commerce acted arbitrarily by calling the same 8.2 percent CWP import increase "significant" in the Korea and India proceedings while calling it "marginal" in the China proceeding.[16] This argument mistakes the nature of Commerce's analytical obligation. Commerce is not required to reach the same conclusion

---

[11] *See id.* at 10-11, 17.

[12] *See id.*

[13] *See id.* at 17.

[14] *See id.*

[15] *See id.*

[16] Defendant-Intervenors' Opposition Comments at 7.

across parallel proceedings simply because some similar data points appear in each record. It is required to evaluate each record as a whole and reach a conclusion supported by the totality of the evidence in that record. Whether Commerce reached the right result in the Korea and India proceedings is not before this Court in this case and provides no basis for overturning a negative determination that is supported by the China record on its own terms.

The China record, evaluated on its own merits, supports Commerce's negative determination. The 8.2 percent aggregate CWP import increase does not exist in isolation. It must be assessed alongside the full scope of China-specific evidence, which points consistently against circumvention. Chinese HRS exports to Vietnam increased by only a negligible 1.7 percent between the two five-year periods and actually declined annually from 2016 to 2020, a trajectory fundamentally inconsistent with a circumvention scheme.[17] SeAH VINA's own imports of Chinese-origin HRS decreased during the inquiry period, as did its U.S. sales and domestic and third-country sales of CWP produced from Chinese-origin HRS.[18] When a marginal aggregate CWP import increase is the only data point that might be read to support circumvention, and every other China-specific data point on the record contradicts the evasion narrative, Commerce is not only permitted, but in fact required, to find that the totality of the evidence does not support an affirmative finding. That is not inconsistent treatment of similar situations, but a record-based determination grounded in the specific facts before Commerce in the China proceeding.

---

[17] *See* Redetermination at 10-11, 17.

[18] *See id.* at 7-8, 17.

Defendant-Intervenors cite *SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001), for the proposition that an agency acts arbitrarily when it offers insufficient reasons for treating similar situations differently.[19] The premise of that argument is incorrect. The statutory framework does not call for a single across-the-board determination based on shared CWP export data. It calls for a country-specific inquiry into whether HRS from each subject country is being diverted through Vietnam to evade each country's antidumping or countervailing order. Those are separate inquiries on separate records, and Commerce's obligation in each is to reach a conclusion supported by the evidence specific to that proceeding. The fact that aggregate data is shared across the three proceedings does not transform them into "similar situations" for purposes of *SKF* when the remaining country-specific evidence differs.

2. *Commerce Did Not Improperly Elevate Respondent-Specific Data to a Dispositive Factor*

Defendant-Intervenors argue that Commerce abandoned its established practice by treating SeAH VINA's respondent-specific data as dispositive while ignoring country-wide data that allegedly supported circumvention, contrary to *Al Ghurair Iron & Steel LLC v. United States*, 65 F.4th 1351 (Fed. Cir. 2023).[20] This argument also fails.

*Al Ghurair* stands for the proposition that in a country-wide circumvention inquiry, respondent-specific data are "less probative" than country-wide data and are "only one part of the broader inquiry."[21] But that cuts in both directions. *Al Ghurair* does not hold that

---

[19] Defendant-Intervenors' Opposition Comments at 5, 8.

[20] *Id.* at 8-11.

[21] *See Al Ghurair Iron*, 65 F.4th at 1359, 1363.

country-wide data are always dispositive or that respondent-specific data that contradict the country-wide picture must be set aside.

Here, Commerce considered the country-wide data including the 1.7 percent aggregate increase in Chinese HRS exports to Vietnam and the 8.2 percent aggregate increase in U.S. imports of CWP from Vietnam, and found them insufficient to support a circumvention finding in light of the within-period annual trends and the company-level data. The country-wide CWP data were not, as Defendant-Intervenors characterize them, "uniformly" supportive of circumvention.[22] They showed a marginal aggregate increase that was entirely contradicted by the within-period annual decline throughout 2017-2021, which is inconsistent with an active evasion scheme.[23] And the country-wide Chinese-HRS import data showed a negligible 1.7 percent increase that included an annual declining trend from 2016 to 2020.[24]

Defendant-Intervenors contend that Commerce "treated SeAH Steel's respondent-specific data as dispositive and ignored countrywide data."[25] But that claim misreads Commerce's analysis. Commerce considered the country-wide data.[26] It then considered the company-level data before making its conclusion.[27] A conclusion reached on the basis of an analysis that considered both country-wide and company-specific data is not the

---

[22] Defendant-Intervenors' Opposition Comments at 8.

[23] *See* Redetermination at 10-11, 17.

[24] *See id.*

[25] Defendant-Intervenors' Opposition Comments at 9.

[26] *See* Redetermination at 7-8, 10-11, 17.

[27] *See id.*

same as treating respondent-specific data as "dispositive" in isolation. Commerce's final redetermination reflects a holistic weighing of all available evidence, and thus should be affirmed.

### 3. *Commerce's Reversal from the Draft Remand Was Appropriate and Explained*

Defendant-Intervenors make much of the fact that Commerce reversed itself between the Draft Remand and the final redetermination.[28] But the mere fact of reversal does not render a final determination arbitrary and capricious. What matters is whether the final determination is supported by substantial evidence and explained with the required rational connection between the facts found and the choice made.[29]

Here, Commerce explained its reversal. It acknowledged that it had agreed with SeAH VINA that the Draft Remand had improperly relied on post-inquiry-period data, including 2025 import statistics and SeAH VINA's 2022-2025 export averages, and removed that data from the final analysis.[30] Without that data, and with appropriate attention to the within-period annual trends, Commerce found that the remaining record did not support an affirmative finding. That is a reasoned reconsideration in response to a legitimate methodological correction, combined with proper attention to the within-period data the Court's remand order instructs Commerce to address.

---

[28] Defendant-Intervenors' Opposition Comments at 4.

[29] *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) ("{T}he agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made.") (internal quotations omitted).

[30] *See* Redetermination at 16.

## CONCLUSION

Commerce's Redetermination complies with the specific requirements the Court set out in its Remand Order. For the foregoing reasons, we respectfully request that the Court affirm Commerce's Redetermination.

Respectfully submitted,

/s/ Jeffrey M. Winton
Jeffrey M. Winton
Amrietha Nellan
Vi N. Mai
Rachel Hauser

WINTON AND CHAPMAN PLLC
1100 13th Street, N.W., Suite 825
Washington, D.C. 20005
(202) 774-5500

Attorneys for SeAH Steel VINA Corporation

August 18, 2026

Certificate of Compliance

Pursuant to the Court's "Standard Chambers Procedures," I, Jeffrey M. Winton, hereby certify that the word count function of the word-processing system used to prepare the foregoing brief indicates that the brief contains 1,973 words including headings, footnotes, and quotations, but not including the cover, caption, table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature block.

/s/Jeffrey M. Winton

August 18, 2026