**THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

SEAH STEEL VINA CORPORATION,

Plaintiff,

v.

UNITED STATES,

Defendant,

and

BULL MOOSE TUBE COMPANY, *et al.*,

Defendant-Intervenors.

Court No. 23-00258

**ORDER**

Upon consideration of defendant-intervenors' comments regarding the remand redetermination, defendant's response thereto, and all other pertinent papers, it is hereby

ORDERED that the remand redetermination is sustained

AND final judgment is entered in favor of the United States.

Date:________________
New York, NY

__________________________
Judge

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | | |
|---|---|---|
| SEAH STEEL VINA CORPORATION, | ) | |
| Plaintiff, | ) | |
| v. | ) | Court No. 23-00258 |
| UNITED STATES, | ) | PUBLIC VERSION<br>BPI Omitted at pages 9-10, 12-14 |
| Defendant, | ) | |
| and | ) | |
| BULL MOOSE TUBE COMPANY, *et al.*, | ) | |
| Defendant-Intervenors. | ) | |

**DEFENDANT'S RESPONSE TO COMMENTS ON THE REMAND REDETERMINATION**


BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

FRANKLIN E. WHITE, JR.
Assistant Director

TATE N. WALKER
Trial Attorney
United States Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
(202) 37-0163
Email: tate.walker@usdoj.gov

OF COUNSEL:
VANIA WANG
Senior Counsel
U.S. Department of Commerce
Office of the Chief Counsel for Trade
Enforcement and Compliance
1401 Constitution Avenue, NW
Washington, D.C. 20230

August 18, 2026 *Attorneys for Defendant*

# TABLE OF CONTENTS


BACKGROUND .....2

I. Commerce's Final Results .....2

II. Remand Order .....3

III. Remand Redetermination .....4

ARGUMENT .....6

I. Standard of Review .....6

II. Legal Framework .....7

III. Commerce's Remand Redetermination Is Lawful and Supported by Substantial Evidence .....8

A. Commerce Reasonably Re-evaluated the Record Evidence for the Section 1677j(b)(3) Factors .....8

B. The Evidence on this Record Differs from Other Circumvention Inquiries before the Court .....11

C. Commerce Considered All the Relevant Data on the Record .....12

CONCLUSION .....14

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Al Ghurair Iron & Steel LLC v. United States*,
65 F.4th 1351 (Fed. Cir. 2023) .......... 12, 13

*Amanda Foods (Vietnam) Ltd. v. United States*,
774 F. Supp. 2d 1286 (Ct. Int'l Trade 2011) .......... 6

*Bethlehem Steel Corp. v. United States*,
223 F. Supp. 2d 1372 (Ct. Int'l Trade 2002) .......... 6

*Consol. Edison Co. v. NLRB*,
305 U.S. 197 (1938) .......... 6

*Inland Steel Indus., Inc. v. United States*,
188 F.3d 1349 (Fed. Cir. 1999) .......... 13

*Mosaic Co. v. United States*,
160 F.4th 1340 (Fed. Cir. 2025) .......... 7

*Nippon Steel Corp. v. United States*,
458 F.3d 1345 (Fed. Cir. 2006) .......... 6

*NTN Bearing Corp. v. United States*,
74 F.3d 1204 (Fed. Cir. 1995) .......... 14

*Nucor Corp. v. United States,*
414 F.3d 1331 (Fed. Cir. 2005) .......... 12

*SeAH Steel VINA Corp. v. United States*,
815 F. Supp. 3d 1369 (Ct. Int'l Trade 2025) .......... 1

*Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*,
605 U.S. 168 (2025) .......... 7

*SolarWorld Ams., Inc. v. United States*,
910 F.3d 1216 (Fed. Cir. 2018) .......... 6

*U.S. Steel Corp. v. United States,*
637 F. Supp. 2d 1199 (Ct. Int'l Trade 2009) .......... 12

Statutes

19 U.S.C. § 1677(b)(1)(B) .......... 7

19 U.S.C. § 1677j(b) .......... 7

19 U.S.C. § 1677j(b)(1)(A) ........ 7

19 U.S.C. § 1677j(b)(1)(B) ........ 7

19 U.S.C. § 1677j(b)(1)(E) ........ 4, 5, 7

19 U.S.C. § 1677j(b)(3) ........ 3, 5, 7

19 U.S.C. §§ 1677j(b)(1)(A)-(D) ........ 4

**Regulations**

85 Fed. Reg. 14 ........ 12

**Other Authorities**

*Certain Cold-Rolled Steel Flat Products from the Republic of Korea: Affirmative Preliminary Determination of Anti-Circumvention Inquiries on the Antidumping Duty and Countervailing Duty Orders*, 84 Fed. Reg. 32,875 (Dep't of Commerce July 10, 2019). ........ 7-8

*Circular Welded Carbon Quality Steel Pipe from the People's Republic of China; Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea; Certain Welded Carbon Steel Standard Pipes and Tubes from India: Initiation of Circumvention Inquiries on the Antidumping and Countervailing Duty Orders*, 87 Fed. Reg. 47,711 (Dep't of Commerce Aug. 4, 2022) . ........ 2

*Certain Circular Welded Non-Alloy Steel Pipe From the Republic of China: Final Affirmative Determination of Circumvention of the Antidumping Duty Order*, 88 Fed. Reg. 77,287 (Dep't of Commerce Nov. 9, 2023) ........ 3

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| SEAH STEEL VINA CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant,<br><br>and<br><br>BULL MOOSE TUBE COMPANY, *et al.*,<br><br>Defendant-Intervenors. | Court No. 23-00258<br><br>PUBLIC VERSION BPI omitted at pages 9-10, 12-14 |

**DEFENDANT'S RESPONSE IN SUPPORT OF THE REMAND REDETERMINATION**

Defendant, the United States, respectfully submits this response to the comments submitted by defendant-intervenors, Bull Moose Tube Company, Maruichi American Corporation, Wheatland Tube Company, the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC, and Nucor Tubular Products Inc. (collectively, "defendant-intervenors") (DI Cmts., ECF No. 83), concerning the final results of redetermination filed by Commerce pursuant to a remand order by this Court. *See* Remand Redetermination (Apr. 30, 2026), ECF No. 77. As discussed below, the remand redetermination fully complies with this Court's remand order in *SeAH Steel VINA Corp. v. United States*, 815 F. Supp. 3d 1369 (Ct. Int'l Trade 2025) (remand order), is

supported by substantial evidence, and is in accordance with law. Accordingly, the Court should sustain Commerce's remand redetermination.

## BACKGROUND

### I. Commerce's Final Results

In 2008, Commerce published the antidumping and countervailing duty orders on circular welded pipe (CWP) from China. *Circular Welded Carbon Quality Steel Pipe from the People's Republic of China*, 73 Fed. Reg. 42,547 (Dep't of Commerce July 22, 2008); *Circular Welded Carbon Quality Steel Pipe from the People's Republic of China*, 73 Fed. Reg. 42,545 (Dep't of Commerce July 22, 2008) (*Orders*). Defendant-intervenors submitted a request alleging circumvention of the *Orders* during the period 2017-2021 supported by information reasonably available to the defendant-intervenors. Circumvention Inquiry Request (May 17, 2022) (P.R. 1, C.R. 1). Commerce initiated a circumvention inquiry in response to defendant-intervenors' allegation to determine whether imported circular welded pipe completed in Vietnam from China-origin hot-rolled-steel (HRS) circumvented the *Orders*. *Circular Welded Carbon Quality Steel Pipe from the People's Republic of China; Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea; Certain Welded Carbon Steel Standard Pipes and Tubes from India: Initiation of Circumvention Inquiries on the Antidumping and Countervailing Duty Orders*, 87 Fed. Reg. 47,711 (Dep't of Commerce Aug. 4, 2022) (P.R. 24). SeAH Steel VINA Corporation (SeAH) was selected as a mandatory respondent based upon U.S. Customs and Border Protection (CBP) data of CWP from Vietnam during the period of inquiry, January 1, 2017, through December 31, 2021. Respondent Selection Memorandum (P.R. 33, C.R. 15).

In the preliminary determination, Commerce found circumvention. *Circular Welded Carbon Quality Steel Pipe From the People's Republic of China*, 88 Fed. Reg. 21,975 (Dep't of

Commerce Apr. 12, 2023) (Preliminary Determination) (P.R. 158) and accompanying PDM (P.R. 154). Commerce evaluated the 19 U.S.C. § 1677j(b)(3) factors and found that these factors were mixed and that none were dispositive on its circumvention analysis. PDM at 20-24; s*ee also* Preliminary Analysis Memorandum (Apr. 6, 2023) (P.R. 156, C.R. 126). Nevertheless, Commerce found that action was appropriate to prevent evasion under § 1677j(b)(1)(E). PDM at 24. In the final determination, Commerce continued to find circumvention. *Circular Welded Carbon Quality Steel Pipe from China: Final Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders,* 88 Fed. Reg. 77,287 (Dep't of Commerce Nov. 9, 2023) (*Final Determinations*) (P.R. 214) and accompanying IDM, (P.R. 213). Commerce again found that, although the factors under section 1677j(b)(3) were mixed, that did not detract from finding that action was appropriate to prevent evasion of the *Orders* pursuant to § 1677j(b)(1)(E). IDM at 37.

## II. Remand Order

On December 16, 2025, this Court remanded Commerce's final determination. Although the Court sustained Commerce's affirmative findings concerning the factors under § 1677j(b)(1)(A-D), the Court remanded the final determination for Commerce to identify and explain what other factors, besides those under § 1677j(b)(1)(A)-(D), supported its affirmative finding under § 1677j(b)(1)(E). *See* Remand Order at 27-28. Specifically, the Court found that "{Commerce's} assertion that the (b)(3) factors did not detract from a finding that an action is appropriate, assumes that the action was found to be appropriate on some other grounds {besides those enumerated under section 1677(b)(1)(A)-(D)}," and that "{b}ecause section 1677j(b)(1)(E) must be construed to have some operative effect," Commerce must reconsider or further explain its basis for the affirmative circumvention finding. *Id*. Additionally, the Court instructed that

"{t}o the extent that Commerce reconsiders its analysis of the (b)(3) factors," that Commerce should explain the basis for the time periods used and reconcile the statutory requirements with its consideration of the 2012-2016 versus 2017-2021 periods, as well as changes within the latter period, *i.e.*, 2017-2021. Remand Order at 27 n.21. Moreover, the Court emphasized that § 1677j(b)(3)(C) requires consideration of "whether imports into the foreign country of merchandise {from the country subject to the order} have increased after the initiation of the investigation which resulted in the issuance of such order or finding." *Id.*

## III. Remand Redetermination

On remand, Commerce reopened the record to permit parties to place information regarding other grounds apart from those under 19 U.S.C. §§ 1677j(b)(1)(A)-(D) that are relevant to determination whether an action is warranted to prevent evasion of the *Order*. (P.R.R. 9). No party submitted information in response. On March 9, 2026, Commerce placed on the record CBP data for SeAH from 2017-2021 and data from 2025, and publicly available United States International Trade Commission (USITC) import data for 2025. CBP Entry Data Memorandum (Mar. 9, 2026) (P.R.R. 7-8, C.R.R. 5-11). On March 13, 2026, in response to the data placed on the record on March 9, 2026, defendant-intervenors submitted data regarding volumes of hot-rolled substrate to Vietnam and SeAH submitted total quantities of subject merchandise exported to the United States by SeAH for each year between 2022-2025. Defendant-Intervenor's New Factual Information (Mar. 13, 2026) (P.R.R. 5); SeAH New Factual Information (Mar. 13, 2026) (P.R.R. 6, C.R.R. 4).

On March 31, 2026, Commerce issued draft results of redetermination in which Commerce re-evaluated the section 1677j(b)(3) factors and found that action was appropriate to prevent evasion of the *Orders*, pursuant to 19 U.S.C. § 1677j(b)(1)(E), relying on the existing

data on the record and additional factual data submitted in the remand proceeding. *See* Draft Redetermination, (P.R.R. 4, C.R.R. 3). Commerce invited comments from interested parties. *Id.* at 10. On April 14, 2026, interested parties filed comments on the draft redetermination. Defendant-intervenors agreed with Commerce's draft remand redetermination. Defendant-Intervenor's Draft Redetermination Comments (P.R.R. 2). However, SeAH disagreed with Commerce's findings and argued that Commerce is bound by the period of inquiry and should not consider post 2021 data. SeAH Draft Redetermination Comments (P.R.R. 3, C.R.R. 2).

On April 30, 2026, Commerce issued the final redetermination, in which Commerce addressed interested parties' comments and made a *negative* determination of circumvention. Remand Redetermination at 2. In the final redetermination, Commerce did *not* rely upon the USITC import data for 2025, CBP data for 2025, and SeAH's 2022-2025 data on CWP exports to the United States. *Id.* at 16. Commerce re-evaluated the data on the record for the § 1677j(b)(3) factors and determined that the (b)(3) factors did not support a finding that action was appropriate to prevent evasion of the *Orders*. *Id.* at 6-17. Commerce did this in the absence of "any new information, as requested from interested parties, demonstrating other grounds, apart from those under section {1677j}(b)(1)(A)-(D)} of the {U.S. code} that warrant action to prevent evasion{.}" *Id.* at 6.

Commerce considered all of the § 1677j(b)(3) factors and determined that, on the totality of the case-specific record before it, the factors do *not* support a finding of circumvention. *Id*. at 16. With respect to § 1677j(b)(3)(B), Commerce did not find record evidence showing that SeAH is affiliated with any company located in China that produces or exports HRS. *See id*. at 8-9.

Commerce also further explained that the selection of the time periods analyzed for the section 1677j(b)(3) factors is within its discretion, and why adopting an overly restrictive view of section 1677j(b)(3)(C) would impractically limit Commerce's ability to select appropriate time periods of inquiry and comparison based on timing of the alleged circumvention activity, which can occur even years after an underlying investigation is initiated. *See id*. at 11, 16.

**ARGUMENT**

**I. Standard of Review**

"The same standard of review applies to the review of a remand determination as to the review of the original determination." *Bethlehem Steel Corp. v. United States*, 223 F. Supp. 2d 1372, 1375 (Ct. Int'l Trade 2002). Accordingly, the "court will sustain {Commerce's} determination upon remand if it complies with the court's remand order, is supported by substantial evidence on the record, and is otherwise in accordance with law." *Amanda Foods (Vietnam) Ltd. v. United States*, 774 F. Supp. 2d 1286, 1290 (Ct. Int'l Trade 2011) (citation modified). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The substantial evidence standard is a "high barrier to reversal." *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006) (citation omitted). "Commerce's finding may still be supported by substantial evidence even if two inconsistent conclusions can be drawn from the evidence." *SolarWorld Ams., Inc. v. United States*, 910 F.3d 1216, 1222 (Fed. Cir. 2018) (citation modified).

Moreover, "'when an agency exercises discretion granted by a statute, judicial review is typically conducted under the Administrative Procedure Act's deferential arbitrary-and-

capricious standard.'" *Mosaic Co. v. United States*, 160 F.4th 1340, 1346 (Fed. Cir. 2025) (quoting *Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*, 605 U.S. 168, 179-80 (2025)).

## II. Legal Framework

To prevent circumvention of antidumping and countervailing duty orders, the statute permits Commerce to include within the scope of an order merchandise completed in a foreign country other than the order country if certain criteria are met. 19 U.S.C. § 1677j(b). This Court has previously sustained Commerce's findings that the criteria under 19 U.S.C. § 1677j(b)(1)(A) – (D) have been met. As such, relevant here is the remaining criteria under 19 U.S.C. § 1677j(b)(1)(E), which are additional, non-exhaustive, discretionary factors to consider in weighing whether to find circumvention. Commerce thus will "take into account such factors as"

> (A) the pattern of trade, including sourcing patterns,
>
> (B) whether the manufacturer or exporter of the merchandise . . . described in {19 U.S.C. § 1677j(b)(1)(B)} is affiliated with the person who uses the merchandise described in {19 U.S.C. § 1677j(b)(1)(B)} to assemble or to complete in the foreign country the merchandise that is subsequently imported into the United States; and
>
> (C) whether imports into the foreign country of the merchandise described in {19 U.S.C. § 1677(b)(1)(B)} have increased after the initiation of the investigation that resulted in the issuance of such order.

19 U.S.C. § 1677j(b)(3) (citation modified).

In line with this congressional mandate, Commerce has a long-standing practice of not allowing one single factor in its analysis to be controlling. *See* PDM at 20. Commerce bases its determination on the totality of the circumstances. *See, e.g.*, *Certain Cold-Rolled Steel Flat Products from the Republic of Korea: Affirmative Preliminary Determination of Anti-*

*Circumvention Inquiries on the Antidumping Duty and Countervailing Duty Orders*, 84 Fed. Reg. 32,875 (Dep't of Commerce July 10, 2019), and accompanying Preliminary Issues an Decision Memo at 20; unchanged in *Certain Cold-Rolled Steel Flat Products From the Republic of Korea: Affirmative Final Determinations of Circumvention of the Antidumping Duty and Countervailing Duty Orders*, 84 Fed. Reg. 70,934 (Dep't of Commerce Dec. 26, 2019), and accompanying Issues and Decision Memorandum at 69-70.

## III. Commerce's Remand Redetermination Is Lawful and Supported by Substantial Evidence

Commerce's remand redetermination is lawful and supported by substantial evidence because between the 2012-2016 period and the 2017-2021 period, Chinese exports of HRS to Vietnam increased 1.7 percent. Commerce reasonably re-evaluated the record evidence for the section 1677j(b)(3) factors and determined that based upon the totality of factors, the section 1677j(b)(3) factors did not support that action was appropriate to prevent evasion of the *Orders* pursuant to section 1677j(b)(1)(E).

### A. Commerce Reasonably Re-evaluated the Record Evidence for the Section 1677j(b)(3) Factors

In its final remand redetermination and after considering comments on the draft remand redetermination, Commerce re-evaluated the record evidence for the factors under section 1677j(b)(3) without reliance upon USITC import data for 2025, CBP Data for 2025, and SeAH's 2022-2025 data on CWP exports to the United States. For section 1677j(b)(3)(A)(the pattern of trade, including sourcing patterns), Commerce observed that the record showed that overall U.S. imports of CWP from Vietnam increased 8.2 percent from the period of 2012-2016 to 2017-2021 and overall U.S. imports of CWP from China decreased 16.2 percent between those same periods. Remand Redetermination at 7. Commerce also observed that the quantity of U.S.

imports of CWP from Vietnam in relation to the quantity U.S. imports of CWP from the world increased from 7.9 percent to 8.8 percent between the 2012-2016 period to the 2017-2021 period. *Id.* at 8. Commerce further observed that U.S. imports of CWP from Vietnam decreased annually during the entire period of inquiry, which is from 2017 to 2021. *Id.* Additionally, Commerce accounted for [ ] SeAH's exports to the United States of CWP from Vietnam using Chinese HRS during the period 2017-2021, and [ ] in the quantity of domestic and third-country sales of CWP produced from China-origin HRS, from 2017 to 2021. *Id.* Because there were only marginal increases in the quantity of U.S. imports of CWP from Vietnam in relation to small decreases in the volume of U.S. imports of CWP from China, marginal increases of the quantity of U.S. imports of CWP from Vietnam in relation to the quantity U.S. imports of CWP from the world from the 2012-2016 to the 2017-2021 period, [ ] in the quantity of SeAH's sales of U.S. exports of CWP produced from China-origin HRS, and [ ] in the quantity of domestic and third-country sales of CWP produced from China-origin HRS[1], Commerce found that section 1677j(b)(3)(A) did not support that evasion of the *Orders* has likely taken place. Remand Redetermination at 8.

For section 1677j(b)(3)(B) (whether the manufacturer or exporter of the merchandise described in paragraph (1)(B) is affiliated with the person who uses the merchandise described in paragraph (1)(B) to assemble or complete in the foreign country the merchandise that is

[1] Although Commerce stated "[ ] in the quantity of domestic and third-country sales of CWP produced from China-origin HRS when comparing the 2012-2016 period to the 2017-2021 period" in the final remand redetermination, Commerce made a clerical error in this statement and meant that there was [ ] in the quantity of domestic and third-country sales of CWP produced from China-origin HRS from 2017 to 2021. Remand Redetermination at 8.

subsequently imported into the United States), Commerce observed that SeAH is not affiliated with any of its HRS suppliers or Chinese HRS producers, but Commerce found that affiliation was not dispositive and that a finding of no affiliation is neutral. Remand Redetermination at 9-10.

For section 1677j(b)(3)(C) (whether imports into the foreign country of the merchandise described in paragraph (1)(B) have increased after the initiation of the investigation which resulted in the issuance of such order or finding), Commerce observed that between the 2012-2016 period and the 2017-2021 period, Chinese exports of HRS to Vietnam increased 1.7 percent, and China's exports of HRS to the world, excluding Vietnam, decreased by 12.2 percent. Remand Redetermination at 10. Commerce also observed that the quantity of Chinese exports of HRS to Vietnam in relation to the quantity of Chinese exports of HRS to all countries, increased for the 2017-2021 period compared to the 2012-2016 period from 23.6 percent to 26.3 percent. *Id.* Commerce further explained that SeAH's imports of HRS from China [ ] from 2017 to 2021. *Id.* Because Chinese exports of HRS to Vietnam increased negligibly from the 2012-2016 to the 2017-2021 periods, the Chinese exports of HRS to Vietnam in relation to the quantity of Chinese exports of HRS to all countries marginally increased from the 2012-2016 to the 2017-2021 periods, and data for SeAH show that the quantity of HRS it imported from China [ ] from 2017 to 2021, Commerce found that section 1677j(b)(3)(C) did not support that evasion of the *Orders* has likely taken place. Remand Redetermination at 10-11. Therefore, based upon the totality of the evidence, Commerce concluded that the statutory factor under section 1677j(b)(1)(E) has not been met. Remand

Redetermination at 17; *see also* IDM at 40 (Commerce explained that it bases its circumvention determinations on the "totality of the evidence.").

**B. The Evidence on this Record Differs from Other Circumvention Inquiries before the Court**

Defendant-intervenors' arguments that Commerce treated identical data in different circumvention proceedings in opposite ways, are unpersuasive. DI Cmts at 5-8. Defendant-intervenors specifically identify the 8.2 percent increase of U.S. imports of CWP from Vietnam, which Commerce viewed as marginal in this remand and significant in the remands of the circumvention inquiries for Korea and India. *Id.* (citing Final Results of Redetermination Pursuant to Court Remand, *Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea* (May 1, 2026) (Korea Final Remand Redetermination) and Final Results of Redetermination Pursuant to Court Remand, *Certain Welded Carbon Steel Standard Pipes and Tubes from India* (May 1, 2026) (India Final Remand Redetermination)).

However, Commerce evaluates the record information as a whole and looks at the totality of the evidence. As such, Commerce does not evaluate one data point, but the entirety of the relevant data. *See, e.g.*, *Cold- Rolled Steel from Korea* IDM at 69-70; *see* IDM at 40. Although there may be some data points that are the same, the information on the record of this circumvention inquiry differs greatly from the information on the records of the circumvention inquiries for Korea or India. In the India circumvention inquiry, the data indicated a 580.3 percent increase of Indian HRS imports into Vietnam between the 2012-2016 period and the 2017-2021 period, and in the Korea circumvention inquiry there was a severalfold increase in SeAH's exports of CWP from Vietnam with Korean HRS from 2017 to 2021. India Final Remand Redetermination at 9; Korea Final Remand Redetermination at 7. The data of this record are different. Indeed, in this underlying proceeding, Chinese HRS imports into Vietnam

increased only 1.7 percent between the 2012-2016 period and the 2017-2021 period, and SeAH's exports of CWP from Vietnam with Chinese HRS [ ] from 2017 to 2021. Remand Redetermination at 8, 10. As such, when considered with the other data on the record of this proceeding, Commerce did not consider the 8.2 percent increase of imports of CWP from Vietnam as a significant factor indicating that action was appropriate to prevent evasion of the *Orders*. Remand Redetermination at 8; *see also U.S. Steel Corp. v. United States,* 637 F. Supp. 2d 1199, 1218 (Ct. Int'l Trade 2009) ("Even assuming that Commerce's other Section 129 proceedings are factually identical to the case here, as a matter of law, each agency determination is *sui generis*, involving a unique combination and interaction of many variables, and therefore a prior administrative determination is not legally binding on other reviews before this court"); *accord Nucor Corp. v. United States,* 414 F.3d 1331, 1340 (Fed. Cir. 2005).

Thus, Commerce made its determination based upon the record before it, not upon the record of other circumvention inquiries, and explained why based upon the record for this proceeding, the record did not demonstrate that action was appropriate to prevent evasion of the orders. *See, e.g.*, *Certain Steel Nails From Taiwan,* 85 Fed. Reg. 14,635 (Dep't of Commerce Mar. 13, 2020), IDM at 20 ("each segment of a proceeding stands on its own based on the particular evidentiary record of that segment.").

**C. Commerce Considered All the Relevant Data on the Record**

Defendant-intervenors assert that Commerce treated respondent-specific data as dispositive, which contradicts *Al Ghurair Iron & Steel LLC v. United States*, 65 F.4th 1351, 1359 (Fed. Cir. 2023). DI Cmts at 8-11. Specifically, the defendant-intervenors assert that Commerce changed its evaluation of section 1677j(b)(3)(C) from the draft redetermination result to the final remand regarding the country-wide data and [

]. *Id.* However, Commerce considered all the relevant data on the record [ ] in line with the precedent of the Federal Circuit. The Federal Circuit explained that how much weight Commerce put in certain data factors, indulging respondent-specific or country-wide data, was a matter of evidentiary weight that Commerce had the discretion to try. *Al Ghurair*, 65 F.4th at 1359 ("To the extent that {appellant} is asserting that Commerce should have found AGIS-specific data more probative than UAE data, we recognize that substantial evidence review does not permit us to reweigh the evidence.")(citing *Inland Steel Indus., Inc. v. United States*, 188 F.3d 1349, 1359 (Fed. Cir. 1999)).

Regardless, Commerce used the entirety of the record to make its decision on the section 1677j(b)(3)(C) factor. Indeed, as defendant-intervenors acknowledge, Commerce considered the negligible increase of 1.7 percent of China's exports of HRS to Vietnam and the marginal increase from 23.6 percent to 26.3 percent of Chinese exports of HRS to Vietnam in relation to the quantity of Chinese exports of HRS to all countries between the 2012-2016 period to the 2017-2021 period. Remand Redetermination at 10-11. Moreover, although defendant-intervenors also contend that Commerce omitted that the negligible increase took place in the context of a worldwide drop of Chinese HRS exports by 12.2 percent, Commerce explicitly considered that "the quantity of Chinese exports of HRS to Vietnam increased by 1.7 percent from the 2012-2016 period to the 2017-2021 period, while the quantity of Chinese exports of HRS to the rest of the world (excluding Vietnam) decreased by 12.2 percent from the 2012-2016 period to the 2017-2021 period." DI Cmts at 10 n. 2; Remand Redetermination at 10.

Commerce considered the magnitude of the countrywide data, [



**BPI OMITTED**

]. Remand Redetermination at 10. Defendant-intervenors contend that Commerce gave countrywide data no weight because Commerce viewed the increases as negligible and marginal. DI Cmts at 10-11. However, defendant-intervenors mistakenly equate considering the magnitude of the countrywide data with giving no weight to the countrywide data. Commerce considered the countrywide data and gave it appropriate weight based upon the facts.

Moreover, Commerce is not obligated to uphold its draft remand determination in the final remand. Similar to preliminary determinations, draft remand redeterminations are drafts, subject to change. *See, e.g.*, *NTN Bearing Corp. v. United States*, 74 F.3d 1204, 1208 (Fed. Cir. 1995) ("However, preliminary determinations are 'preliminary' precisely because they are subject to change."). Here, after consideration of the draft remand comments, in the final remand redetermination, Commerce did not rely upon the USITC import data for 2025, CBP data for 2025, and SeAH's 2022-2025 data on CWP exports to the United States, as Commerce had done in the draft remand, and re-evaluated the information on the record regarding the section 1677j(b)(3) factors. Based upon Commerce's fresh re-evaluation of the relevant information on the record regarding the (b)(3) factors, Commerce found that the statutory factor under section 1677j(b)(1)(E) had not been met and made a negative determination of circumvention.

**CONCLUSION**

For these reasons, we respectfully request that the Court sustain Commerce's remand redetermination.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director



**BPI OMITTED**

FRANKLIN E. WHITE, JR.
Assistant Director

s/ Tate Walker
TATE WALKER
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, DC 20044
Tel: (202) 353-9303

*Attorneys for Defendant*

Of Counsel:

VANIA WANG
Senior Counsel
Office of the Chief Counsel
for Trade Enforcement and Compliance
United States Department of Commerce

August 18, 2026

## CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this Court, that this brief contains 3,857 words, excluding the table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature, as calculated by the word processing system used to prepare this brief (Microsoft Word).

s/ Tate N. Walker
TATE N. WALKER