UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE MARK A. BARNETT, JUDGE

SEAH STEEL VINA CORPORATION,

*Plaintiff,*

v.

UNITED STATES,

*Defendant,*

*and*

BULL MOOSE TUBE COMPANY; MARUICHI AMERICAN CORPORATION; WHEATLAND TUBE COMPANY; THE UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC; NUCOR TUBULAR PRODUCTS INC.,

*Defendant-Intervenors*

PUBLIC VERSION

Court No. 23-258

JOINT REMAND APPENDIX

September 1, 2026

*SeAH Steel VINA Corp. v. United States*, Court No. 23-258
PUBLIC JOINT REMAND APPENDIX

Table of Contents


| Tab. No. | Document | Date | P.R./ P.R.R. | C.R./ C.R.R. | Pages Included |
|---|---|---|---|---|---|
| 1 | DIPs' Response to Supplemental Questionnaire | 28-Jun-22 | P.R. 17-19 | C.R. 7-9 | Cover Page, Exhs. Supp-1, Supp-2 |
| 2 | Response of SeAH Steel VINA Corporation to the Department's September 6 Initial Questionnaire | 7-Oct-22 | P.R. 65-67 | C.R. 20, 25, 30 | Cover Page, Appx. 10 and 33 |
| 3 | Circular Welded Carbon Quality Steel Pipe from the People's Republic of China: Preliminary Decision Memorandum for the Circumvention Inquiry on the Antidumping Duty and Countervailing Duty Orders (PDM) | 6-Apr-23 | P.R. 154 | | Pg. 1, 20-24 |
| 4 | Preliminary Analysis Memorandum for SeAH VINA | 6-Apr-23 | P.R. 156 | C.R. 126 | Pg. 1, 6 |
| 5 | Circular Welded Carbon Quality Steel Pipe from China: Final Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders, 88 Fed. Reg. 77,287 | 9-Nov-23 | P.R. 214 | | All |
| 6 | Issues and Decision Memorandum for the Final Affirmative Determination of Circumvention of the Antidumping Duty Order on Circular Welded Carbon Quality Steel Pipe from China (IDM) | 2-Nov-23 | P.R. 213 | | Pg. 1, 20, 37-40 |
| 7 | Request for Information | 6-Feb-26 | P.R.R. 9 | | All |
| 8 | Draft Remand Redetermination | 31-Mar-26 | P.R.R. 4 | C.R.R. 3 | All |

| | | | | | |
|---|---|---|---|---|---|
| 9 | Final Results of Redetermination Pursuant to Court Remand | 30-Apr-26 | P.R.R. 1 | C.R.R.1 | All |

TAB-1

DIPs' Response to Supplemental Questionnaire
P.R. 17-19; C.R. 7-9

DOC Case Nos. A-570-910 and C-570-911
Total Pages: 88
§781(b) Circumvention Inquiry
(Completion or Assembly in 3rd Country)
AD/CVD Operations Offices II and IV

**PUBLIC VERSION**
Business Proprietary Treatment Requested for Information Removed from Brackets in Exhibits Supp-3, Supp-4

June 28, 2022

**VIA ACCESS**
The Honorable Gina M. Raimondo
Secretary of Commerce
Attention: Enforcement and Compliance
APO/Dockets Unit, Room 18022
U.S. Department of Commerce
14th Street and Constitution Avenue, N.W.
Washington, D.C. 20230

**Re:** ***Circular Welded Carbon Quality Steel Pipe from the People's Republic of China* – Circumvention Inquiry Supplemental Questionnaire Response**

Dear Secretary Raimondo:

On behalf of Bull Moose Tube Company ("Bull Moose"), Maruichi American Corporation ("Maruichi American"), Nucor Tubular Products Inc. ("Nucor Tubular"), Wheatland Tube Company ("Wheatland"), and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC ("USW") (collectively, "Domestic Interested Parties"), we hereby submit this response to the Department of Commerce's (the "Department") Supplemental Questionnaire issued on June 21, 2022.[1] This

[1] Letter from Stephen Bailey, Program Manager, AD/CVD Operations, Off. IV, Enf't & Compliance, to Schagrin Associates and Wiley Rein LLP, re: *Circumvention Inquiry of Circular Welded Carbon Quality Steel Pipe from the People's Republic of China (A-570-910, C-570-911): Supplemental Questionnaire* (June 21, 2022).

# EXHIBIT SUPP-1

**Chinese Exports of HRS in Coils**

| Source | Total Quantity 2012-2016 | Total Quantity 2017-2021 | % Change | Monthly Average 2012-2016 | Monthly Average 2017-2021 | % Change |
|---|---|---|---|---|---|---|
| | Quantity (Metric Tons) | | | | | |
| Vietnam | 12,057,205 | 12,259,676 | 1.7% | 200,953 | 204,328 | 1.7% |
| All Others | 39,109,800 | 34,328,629 | -12.2% | 651,830 | 572,144 | -12.2% |
| World Total | 51,167,005 | 46,588,305 | -8.9% | 852,783 | 776,472 | -8.9% |

Source: Global Trade Atlas (GTA) for hot-rolled sheet and strip in coils for HTS numbers 720810, 720825, 720826, 720827, 720836, 720837, 720838, 720839, 721114, 721119, 722530, 722599 and 722691.

| 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 |
|---|---|---|---|---|---|---|---|---|---|
| Quantity (Metric Tons) | | | | | | | | | |
| 813,250 | 1,183,320 | 2,613,040 | 3,245,057 | 4,202,538 | 3,262,019 | 3,017,090 | 1,889,041 | 1,451,006 | 2,640,520 |
| 4,714,379 | 4,498,945 | 9,080,398 | 11,007,796 | 9,808,280 | 8,830,612 | 6,892,697 | 6,323,070 | 4,791,823 | 7,490,426 |
| 5,527,630 | 5,682,265 | 11,693,439 | 14,252,854 | 14,010,818 | 12,092,632 | 9,909,787 | 8,212,111 | 6,242,829 | 10,130,946 |

# EXHIBIT SUPP-2

**U.S. Imports of CWP from the World**

| Partner Country | Total Quantity 2012-16 | Total Quantity 2017-2021 | % Change | Monthly Average 2012-16 | Monthly Average 2017-2021 | % Change | Share of Total 2012-16 | Share of Total 2017-2021 |
|---|---|---|---|---|---|---|---|---|
| | Quantity (MTs) | | | | | | | |
| China | 114,246 | 95,730 | -16.2% | 1,904 | 1,596 | -16.2% | 3.2% | 2.8% |
| Vietnam | 281,799 | 304,987 | 8.2% | 4,697 | 5,083 | 8.2% | 7.9% | 8.8% |
| All others | 3,153,923 | 3,062,843 | -2.9% | 52,565 | 51,047 | -2.9% | 88.8% | 88.4% |
| World Total | 3,549,968 | 3,463,561 | -2.4% | 59,166 | 57,726 | -2.4% | 100.0% | 100.0% |

Note: Data shown above are U.S. imports for domestic consumption.
Source: ITC Dataweb for HTS numbers 7306.30.1000, 7306.30.5025, 7306.30.5032, 7306.30.5040, 7306.30.5055, 7306.30.5085, and 7306.30.5090.

| 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 |
|---|---|---|---|---|---|---|---|---|---|
| Quantity (MTs) | | | | | | | | | |
| 3,427 | 4,576 | 5,777 | 21,783 | 78,684 | 48,471 | 17,581 | 9,769 | 6,704 | 13,205 |
| 38,243 | 59,371 | 54,927 | 75,653 | 53,604 | 89,240 | 67,581 | 59,763 | 44,847 | 43,556 |
| 673,860 | 566,332 | 587,240 | 734,144 | 592,347 | 866,823 | 678,740 | 523,283 | 482,929 | 511,068 |
| 715,530 | 630,279 | 647,943 | 831,580 | 724,635 | 1,004,534 | 763,902 | 592,815 | 534,480 | 567,830 |

TAB-2

Response of SeAH Steel VINA Corporation to the
Department's September 6 Initial Questionnaire
P.R. 65-67; C.R. 20, 25, 30

Barcode:4293499-02 A-570-910 CIRC - Anti Circumvention Inquiry - Vietnam Imports

Case Nos. A-570-910, C-570-911
Total Pages: 577
Circumvention Inquiry
(Vietnam Imports)
AD/CVD Enforcement Office IV
Proprietary Information Removed
from Narrative and Appendices
1-2, 4-19, 21-25, 27-39
Public Version

In the Matter of:

CIRCUMVENTION INQUIRY OF
CIRCULAR WELDED CARBON QUALITY
STEEL PIPE FROM CHINA -
VIETNAM IMPORTS

**Public Version**

RESPONSE OF
SEAH STEEL VINA CORPORATION TO THE DEPARTMENT'S
SEPTEMBER 6 INITIAL QUESTIONNAIRE

VOLUME I

NARRATIVE RESPONSE AND APPENDICES 1, 2, 4 THROUGH 25, 27 THROUGH 39

WINTON & CHAPMAN PLLC
1900 L Street, N.W. Suite 611
Washington, D.C. 20036
(202) 774-5500

Counsel for SeAH Steel VINA Corporation

October 7, 2022

Filed By: vmai@jmwinton.com, Filed Date: 10/7/22 11:44 AM, Submission Status: Approved

Appendix 10

SeAH VINA's Yearly HRS Purchases and CWP Sold

SeAH Steel VINA Corp.

Yearly Totals for the Quantity of HRS Purchased and Subject Pipes and Tubes Sold from January 1, 2017 through December 31, 2021

[

| YEAR | HRS Purchased (MT) | HRS Imported from China (MT) | Exports of Pipe and tube (MT) | Pipe and tube Exports to the U.S. (MT) | Pipe and tube exported to the U.S. produced from HRS imported from China (MT) |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

]

Barcode:4293499-04 A-570-910 CIRC - Anti Circumvention Inquiry - Vietnam Imports

Appendix 33

SeAH Steel and SeAH VINA CWP Domestic Sales and Exports

Filed By: vmai@jmwinton.com, Filed Date: 10/7/22 11:44 AM, Submission Status: Approved

SeAH Steel VINA Corp.

Quantity and value of SeAH VINA's Affiliate domestic and export sales of CWP produced in China

| Year | All Markets (Domestic + Third Countries) | | United States | |
|---|---|---|---|---|
| | Quantity (MT) | Value Amount (USD) | Quantity (MT) | Value Amount (USD) |
| [ | - | - | - | - |
| | - | - | - | - |
| | - | - | - | - |
| | - | - | - | - |
| | - | - | - | - |
| | - | - | - | - ] |

SeAH Steel VINA Corp.

Quantity and value of SeAH VINA's domestic and export sales of CWP produced in Vietnam

[

| Year | All Markets (Domestic + Third Countries) | | United States | |
|---|---|---|---|---|
| | Quantity (MT) | Value Amount (USD) | Quantity (MT) | Value Amount (USD) |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

]

SeAH Steel VINA Corp.

Quantity and value of SeAH VINA's domestic and export sales of CWP produced in Vietnam by using HRS from China

| Year | All Markets (Domestic + Third Countries)(*) | | United States | |
|---|---|---|---|---|
| | Quantity (MT) | Value Amount (USD) | Quantity (MT) | Value Amount (USD) |
| [ | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | ] |

(*) Quantity and value amount for domestic and third countries are calculated by multiplying the actual total CWP by a purchase ratio of Chinese HRS out of total purchase by each year.

TAB-3

Circular Welded Carbon Quality Steel Pipe from the People's Republic of China: Preliminary Decision Memorandum for the Circumvention Inquiry on the Antidumping Duty and Countervailing Duty Orders (PDM)
P.R. 154

Barcode:4363640-02 A-570-910 CIRC - Anti Circumvention Inquiry - Vietnam Imports

UNITED STATES DEPARTMENT OF COMMERCE
International Trade Administration
Washington, D.C. 20230

A-570-910, C-570-911
Circumvention Inquiry
Vietnam Imports
**Public Document**
E&C/OIV: Team

April 6, 2023

**MEMORANDUM TO:** Abdelali Elouaradia
Deputy Assistant Secretary
for Enforcement and Compliance

**FROM:** James Maeder
Deputy Assistant Secretary
for Antidumping and Countervailing Duty Operations

**SUBJECT:** Circular Welded Carbon Quality Steel Pipe from the People's Republic of China: Preliminary Decision Memorandum for the Circumvention Inquiry on the Antidumping Duty and Countervailing Duty Orders

## I. SUMMARY

The U.S. Department of Commerce (Commerce) preliminarily determines that imports of circular welded carbon quality steel pipe (CWP) completed in the Socialist Republic of Vietnam (Vietnam) using hot-rolled steel (HRS) produced in the People's Republic of China (China) (inquiry merchandise) are circumventing the antidumping duty (AD) and countervailing duty (CVD) orders on CWP from China.[1]

## II. BACKGROUND

On May 17, 2022, Commerce received an allegation from domestic interested parties[2] alleging circumvention of the *Orders*.[3] On August 4, 2022, Commerce initiated a circumvention inquiry pursuant to section 781(b) of the Tariff Act of 1930, as amended (the Act) to determine whether

[1] *See Notice of Antidumping Duty Order: Circular Welded Carbon Quality Steel Pipe from the People's Republic of China,* 73 FR 42547 (July 22, 2008); *Circular Welded Carbon Quality Steel Pipe from the People's Republic of China: Notice of Amended Final Affirmative Countervailing Duty Determination and Notice of Countervailing Duty Order*, 73 FR 42545 (July 22, 2008) (collectively, *Orders*).
[2] The domestic interested parties are Bull Moose Tube Company, Maruichi American Corporation, Nucor Tubular Products Inc., Wheatland Tube Company, and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC (collectively, the domestic interested parties).
[3] *See* Domestic Interested Parties' Letters, "Request for Circumvention Inquiry," dated May 17, 2022 (Circumvention Allegation) and "Circumvention Inquiry Supplemental Questionnaire Response," dated June 28, 2022 (Circumvention Allegation Supplement).

Filed By: Krisha Hill, Filed Date: 4/7/23 4:16 PM, Submission Status: Approved

INTERNATIONAL TRADE ADMINISTRATION

For SeAH VINA, to ascertain the value of the merchandise produced in the foreign country, *i.e.*, HRS from China, we relied upon Malaysian import data from GTA, as noted above, in our analysis. We calculated an SV for each HRS type (*i.e.*, based on thickness level of the HRS) consumed by SeAH VINA. We then calculated a simple average of the SVs, and compared this value to the average value of the CWP produced by SeAH VINA from China-origin HRS in Vietnam and exported to the United States.[115] Based on our analysis of the record evidence, we find that the value of the China-origin HRS constitutes a significant portion of the value of the CWP made by SeAH VINA in Vietnam from China-origin HRS and exported to the United States.

**Other Factors to Consider**

Section 781(b)(3) of the Act directs Commerce to consider additional factors in determining whether to include merchandise assembled or completed in a foreign country within the scope of an order, such as:

> (A) the pattern of trade, including sourcing patterns; (B) whether the manufacturer or exporter of the merchandise … is affiliated with the person who uses the merchandise … to assemble or complete in the foreign country the merchandise that is subsequently imported into the United States; and (C) whether imports into the foreign country of the merchandise … have increased after the initiation of the investigation which resulted in the issuance of such order.

(1) Pattern of Trade and Sourcing Patterns (781(b)(3)(A))

We analyzed patterns of trade by comparing publicly available U.S. import statistics of CWP from the periods 2012-2016 to 2017-2021 (*i.e.*, the period of inquiry). A comparison of the U.S. import data for the five-year periods indicates that the cumulative quantity of U.S. imports of CWP from Vietnam during each period increased from 281,799 MT to 304,987 MT (*i.e.*, an increase of 8.2 percent or 23,189 MT). In contrast, the cumulative quantity of U.S. imports of CWP from China decreased during this period, from 114,246 MT in 2012 - 2016 to 95,730 MT in 2017 – 2021 (*i.e.*, a decrease 16.2 percent or 18,534 MT).

| U.S. Imports of CWP (MT) | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | **2012** | **2013** | **2014** | **2015** | **2016** | **2017** | **2018** | **2019** | **2020** | **2021** |
| **China** | 3,427 | 4,576 | 5,777 | 21,783 | 78,684 | 48,471 | 17,581 | 9,769 | 6,704 | 13,205 |
| **Vietnam** | 38,243 | 59,371 | 54,927 | 75,653 | 53,604 | 89,240 | 67,581 | 59,763 | 44,847 | 43,556 |

With respect to Vietnamese imports of HRS from China, the cumulative quantity increased from 12,057,205 MT to 12,259,676 MT (*i.e.*, an increase of 1.7 percent or 202,471 MT) from the periods 2012-2016 to 2017-2021, while cumulative HRS imports from China to the rest of the

[115] *See* SeAH VINA's Preliminary Analysis Memorandum for details of our calculations, which involve information for which SeAH VINA claimed business proprietary treatment.

world (excluding Vietnam) decreased by 12.2 percent (*i.e.*, 39,109,800 MT to 34,328,629 MT) for the same periods.[116]

We also analyzed patterns of trade with respect to SeAH VINA from 2017-2021. SeAH VINA provided quantity and value information of: (1) its purchases of HRS from China, Vietnam, and third-countries;[117] (2) its production of CWP;[118] and (3) its entries and sales of CWP to the United States, for the period of inquiry.[119] Due to the business proprietary nature of this information and for further details, *see* SeAH VINA's Preliminary Analysis Memorandum. SeAH VINA's data show an increase in the quantity of HRS imported from China. The data do not show, however, that there was a subsequent increase in the quantity of pipe and tube exports to the United States produced from HRS imported from China.

In this instance, the available GTA data show exports of CWP from Vietnam increased to the United States during the period of inquiry and that the quantity of CWP exported from China to the United States decreased over the same period. Moreover, Vietnam's sourcing of HRS from China has also increased during the period of inquiry. However, based on the information on the record, we find that the patterns of trade examined are not dispositive with respect to either an affirmative or a negative circumvention determination.

We note that in *Cold-Rolled Steel from Korea,* the patterns of trade were not supportive of an affirmative finding of circumvention. In *Cold-Rolled Steel from Korea*, for example, we stated:

> While the pattern of trade and export levels of {cold-rolled steel (CRS)} from Vietnam to the United States show a decline between the comparison and base periods, we nonetheless find that the export levels have not dwindled to insignificant levels. Moreover, while the Act directs that Commerce take into account the factors enumerated under 781(b)(3) of the Act, Commerce finds these factors to be non-dispositive. While taking into account 781(b)(3)(A) and 781(b)(3)(C), we preliminary find that the totality of the circumstances present here (i.e., the factors we analyzed under 781(b)(1), 781(b)(2), and 781(b)(3)(B) of the Act), indicate that there was circumvention of the CRS Orders as a result of Korean-origin HRS being processed into CRS in Vietnam.[120]

In *Cold-Rolled Steel from Korea*, as in this circumvention inquiry, the preponderance of evidence supports an affirmative finding. Given that Commerce has a long-standing practice of not allowing one single factor of our analysis to be controlling, Commerce finds that in this instance

---

[116] *Id*.
[117] See SeAH VINA's IQR at Appendices 9-A, 9-B, 9-C, and 10.
[118] See SeAH VINA's SQR at Appendices S-18 and S-19.
[119] See SeAH VINA's SQR at Appendices S-15-1, S-15-2, S-16, S-17-1, and S-17-2.
[120] *See Certain Cold-Rolled Steel Flat Products from the Republic of Korea: Affirmative Preliminary Determination of Anti-Circumvention Inquiries on the Antidumping Duty and Countervailing Duty Orders*, 84 FR 32875 (July 10, 2019) (*Cold-Rolled Steel from Korea Preliminary Determination*), and accompanying PDM at 20; unchanged in *Certain Cold-Rolled Steel Flat Products From the Republic of Korea: Affirmative Final Determinations of Circumvention of the Antidumping Duty and Countervailing Duty Orders*, 84 FR 70934 (December 26, 2019) (*Cold-Rolled Steel from Korea*), and accompanying IDM at 69-70.

placing more weight on the patterns of trade is not appropriate when other factors clearly support an affirmative determination.

It is also important to note that in the recent *Circular Welded Pipe from India* inquiry, Commerce stated:

> We also disagree that our determination in this case establishes a new requirement that a certain pattern of trade must be established for an affirmative circumvention finding. Circumvention inquiries are, by their nature, fact-specific inquiries. Thus, Commerce's circumvention determinations are based on the totality of circumstances and our consideration of the facts in each individual case.[121]

Consistent with the statutory requirements, we considered the 781(b)(3) factors in this inquiry, and whether imports of HRS into Vietnam have increased after initiation of the investigation that resulted in the issuance of the *Orders*, which date back to 2008. Based on the data available on the current inquiry records we find that the evidence with respect to these factors is mixed and inconclusive.

(2) Affiliation (781(b)(3)(B))

SeAH VINA is a subsidiary of SSI, which is a subsidiary of SSHC, a publicly-traded Korean company.[122] SSI also owns 50 percent of the shares of Vietnam Steel Pipe Corp. (Vinapipe), which is another Vietnamese producer of welded-pipe products.[123] The remaining 50 percent of the shares of Vinapipe are owned by Vietnam Steel Corporation, which is a Vietnamese corporation that is wholly-owned by the government of Vietnam.[124] SeAH VINA is not affiliated with any company located in China that produces CWP.[125] Neither SeAH VINA nor Vinapipe had any sales to the United States during the inquiry period of CWP produced by Vinapipe.[126] Conversely, Vinapipe did not have any sales to the United States during the inquiry period of CWP produced by SeAH VINA.[127] Furthermore, Vinapipe did not produce any CWP that was certified to meet the specifications (*i.e.*, ASTM A53 or ASTM A500) of the CWP that SeAH VINA exported to the United States.[128] SeAH VINA's U.S. affiliates, Pusan Pipe America, Inc. (PPA) and State Pipe & Supply, Inc. (State Pipe) were involved in the sales of CWP produced by SeAH VINA.[129] Additionally, neither PPA nor State Pipe have production facilities that produce CWP.[130] Neither SSI nor SSHC have production facilities that produce HRS, primary iron and steel, or other intermediate steel inputs used in the production of CWP.[131] Moreover, neither

---

[121] *See Certain Welded Carbon Steel Standard Pipes and Tubes From India: Final Negative Determinations of Circumvention of the Antidumping Duty Order*, 88 FR 12917 (March 1, 2023) (*Circular Welded Pipe from India*), and accompanying IDM at 9-10.
[122] *See* SeAH VINA's IQR at 5, and Appendices 1 and 18; *see also* SeAH VINA's SQR at Appendix S-2.
[123] *See* SeAH VINA's IQR at 5.
[124] *Id*.
[125] *See* SeAH VINA's SQR at 7 and Appendix S-1 .
[126] *Id*. at 6.
[127] *See* SeAH VINA's SQR at 4.
[128] *See* SeAH VINA's IQR at 6.
[129] *Id.* at 4.
[130] *Id*. at 10.
[131] *Id*. at 16.

SSHC nor SSI have subsidiaries or affiliates that produce HRS, primary iron and steel, or other inputs used in the production of CWP.[132] Finally, SeAH VINA itself is not affiliated with any companies or facilities that produce HRS, primary iron and steel, or other steel inputs used in the production of CWP.[133]

SeAH VINA is not affiliated with any of its Chinese HRS suppliers or any Chinese HRS producers.[134] Further, there are no facts (*e.g.*, close supplier relationships) that suggest control of SeAH VINA by the Chinese producers of HRS with regards to CWP production in Vietnam.[135] Additionally, we found no evidence to indicate that the Chinese CWP or Chinese HRS producers had arrangements with SeAH VINA which would allow them to export HRS to Vietnam for processing into CWP for export to the United States and avoid the discipline of the *Orders*. Further, SeAH VINA's purchases of HRS were not made directly from Chinese HRS producers but through unaffiliated traders/resellers. [136]

(3) Whether Imports of HRS from China to Vietnam Increased (781(B)(3)(C))

As noted above, we considered publicly available data provided by the domestic interested parties and the company-specific data provided by SeAH VINA. The publicly available information demonstrates that China produces a large amount of HRS which is sold around the world.[137] As indicated above, HRS imports from China to Vietnam increased from 12,057,205 MT to 12,259,676 MT (*i.e.*, an increase of 1.7 percent or 202,471 MT) from the 2012-2016 to the 2017-2021 periods.

Furthermore, the data provided by the domestic interested parties indicate that the share of total exports of China-origin HRS to Vietnam, in terms of quantity, in relation to total exports of Chinese HRS to all countries, increased for the 2017-2021 period compared to the 2012-2016 period from 23.6 percent to 26.3 percent.[138] A comparison of the same periods show that the share of U.S. imports of CWP from Vietnam in relation to the overall U.S. imports of CWP from the world increased from 7.9 percent to 8.8 percent.[139]

## X. SUMMARY OF ANALYSIS

As discussed above, to make an affirmative determination of circumvention, Commerce must consider the elements under section 781(b)(1) of the Act, taking into account the minor or insignificant criteria listed in section 781(b)(2) of the Act. In addition, section 781(b)(3) of the Act instructs Commerce to consider, in determining whether to include merchandise assembled or completed in a foreign country within the scope of an order, factors such as the pattern of trade, affiliation, and whether imports into the foreign country of the merchandise described in section 781(b)(1)(B) of the Act have increased after the initiation of the investigation.

[132] *Id*.
[133] *See* SeAH VINA's SQR at 25.
[134] *Id.* at 13 and Appendix S-8.
[135] *Id*. at 2 and Appendix S-1.
[136] *See* SeAH VINA's SQR at 13 and Appendix S-8.
[137] *See* Circumvention Allegation at Exhibit 6.
[138] *See* Circumvention Allegation Supplement at Exhibit Supp-1.
[139] *Id.* at Exhibit Supp. 2.

Pursuant to sections 781(b)(1)(A) and (B) of the Act, Commerce preliminarily finds that the inquiry merchandise imported into the United States is within the same class or kind of merchandise as the class or kind of merchandise subject to the *Orders* and that this merchandise is being completed and assembled, in part, from parts and components produced in China, the country with respect to which the applicable *Orders* apply.

Pursuant to section 781(b)(1)(C) of the Act, Commerce preliminarily finds the process of completion of CWP in Vietnam compared to the production of HRS in China to be minor and insignificant.

In accordance with section 781(b)(1)(D) of the Act, Commerce preliminarily finds that, for CWP completed in Vietnam with HRS produced in China, the value of China-origin HRS is a significant portion of the total value of the merchandise made from China-origin HRS in Vietnam and exported to the United States.

Lastly, the factors under section 781(b)(3) of the Act, (*i.e.*, pattern of trade and sourcing patterns, affiliation, and whether imports of HRS from China increased), are mixed. However, none of these factors is dispositive in our circumvention analysis.

In reaching our preliminary determination, we took into consideration the factors under sections 781(b) of the Act and determined that the totality of factors in this inquiry warrant an affirmative finding of circumvention of the *Orders*. Upon taking into consideration section 781(b)(3) of the Act, we preliminarily determine that action is appropriate to prevent evasion of the *Order* pursuant to section 781(b)(1)(E) of the Act. Consequently, our analysis leads us to preliminarily find that, in accordance with sections 781(b)(1)-(3) of the Act, CWP completed in Vietnam from China-origin HRS circumvents the *Orders* and consequently, should be included within the scope of the *Orders*.

## XI. VERIFICATION

As provided by 19 CFR 351.307, Commerce may verify information relied upon in making its final determination.

## XII. CERTIFICATION PROCESS AND COUNTRY-WIDE AFFIRMATIVE DETERMINATION OF CIRCUMVENTION

As noted above, Commerce identified the universe of potential producers of CWP in, and exporters of CWP from, Vietnam using CBP entry data. We then selected companies that exported the largest quantity of CWP to the United States from Vietnam as mandatory respondents and issued questionnaires to these companies. As indicated above, information on the record of this inquiry does not establish that Vietnam Haiphong completes CWP in Vietnam from China-origin HRS. Under 19 CFR 351.226(m)(1), Commerce is authorized, based on available evidence, to take the appropriate remedy to address circumvention and prevent evasion of an order, including the application of a determination on a country-wide basis. Commerce was unable to examine all Vietnamese producers of CWP. However, because SeAH VINA accounts for a significant portion of the volume of CWP exported from Vietnam to the United States, we

TAB-4

Preliminary Analysis Memorandum for SeAH Steel VINA Corporation
P.R. 156; C.R. 126

Barcode:4364268-01 A-570-910 CIRC - Anti Circumvention Inquiry - Vietnam Imports

UNITED STATES DEPARTMENT OF COMMERCE
International Trade Administration
Washington, D.C. 20230

A-570-910
C-570-911
Circumvention Inquiry
Vietnam Imports
**Public Version**
E&C/OIV: KH

April 6, 2023

MEMORANDUM TO: The File

THROUGH: Drew Jackson DJ
Acting Program Manager
AD/CVD Operations, Office IV

FROM: Krisha Hill KH
International Trade Compliance Analyst
AD/CVD Operations, Office IV

SUBJECT: Circumvention Inquiry on the Antidumping and Countervailing Duty Orders on Circular Welded Carbon Quality Steel Pipe from the People's Republic of China: Preliminary Analysis Memorandum for SeAH Steel VINA Corporation

---

## I. PRELIMINARY DETERMINATION

The U.S. Department of Commerce (Commerce) preliminarily determines, pursuant to section 781(b) of the Tariff Act of 1930, as amended (the Act), that imports of circular welded carbon quality steel pipe (CWP) from Vietnam are circumventing the antidumping duty (AD) and countervailing duty (CVD) *Orders* on CWP from the People's Republic of China (China).[1] Because Commerce's findings regarding certain statutory factors identified in section 781(b) of the Act are based on business proprietary information provided by SeAH Steel VINA Corporation (SeAH VINA), this memorandum provides a more detailed analysis of these factors below.

[1] *See* Memorandum, "Circular Welded Carbon Quality Steel Pipe from the People's Republic of China: Preliminary Decision Memorandum for the Circumvention Inquiry on the Antidumping Duty and Countervailing Duty Orders," dated concurrently with this memorandum (Preliminary Decision Memorandum); *see also Notice of Antidumping Duty Order: Circular Welded Carbon Quality Steel Pipe from the People's Republic of China,* 73 FR 42547 (July 22, 2008); *Circular Welded Carbon Quality Steel Pipe from the People's Republic of China: Notice of Amended Final Affirmative Countervailing Duty Determination and Notice of Countervailing Duty Order*, 73 FR 42545 (July 22, 2008) (collectively, *Orders*).

Filed By: Krisha Hill, Filed Date: 4/11/23 11:22 AM, Submission Status: Approved

INTERNATIONAL TRADE ADMINISTRATION

| | |
|---|---|
| Average China-Sourced HRS Purchase Price (USD/MT) | [ ] |
| Total QTY of U.S. Sales of Product Made from China-Origin HRS (MTs) | [ ] |
| Total VAL of U.S. Sales of Product Made from China-Origin HRS (USD) | [ ] |
| Average U.S. Sales Value of Product Made from China-Origin HRS (USD/MT) | [ ] |
| % HRS Value of U.S. Value of Product Made from China-Origin HRS | [ ] |

**Pattern of Trade and Sourcing Patterns**

In examining trade flows under this element, we focused on SeAH VINA's company-specific information covering the period of inquiry. In evaluating where the data is limited to quantity of CWP produced from HRS imported from China, the quantity of domestic/third-country sales of CWP decreased from [ ] MTs in 2017 to [ ] MTs in 2021 (*i.e.*, a decline of [ ] percent), while the quantity of U.S. sales of CWP decreased from [ ] MTs in 2017 to [ ] MTs in 2021 (*i.e.*, a decline of [ ] percent). Between 2017 and 2019, the pattern of decline in U.S. sales of CWP made with Chinese HRS mirrored the decline in domestic and third country sales of CWP made with Chinese HRS. Starting in 2020, these patterns diverged with the former continuing a decline while the latter rose.

Specifically, when evaluating where the data is limited to both the quantity of CWP produced from HRS imported from China and the period from 2019 to 2021, the quantity of domestic/third-country sales increased from [ ] MTs in 2019 to [ ] MTs in 2021 (*i.e.*, a rise of [ ] percent), while the quantity of U.S. sales decreased from [ ] MTs in 2019 to [ ] MTs in 2021 (*i.e.*, a decline of [ ] percent).

| Year | Domestic + Third Countries Quantity (MT) | United States Quantity (MT) |
|---|---|---|
| 2017 | [ ] | [ ] |
| 2018 | [ ] | [ ] |
| 2019 | [ ] | [ ] |
| 2020 | [ ] | [ ] |
| 2021 | [ ] | [ ] |
| **Total** | [ ] | [ ] |

SeAH VINA's total production of all products for the period 2017-2021 was [ ] MTs, and its total CWP production was [ ] MT.[29] As noted above, SeAH VINA sourced HRS from Vietnam (domestically), as well as from [ ] during the period of inquiry.[30] The share, by quantity, of HRS imported from China was [ ]

[29] *See* IQR, Volume I at Appendix 35; *see also* SQR at Appendix S-19.
[30] *Id*. at Appendix 34.

percent ([ ] MTs) of the total HRS purchases of [ ] MT.[31] The quantity of HRS obtained from all sources decreased from [ ] MTs in 2017 to [ ] MTs in 2021, while the quantity of HRS imported from China decreased from [ ] MTs in 2017 to [ ] MTs in 2021.[32] The quantity of HRS imported from China represents levels that are not insignificant and warrant proper consideration.

| **Year** | **HRS Purchased Quantity (MT)** | **HRS Imported from China Quantity (MT)** |
|---|---|---|
| 2017 | [ ] | [ ] |
| 2018 | [ ] | [ ] |
| 2019 | [ ] | [ ] |
| 2020 | [ ] | [ ] |
| 2021 | [ ] | [ ] |
| **Total** | [ ] | [ ] |

Based on the information on the record, we find that the patterns of trade examined are not dispositive with respect to either an affirmative or a negative circumvention determination.

[31] *Id.* at Appendices 10 and 38.
[32] *Id.*

TAB-5

Circular Welded Carbon Quality Steel Pipe from China:
Final Affirmative Determination of Circumvention of the
Antidumping Duty and Countervailing Duty Orders, 88 Fed. Reg. 77,287
P.R. 214

G. I understand that {NAME OF FOREIGN COMPANY THAT MADE THE SALE TO THE UNITED STATES} is required to maintain a copy of this certification and sufficient documentation supporting this certification (*i.e.,* documents maintained in the normal course of business, or documents obtained by the certifying party, for example, product data sheets, mill test reports, productions records, invoices, *etc.*) until the later of: (1) the date that is five years after the latest date of the entries covered by the certification; or (2) the date that is three years after the conclusion of any litigation in the United States courts regarding such entries;

H. I understand that {NAME OF FOREIGN COMPANY THAT MADE THE SALE TO THE UNITED STATES} is required to provide the U.S. importer with a copy of this certification and is required to provide U.S. Customs and Border Protection (CBP) and/or the U.S. Department of Commerce (Commerce) with this certification, and any supporting documents, upon request of either agency;

I. I understand that the claims made herein, and the substantiating documentation, are subject to verification by CBP and/or Commerce;

J. I understand that failure to maintain the required certification and supporting documentation, or failure to substantiate the claims made herein, or not allowing CBP and/or Commerce to verify the claims made herein, may result in a *de facto* determination that all sales to which this certification applies are within the scope of the antidumping duty and countervailing duty orders on LWRPT from China. I understand that such a finding will result in:

(i) suspension of all unliquidated entries (and entries for which liquidation has not become final) for which these requirements were not met;

(ii) the importer being required to post the cash deposits determined by Commerce; and

(iii) the seller/exporter no longer being allowed to participate in the certification process.

K. I understand that agents of the seller/exporter, such as freight forwarding companies or brokers, are not permitted to make this certification.

L. This certification was completed and signed, and a copy of the certification was provided to the importer, on, or prior to, the date of shipment if the shipment date is more than 14 days after the date of publication of the notice of Commerce's preliminary determination of circumvention in the **Federal Register**. If the shipment date is on or before the 14th day after the date of publication of the notice of Commerce's preliminary determination of circumvention in the **Federal Register**, this certification was completed and signed, and a copy of the certification was provided to the importer, by no later than 45 days after publication of the notice of Commerce's preliminary determination of circumvention in the **Federal Register**; and

M. I am aware that U.S. law (including, but not limited to, 18 U.S.C. 1001) imposes criminal sanctions on individuals who knowingly and willfully make material false statements to the U.S. government.

Signature
{NAME OF COMPANY OFFICIAL}
{TITLE OF COMPANY OFFICIAL}
{DATE}

[FR Doc. 2023–24796 Filed 11–8–23; 8:45 am]

BILLING CODE 3510–DS–P

---

## DEPARTMENT OF COMMERCE

### International Trade Administration

**[A–570–910, C–570–911]**

### Circular Welded Carbon Quality Steel Pipe From the People's Republic of China: Final Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders

**AGENCY:** Enforcement and Compliance, International Trade Administration, Department of Commerce.

**SUMMARY:** The U.S. Department of Commerce (Commerce) determines that imports of circular welded carbon quality steel pipe (CWP), completed in the Socialist Republic of Vietnam (Vietnam) using hot-rolled steel (HRS) produced in the People's Republic of China (China), are circumventing the antidumping duty (AD) and countervailing duty (CVD) orders on CWP from China.

**DATES:** Applicable November 9, 2023.

**FOR FURTHER INFORMATION CONTACT:** Krisha Hill, AD/CVD Operations, Office IV, Enforcement and Compliance, International Trade Administration, U.S. Department of Commerce, 1401 Constitution Avenue NW, Washington, DC 20230; telephone: (202) 482–4037.

**SUPPLEMENTARY INFORMATION:**

### Background

On July 22, 2008, Commerce published in the **Federal Register** the AD and CVD orders on CWP from China.[1] On August 4, 2022, Commerce initiated a country-wide circumvention inquiry to determine whether certain imports of CWP completed in Vietnam using HRS produced in China are circumventing the *Orders*.[2] On April 12, 2023, Commerce published in the **Federal Register** its *Preliminary Determination* that imports of CWP completed in Vietnam using HRS produced in China are circumventing the *Orders*.[3] On May 15, 2023, Commerce extended the deadline for the final determination of this circumvention inquiry to August 4, 2023.[4] On July 20, 2023, Commerce further extended the deadline for the final determination to November 2, 2023.[5] For a summary of events that occurred since Commerce published the *Preliminary Determination,* as well as a full discussion of the issues raised by parties for consideration in the final determination, *see* the Issues and Decision Memorandum.[6] The Issues and Decision Memorandum is a public document and is on file electronically via Enforcement and Compliance's Antidumping and Countervailing Duty Centralized Electronic Service System (ACCESS). ACCESS is available to registered users at *https://access.trade.gov.* In addition, a complete version of the Issues and Decision Memorandum can be accessed directly at *https://access.trade.gov/public/FRNoticesListLayout.aspx.*

### Scope of the Orders

The products covered by the *Orders* include certain welded carbon quality steel pipes and tubes, of circular cross-section, and with an outside diameter of 0.372 inches or more, but not more than 16 inches. For a full description of the scope of the *Orders, see* the Issues and Decision Memorandum.

### Merchandise Subject to the Circumvention Inquiry

This circumvention inquiry covers CWP completed in Vietnam using China-origin HRS and subsequently

---

[1] *See Notice of Antidumping Duty Order: Circular Welded Carbon Quality Steel Pipe from the People's Republic of China,* 73 FR 42547 (July 22, 2008); and *Circular Welded Carbon Quality Steel Pipe from the People's Republic of China: Notice of Amended Final Affirmative Countervailing Duty Determination and Notice of Countervailing Duty Order,* 73 FR 42545 (July 22, 2008) (collectively, *Orders* or *China Orders*).

[2] *See Circular Welded Carbon Quality Steel Pipe from the People's Republic of China; Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea; Certain Welded Carbon Steel Standard Pipes and Tubes from India; Certain Circular Welded Carbon Steel Pipes and Tubes from Taiwan; Certain Circular Welded Non-Alloy Steel Pipe from Taiwan; Light-Walled Rectangular Pipe and Tube from the People's Republic of China; Light-Walled Rectangular Pipe and Tube from the Republic of Korea; Light-Walled Welded Rectangular Carbon Steel Tubing from Taiwan: Initiation of Circumvention Inquiries on the Antidumping and Countervailing Duty Orders,* 87 FR 47711 (August 4, 2022).

[3] *See Circular Welded Carbon Quality Steel Pipe from the People's Republic of China: Preliminary Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing Duty Order,* 88 FR 21975 (April 12, 2023) (*Preliminary Determination*), and accompanying Preliminary Decision Memorandum (PDM).

[4] *See* Memorandum, ''Extension of Deadline for Issuing Final Determinations in Circumvention Inquiries,'' dated May 15, 2023.

[5] *See* Memorandum, ''Extension of Deadline for Issuing Final Determinations in Circumvention Inquiries,'' dated July 20, 2023.

[6] *See* Memorandum, ''Issues and Decision Memorandum for the Circumvention Inquiry of the Antidumping and Countervailing Duty Orders on Circular Welded Carbon Quality Steel Pipe from the People's Republic of China,'' dated concurrently with, and hereby adopted by, this notice (Issues and Decision Memorandum).

exported from Vietnam to the United States (inquiry merchandise).

**Methodology**

Commerce is conducting this circumvention inquiry in accordance with section 781(b) of the Tariff Act of 1930, as amended (the Act), and 19 CFR 351.226. *See* Preliminary Decision Memorandum for a full description of the methodology.[7] We have continued to apply this methodology, without exception, and incorporate by reference this description of the methodology, for our final determination.[8]

**Determination of No Shipments**

Based on the information provided by Vietnam Haiphong Hongyuan Machinery Manufactory Co., Ltd. (Vietnam Haiphong) in this circumvention inquiry, Commerce continues to find, as it did in the *Preliminary Determination,* that Vietnam Haiphong had no shipments of inquiry merchandise to the United States during the period of inquiry, January 1, 2017, through December 31, 2021.[9]

**Analysis of Comments Received**

All issues raised in the case and rebuttal briefs by parties in this inquiry are addressed in the Issues and Decision Memorandum. A list of the issues raised is attached to this notice at Appendix I.

Based on our analysis of the comments received from interested parties, we did not revise the *Preliminary Determination,* except for revisions to the certification language (*see* Appendix II), which we have modified in response to comments to allow parties to also use the certifications when their shipments of CWP were not produced using HRS.

**Final Circumvention Determination**

As detailed in the Issues and Decision Memorandum, Commerce determines that CWP completed in Vietnam using China-origin HRS and subsequently exported from Vietnam to the United States is circumventing the *Orders* on a country-wide basis. As a result, in accordance with section 781(b) of the Act, we determine that the inquiry merchandise should be included within the scope of the *Orders. See* the ''Suspension of Liquidation and Cash Deposit Requirements'' section, below, for details regarding suspension of liquidation and cash deposit requirements. *See* the ''Certifications'' and ''Certification Requirements for Vietnam'' sections, below, for details regarding the use of certifications.

**Suspension of Liquidation and Cash Deposit Requirements**

Based on the affirmative country-wide determination of circumvention for China, in accordance with 19 CFR 351.226(l)(3), we will direct U.S. Customs and Border Protection (CBP) to suspend liquidation and require a cash deposit of estimated duties on unliquidated entries of CWP completed in Vietnam using China-origin HRS, that were entered, or withdrawn from warehouse, for consumption on or after August 4, 2022, the date of publication of the initiation of this circumvention inquiry in the **Federal Register**.

CWP produced in Vietnam from HRS that is not of Chinese origin is not subject to this inquiry. Therefore, cash deposits are not required for such merchandise under the *China Orders.* However, Commerce finds that certain welded carbon steel standard pipes and tubes (pipe and tube) completed in Vietnam using India-origin HRS is circumventing the AD order on pipe and tube from India, and CWP completed in Vietnam using the Republic of Korea (Korea)-origin HRS is circumventing the AD order on CWP from Korea.[10] Imports of such merchandise are subject to certification requirements, and cash deposits may be required.

If an importer imports CWP from Vietnam and claims that the CWP was not produced from China-origin HRS, or alternately, claims that the CWP was produced using an input other than HRS, the importer and exporter are required to meet the certification and documentation requirements described in the ''Certifications'' and ''Certification Requirements for Vietnam'' sections below in order to not be subject to the *China Orders* cash deposit requirements.

*See* Appendix II for the revised importer and exporter certifications, which we have modified in response to comments to allow parties to also use the certifications when their shipments of CWP were not produced using HRS.

Where no certification is provided for an entry, and AD/CVD orders from three countries (China, India or Korea) potentially apply to that entry, Commerce intends to instruct CBP to suspend the entry and collect cash deposits at the rate applicable to the AD and CVD orders on CWP from China (*i.e.,* the AD cash deposit rate established for the China-wide entity (85.55 percent) and the CVD cash deposit rate established for all-others (39.01 percent)) under the following third country CBP case numbers: A–552–009–000 and C–552–010–000.[11] This is to prevent evasion, given that the AD/CVD cash deposit rates established for CWP from China are higher than the AD cash deposit rates established for pipe and tube from India and CWP from Korea.

Where a certification is provided for the AD/CVD orders on CWP from China (stating that the merchandise was not produced using China-origin HRS or was produced using an input other than HRS), but no other certification is provided, then Commerce intends to instruct CBP to suspend the entry and collect cash deposits at the rate applicable to the *India Order* (*i.e.,* the AD cash deposit rate established for all-others (7.08 percent)) under the following third country CBP case number: A–552–012–000.[12] This is to prevent evasion, given that the AD cash deposit rate established for pipe and tube from India is higher than the AD cash deposit rate established for CWP from Korea.

Commerce established the following third country CBP case numbers in the Automated Commercial Environment (ACE) for entries of CWP produced in Vietnam using China-origin HRS: A–552–009–000 and C–552–010–000. Commerce established the following company-specific third country CBP case numbers for SeAH VINA, for which Commerce made an affirmative determination of circumvention, for entries of CWP produced in Vietnam using China-origin HRS: A–552–009–001 and C–552–010–001. The cash deposit rates will be the China-wide entity AD rate (*i.e.,* 85.55 percent) and the China CVD all-others rate (*i.e.,* 39.01 percent), respectively.[13]

These suspension of liquidation instructions will remain in effect until further notice.

**Certified Entries**

Entries for which the importer and exporter have met the certification requirements described below and in Appendix II to this notice will not be

[7] *See Preliminary Determination* PDM at 6–25.

[8] *See* Issues and Decision Memorandum at 5.

[9] *See Preliminary Determination* PDM at 13–14; *see also* Issues and Decision Memorandum at Comments 2 and 3.

[10] *See* the unpublished **Federal Register** notices, ''*Certain Welded Carbon Steel Standard Pipes and Tubes from India: Final Affirmative Determination of Circumvention of the Antidumping Duty Order,*'' and ''*Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea: Final Affirmative Determination of Circumvention of the Antidumping Duty Order,*'' dated concurrently with this notice.

[11] *See Orders* or *China Orders.*

[12] *See Antidumping Duty Order; Certain Welded Carbon Steel Standard Pipes and Tubes from India,* 51 FR 17384 (May 12, 1986) (*India Order*).

[13] *See Orders* or *China Orders.*

subject to suspension of liquidation, or the cash deposit requirements described above. Failure to comply with the applicable requisite certification requirements may result in the merchandise being subject to AD and CVD duties.

## Certifications

To administer the country-wide affirmative determination of circumvention for Vietnam, Commerce established importer and exporter certifications which allow companies to certify that specific entries of CWP from Vietnam are not subject to suspension of liquidation or the collection of cash deposits pursuant to this country-wide affirmative determination of circumvention because the merchandise was not made with China-origin HRS or was made with an input other than HRS (*see* Appendix II to this notice).

Importers and exporters that claim that the entry of CWP is not subject to suspension of liquidation or the collection of cash deposits because the merchandise was not made with China-origin HRS or was made with an input other than HRS must complete the applicable certification and meet the certification and documentation requirements described below, as well as the requirements identified in the applicable certification.

## Certification Requirements for Vietnam

Importers are required to complete and maintain the applicable importer certification, and maintain a copy of the applicable exporter certification, and retain all supporting documentation for both certifications. With the exception of the entries described below, the importer certification must be completed, signed, and dated by the time the entry summary is filed for the relevant entry. The importer, or the importer's agent, must submit both the importer's certification and the exporter's certification to CBP as part of the entry process by uploading them into the document imaging system (DIS) in ACE. Where the importer uses a broker to facilitate the entry process, the importer should obtain the entry summary number from the broker. Agents of the importer, such as a broker, however, are not permitted to certify on behalf of the importer.

Exporters are required to complete and maintain the applicable exporter certification and provide the importer with a copy of that certification and all supporting documentation (*e.g.,* invoice, purchase order, production records, *etc.*). With the exception of the entries described below, the exporter certification must be completed, signed, and dated by the time of shipment of the relevant entries. The exporter certification should be completed by the party selling the CWP that was manufactured in Vietnam to the United States.

Additionally, the claims made in the certifications and any supporting documentation are subject to verification by Commerce and/or CBP. Importers and exporters are required to maintain the certifications and supporting documentation until the later of: (1) the date that is five years after the latest entry date of the entries covered by the certification; or (2) the date that is three years after the conclusion of any litigation in United States courts regarding such entries.

For all CWP from Vietnam that was entered, or withdrawn from warehouse, for consumption during the period August 4, 2022 (the date of initiation of this circumvention inquiry), through the date of publication of the *Preliminary Determination* in the **Federal Register**, where the entry has not been liquidated (and entries for which liquidation has not become final), the relevant certification should already be complete and signed.

For unliquidated entries (and entries for which liquidation has not become final) of CWP that were declared as non-AD/CVD type entries (*e.g.,* type 01) and entered, or withdrawn from warehouse, for consumption in the United States during the period August 4, 2022 (the date of initiation of these circumvention inquiries), through the date of publication of the *Preliminary Determination* in the **Federal Register**, for which none of the above certifications may be made, importers must file a Post Summary Correction with CBP, in accordance with CBP's regulations, regarding conversion of such entries from non-AD/CVD type entries to AD/CVD type entries (*e.g.,* type 01 to type 03). Importers should report those AD/CVD type entries using the third country CBP case numbers identified in the ''Suspension of Liquidation and Cash Deposit Requirements'' section, above. The importer should post cash deposits on those entries consistent with the regulations governing post summary corrections that require payment of additional duties, including AD/CVD duties.

If it is determined that an importer or exporter has not met the certification and related documentation requirements for certain entries, Commerce intends to instruct CBP to suspend, pursuant to this country-wide affirmative determination of circumvention and the *Orders,*[14] all unliquidated entries for which these requirements were not met and require the importer to post applicable cash deposits equal to the rates noted above.

## Opportunity To Request an Administrative Review

Each year during the anniversary month of the publication of an AD or CVD order, finding, or suspended investigation, an interested party, as defined in section 771(9) of the Act, may request, in accordance with 19 CFR 351.213, that Commerce conduct an administrative review of that AD or CVD order, finding, or suspended investigation. An interested party who would like Commerce to conduct an administrative review should wait until Commerce announces via the **Federal Register** the next opportunity to request a review during the anniversary month of the publication of the AD or CVD order to submit such requests. The anniversary month for the AD and CVD *Orders* is May.

## Administrative Protective Order

This notice will serve as the only reminder to all parties subject to administrative protective order (APO) of their responsibility concerning the destruction of proprietary information disclosed under APO in accordance with 19 CFR 351.305(a)(3). Timely written notification of the return or destruction of APO materials or conversion to judicial protective order is hereby requested. Failure to comply with the regulations and the terms of an APO is a sanctionable violation.

## Notification to Interested Parties

This determination is issued and published in accordance with section 781(b) of the Act and 19 CFR 351.226(g)(2).

Dated: November 2, 2023.

**Abdelali Elouaradia,**

*Deputy Assistant Secretary for Enforcement and Compliance.*

## Appendix I

### List of Topics Discussed in the Issues and Decision Memorandum

I. Summary
II. Background
III. Scope of the *Orders*
IV. Merchandise Subject to the Circumvention Inquiry
V. Period of Circumvention Inquiry
VI. Changes From the *Preliminary Determination*
VII. Discussion of the Issues
Comment 1: Conflict Regarding the Timing of Certification Requirements

[14] *See Orders.*

Comment 2: Clarification in the Certification and Cash Deposit Instructions Concerning the Inclusion of HRS Further Processed in Vietnam Through a Cold-Rolling or Galvanizing Process
Comment 3: Certification Requirements for Vietnam Haiphong
Comment 4: Whether Commerce Is Bound by its Previous Determination That SeAH VINA's Exports of Pipe Produced Using Imported HRS Are Products of Vietnam
Comment 5: Whether Commerce May Impose Antidumping or Countervailing Duties in the Absence of Evidence of Injurious Dumping or Subsidies on SeAH VINA's Pipe Exports
Comment 6: Whether Commerce Should Apply Countervailing Duties on SeAH VINA
Comment 7: Whether the Production of Pipe From Imported HRS Constitutes ''Assembly or Completion'' Within the Meaning of the Statute
Comment 8: Whether the Process of Completion of Pipe in Vietnam Is Minor or Insignificant
Comment 9: Whether Commerce Properly Considered the Lack of Affiliations
Comment 10: Whether Commerce Properly Considered the Pattern of Trade and Sourcing
VIII. Recommendation

## Appendix II

1. Certifications

### Importer Certification

I hereby certify that:

A. My name is {IMPORTING COMPANY OFFICIAL'S NAME} and I am an official of {IMPORTING COMPANY}, located at {ADDRESS OF IMPORTING COMPANY};

B. I have direct personal knowledge of the facts regarding the importation into the Customs territory of the United States of circular welded carbon quality steel pipe (CWP) produced in Vietnam that entered under entry summary number(s), identified below, and are covered by this certification. ''Direct personal knowledge'' refers to facts the certifying party is expected to have in its own records. For example, the importer should have direct personal knowledge of the importation of CWP, including the exporter's and/or foreign seller's identity and location;

C. If the importer is acting on behalf of the first U.S. customer, include the following sentence as paragraph C of this certification:

The CWP covered by this certification was imported by {IMPORTING COMPANY} on behalf of {U.S. CUSTOMER}, located at {ADDRESS OF U.S. CUSTOMER};

If the importer is not acting on behalf of the first U.S. customer, include the following sentence as paragraph C of this certification:

{NAME OF IMPORTING COMPANY} is not acting on behalf of the first U.S. customer.

D. The CWP covered by this certification was shipped to {NAME OF PARTY IN THE UNITED STATES TO WHOM THE MERCHANDISE WAS FIRST SHIPPED}, located at {U.S. ADDRESS TO WHICH MERCHANDISE WAS SHIPPED}.

E. I have personal knowledge of the facts regarding the production of the imported products covered by this certification. ''Personal knowledge'' includes facts obtained from another party, (*e.g.,* correspondence received by the importer (or exporter) from the producer regarding the source of hot-rolled steel (HRS) or an input other than HRS used to produce the imported CWP);

F. This certification applies to the following entries (repeat this block as many times as necessary):

Entry Summary #:
Entry Summary Line Item #:
Foreign Seller:
Foreign Seller's Address:
Foreign Seller's Invoice #:
Foreign Seller's Invoice Line Item #:
Country of Origin of HRS: State ''N/A'' for ''Country of Origin of HRS'' if the CWP covered by this certification was produced using inputs other than HRS.
Producer:
Producer's Address:

G. The CWP covered by this certification does not contain HRS produced in China;

H. I understand that {IMPORTING COMPANY} is required to maintain a copy of this certification and sufficient documentation supporting this certification (*i.e.,* documents maintained in the normal course of business, or documents obtained by the certifying party, for example, certificates of origin, product data sheets, mill test reports, productions records, invoices, *etc.*) until the later of: (1) the date that is five years after the date of the latest entry covered by the certification; or (2) the date that is three years after the conclusion of any litigation in the United States courts regarding such entries;

I. I understand that {IMPORTING COMPANY} is required to maintain a copy of the exporter's certification (attesting to the production and/or exportation of the imported merchandise identified above), and any supporting documentation provided to the importer by the exporter, until the later of: (1) the date that is five years after the date of the latest entry covered by the certification; or (2) the date that is three years after the conclusion of any litigation in United States courts regarding such entries;

J. I understand that {IMPORTING COMPANY} is required to provide U.S. Customs and Border Protection (CBP) and/or the U.S. Department of Commerce (Commerce) with the importer certification, and any supporting documentation, and a copy of the exporter's certification, and any supporting documentation provided to the importer by the exporter, upon request of either agency;

K. I understand that the claims made herein, and the substantiating documentation, are subject to verification by CBP and/or Commerce;

L. I understand that failure to maintain the required certification and supporting documentation, or failure to substantiate the claims made herein, or not allowing CBP and/or Commerce to verify the claims made herein, may result in a *de facto* determination that all entries to which this certification applies are within the scope of the antidumping duty (AD) and countervailing duty (CVD) orders on CWP from China. I understand that such finding will result in:

(i) suspension of liquidation of all unliquidated entries (and entries for which liquidation has not become final) for which these requirements were not met;

(ii) the importer being required to post the cash deposits determined by Commerce; and

(iii) the importer no longer being allowed to participate in the certification process.

M. I understand that agents of the importer, such as brokers, are not permitted to make this certification;

N. This certification was completed and signed on, or prior to, the date of the entry summary if the entry date is more than 14 days after the date of publication of the notice of Commerce's preliminary determination of circumvention in the **Federal Register**. If the entry date is on or before the 14th day after the date of publication of the notice of Commerce's preliminary determination of circumvention in the **Federal Register**, this certification was completed and signed by no later than 45 days after publication of the notice of Commerce's preliminary determination of circumvention in the **Federal Register**.

O. I am aware that U.S. law (including, but not limited to, 18 U.S.C. 1001) imposes criminal sanctions on individuals who knowingly and willfully make material false statements to the U.S. government.

Signature
{NAME OF COMPANY OFFICIAL}
{TITLE OF COMPANY OFFICIAL}
{DATE}

### Exporter Certification

The party that made the sale to the United States should fill out the exporter certification.

I hereby certify that:

A. My name is {COMPANY OFFICIAL'S NAME} and I am an official of {NAME OF FOREIGN COMPANY THAT MADE THE SALE TO THE UNITED STATES); located at {ADDRESS OF FOREIGN COMPANY THAT MADE THE SALE TO THE UNITED STATES);

B. I have direct personal knowledge of the facts regarding the production and exportation of the circular welded carbon quality steel pipe (CWP) for which sales are identified below. ''Direct personal knowledge'' refers to facts the certifying party is expected to have in its own records. For example, an exporter should have direct personal knowledge of the producer's identity and location;

C. The CWP covered by this certification was shipped to {NAME OF PARTY IN THE UNITED STATES TO WHOM MERCHANDISE WAS FIRST SHIPPED}, located at {U.S. ADDRESS TO WHICH MERCHANDISE WAS SHIPPED};

D. The CWP covered by this certification does not contain HRS produced in China;

E. This certification applies to the following sales to {NAME OF U.S. CUSTOMER}, located at {ADDRESS OF U.S. CUSTOMER} (repeat this block as many times as necessary):

Foreign Seller's Invoice # to U.S. Customer:
Foreign Seller's Invoice to U.S. Customer Line item #:

Producer Name:
Producer's Address:
Producer's Invoice # to Foreign Seller: (*If the foreign seller and the producer are the same party, put NA here.*)
Name of Producer of HRS: State ''N/A'' if the producer did not use HRS in the production of CWP.
Location (Country) of Producer of HRS: State ''N/A'' if the producer did not use HRS in the production of CWP.

F. The CWP covered by this certification was shipped to {NAME OF U.S. PARTY TO WHOM MERCHANDISE WAS SHIPPED}, located at {U.S. ADDRESS TO WHICH MERCHANDISE WAS SHIPPED};

G. I understand that {NAME OF FOREIGN COMPANY THAT MADE THE SALE TO THE UNITED STATES} is required to maintain a copy of this certification and sufficient documentation supporting this certification (*i.e.,* documents maintained in the normal course of business, or documents obtained by the certifying party, for example, product data sheets, mill test reports, productions records, invoices, *etc.*) until the later of: (1) the date that is five years after the latest date of the entries covered by the certification; or (2) the date that is three years after the conclusion of any litigation in the United States courts regarding such entries;

H. I understand that {NAME OF FOREIGN COMPANY THAT MADE THE SALE TO THE UNITED STATES} is required to provide the U.S. importer with a copy of this certification and is required to provide U.S. Customs and Border Protection (CBP) and/or the U.S. Department of Commerce (Commerce) with this certification, and any supporting documents, upon request of either agency;

I. I understand that the claims made herein, and the substantiating documentation, are subject to verification by CBP and/or Commerce;

J. I understand that failure to maintain the required certification and supporting documentation, or failure to substantiate the claims made herein, or not allowing CBP and/or Commerce to verify the claims made herein, may result in a *de facto* determination that all sales to which this certification applies are within the scope of the antidumping duty and countervailing duty orders on CWP from China. I understand that such a finding will result in:

(i) suspension of all unliquidated entries (and entries for which liquidation has not become final) for which these requirements were not met;

(ii) the importer being required to post the cash deposits determined by Commerce; and

(iii) the seller/exporter no longer being allowed to participate in the certification process.

K. I understand that agents of the seller/exporter, such as freight forwarding companies or brokers, are not permitted to make this certification.

L. This certification was completed and signed, and a copy of the certification was provided to the importer, on, or prior to, the date of shipment if the shipment date is more than 14 days after the date of publication of the notice of Commerce's preliminary determination of circumvention in the **Federal Register**. If the shipment date is on or before the 14th day after the date of publication of the notice of Commerce's preliminary determination of circumvention in the **Federal Register**, this certification was completed and signed, and a copy of the certification was provided to the importer, by no later than 45 days after publication of the notice of Commerce's preliminary determination of circumvention in the **Federal Register**; and

M. I am aware that U.S. law (including, but not limited to, 18 U.S.C. 1001) imposes criminal sanctions on individuals who knowingly and willfully make material false statements to the U.S. government.

Signature
{NAME OF COMPANY OFFICIAL}
{TITLE OF COMPANY OFFICIAL}
{DATE}

[FR Doc. 2023–24806 Filed 11–8–23; 8:45 am]
BILLING CODE 3510–DS–P

## DEPARTMENT OF COMMERCE

### National Oceanic and Atmospheric Administration

**[RTID 0648–XD501]**

### Fisheries of the U.S. Caribbean; Southeast Data, Assessment, and Review (SEDAR); Public Meeting

**AGENCY:** National Marine Fisheries Service (NMFS), National Oceanic and Atmospheric Administration (NOAA), Commerce.

**ACTION:** Notice of SEDAR 84 Life History Data Webinar for U.S Caribbean Yellowtail Snapper and Stoplight Parrotfish.

**SUMMARY:** The SEDAR 84 assessment process of U.S. Caribbean yellowtail snapper and stoplight parrotfish will consist of a Data Workshop, and a series of assessment webinars, and a Review Workshop. See **SUPPLEMENTARY INFORMATION**.

**DATES:** The SEDAR 84 Life History Data webinar will be held December 1, 2023, from 9 a.m. to 1 p.m., Eastern Time.

**ADDRESSES:**

*Meeting address:* The meeting will be held via webinar. The webinar is open to members of the public. Those interested in participating should contact Julie A. Neer at SEDAR (see **FOR FURTHER INFORMATION CONTACT**) to request an invitation providing webinar access information. Please request webinar invitations at least 24 hours in advance of each webinar.

*SEDAR address:* 4055 Faber Place Drive, Suite 201, North Charleston, SC 29405.

**FOR FURTHER INFORMATION CONTACT:** Julie A. Neer, SEDAR Coordinator; (843) 571–4366; email: *Julie.neer@safmc.net.*

**SUPPLEMENTARY INFORMATION:** The Gulf of Mexico, South Atlantic, and Caribbean Fishery Management Councils, in conjunction with NOAA Fisheries and the Atlantic and Gulf States Marine Fisheries Commissions have implemented the Southeast Data, Assessment and Review (SEDAR) process, a multi-step method for determining the status of fish stocks in the Southeast Region. SEDAR is a multi-step process including: (1) Data Workshop, (2) A series of assessment webinars, and (3) A Review Workshop. The product of the Data Workshop is a report that compiles and evaluates potential datasets and recommends which datasets are appropriate for assessment analyses. The assessment webinars produce a report that describes the fisheries, evaluates the status of the stock, estimates biological benchmarks, projects future population conditions, and recommends research and monitoring needs. The product of the Review Workshop is an Assessment Summary documenting panel opinions regarding the strengths and weaknesses of the stock assessment and input data. Participants for SEDAR Workshops are appointed by the Gulf of Mexico, South Atlantic, and Caribbean Fishery Management Councils and NOAA Fisheries Southeast Regional Office, HMS Management Division, and Southeast Fisheries Science Center. Participants include data collectors and database managers; stock assessment scientists, biologists, and researchers; constituency representatives including fishermen, environmentalists, and NGO's; International experts; and staff of Councils, Commissions, and state and federal agencies.

The items of discussion during the Life History Data webinar are as follows:

Participants will discuss what life history data may be available for use in the assessment.

Although non-emergency issues not contained in this agenda may come before this group for discussion, those issues may not be the subject of formal action during this meeting. Action will be restricted to those issues specifically identified in this notice and any issues arising after publication of this notice that require emergency action under section 305(c) of the Magnuson-Stevens Fishery Conservation and Management Act, provided the public has been notified of the intent to take final action to address the emergency.

### Special Accommodations

The meeting is physically accessible to people with disabilities. Requests for sign language interpretation or other auxiliary aids should be directed to the

TAB-6

Issues and Decision Memorandum for the Final Affirmative Determination of
Circumvention of the Antidumping Duty Order on
Circular Welded Carbon Quality Steel Pipe from China (IDM)
P.R. 213

Barcode:4457488-02 A-570-910 CIRC - Anti Circumvention Inquiry - Vietnam Imports

UNITED STATES DEPARTMENT OF COMMERCE
International Trade Administration
Washington, D.C. 20230

A-570-910, C-570-911
Circumvention Inquiry
Vietnam Imports
**Public Document**
E&C/OIV: KH

November 2, 2023

**MEMORANDUM TO:** Abdelali Elouaradia
Deputy Assistant Secretary
for Enforcement and Compliance

**FROM:** James Maeder
Deputy Assistant Secretary
for Antidumping and Countervailing Duty Operations

**SUBJECT:** Issues and Decision Memorandum for the Circumvention Inquiry of the Antidumping and Countervailing Duty Orders on Circular Welded Carbon Quality Steel Pipe from the People's Republic of China

---

## I. SUMMARY

We analyzed the case and rebuttal briefs of interested parties in the circumvention inquiry of the *CWP China Orders*.[1] We did not modify our conclusions from the *Preliminary Determination*, in which we found that certain U.S. imports of CWP completed or assembled in Vietnam using HRS manufactured in China are circumventing the *CWP China Orders* on a country-wide basis, pursuant to section 781(b) of the Act. We recommend that you approve the positions described in the "Discussion of the Issues" section of this memorandum.

Below is the complete list of the issues for which we received comments from interested parties:

Comment 1: Conflict Regarding the Timing of Certification Requirements
Comment 2: Clarification in the Certification and Cash Deposit Instructions Concerning the Inclusion of HRS Further Processed in Vietnam Through a Cold-Rolling or Galvanizing Process
Comment 3: Certification Requirements for Vietnam Haiphong
Comment 4: Whether Commerce Is Bound by its Previous Determination that SeAH VINA's Exports of Pipe Produced Using Imported HRS Are Products of Vietnam
Comment 5: Whether Commerce May Impose Antidumping or Countervailing Duties in the Absence of Evidence of Injurious Dumping or Subsidies on SeAH VINA's Pipe Exports

[1] Appendices I, II, and III attached to this memorandum identify, respectively, the acronyms and abbreviations, court and case citations, and proceeding documents.

Filed By: Krisha Hill, Filed Date: 11/3/23 3:16 PM, Submission Status: Approved

INTERNATIONAL TRADE ADMINISTRATION

advice. As such, our affirmative circumvention determination does not present any significant injury issues.

In sum, Commerce's preliminary determination, which evaluated the factors outlined in section 781 of the Act, was consistent with the purpose of the circumvention provision. As documented in the *Initiation Notice*, the *Preliminary Determination*, and this final determination, this proceeding has been conducted in accordance with the law and the record developed over the course of this inquiry supports a finding that the inquiry merchandise is circumventing the *Orders*.

**Comment 6: Whether Commerce Should Apply Countervailing Duties on SeAH VINA**

*SeAH VINA's Arguments*[84]

- SeAH VINA's exports of pipe should not be subject to the CVD order on pipe from China. Any finding from Commerce that SeAH VINA might have received countervailable subsidies under that order is inconsistent with Commerce's own regulations.
- Commerce's regulation concerning "transnational subsidies" states that "a subsidy does not exist" if the funding for the subsidy is provided by a government of a country other than the country in which the recipient firm is located.[85]
- SeAH VINA is located in Vietnam, thus the subsidy programs funded by the Chinese government, which are the subject of the CVD order on pipe from China, cannot confer a subsidy on SeAH VINA.
- Additionally, Commerce's regulation concerning the attribution of subsidies states that any subsidy normally will only be attributed to the company that received the subsidy. Subsidies received by Chinese companies would not be attributed to SeAH VINA.
- While the regulations permit attribution of subsidies from a cross-owned holding or parent company to its subsidiaries, or from a cross-owned input supplier to a cross-owned downstream producer, SeAH VINA neither has a Chinese parent or holding company nor does it purchase any inputs from cross-owned Chinese input suppliers.[86]

*Domestic Interested Parties' Rebuttal Arguments*[87]

- The instant inquiry neither involves questions on whether subsidies have been transferred to SeAH VINA, nor whether Vietnam is subsidizing Vietnamese producers of pipe.
- The issue here is whether pipe that would otherwise be produced in China and upon export to the United States would have been subject to the CVD order on pipe from China is evading duties through circumvention by virtue of the product being completed in Vietnam prior to shipment to the United States.
- Commerce correctly found in its preliminary determination that such circumvention is occurring, and that action is warranted to prevent such circumvention.

---

[84] *See* SeAH VINA's Second Case Brief at 9-10.
[85] *Id*. at 9 (citing 19 CFR 351.527(a)).
[86] *Id*. at 9 (citing SeAH VINA's December 15, 2022 Response at Appendices S-1 and S-8).
[87] *See* Domestic Interested Parties' Second Rebuttal Brief at 6-7.

Additionally, the SAA states:

> {B}efore deciding to include imported parts within the scope of an antidumping or countervailing duty order, Commerce *will* consider: (1) changes in the pattern of trade; (2) whether the producer of the finished product subject to the order is related to the assembler in the United States (or the third country); and (3) whether imports of parts from the country subject to the order into the United States (or the third country) have increased after the initiation of the investigation resulting in the issuance of the order.[165]

Thus, in determining whether to include in the order pipe completed or assembled in Vietnam, we followed the directive of the statute to consider the factors under section 781(b)(3) of the Act. In considering the pattern of trade, affiliation, and imports of HRS from the subject country, as directed by section 781(b)(3) of the Act, we determined that these factors are mixed, but none of them are dispositive in our circumvention analysis.[166] In reaching the *Preliminary Determination*, we determined that the totality of factors in this inquiry warrant an affirmative finding of circumvention of the order, and, upon taking into consideration section 781(b)(3) of the Act, we preliminarily determined that action is appropriate to prevent evasion of the order, pursuant to section 781(b)(1)(E) of the Act.[167]

Accordingly, notwithstanding Commerce's finding, pursuant to section 781(b)(3)(B) of the Act, that SeAH VINA is not affiliated with any company located in the subject country that produces pipe or HRC, Commerce nevertheless determined, based on the totality of factors in this inquiry (including the lack of affiliation), that an affirmative finding of circumvention of the order is warranted. In other words, we determined based on the record in this inquiry that a lack of affiliation under section 781(b)(3)(B) of the Act, in itself, does not outweigh our determination that the statutory criteria under sections 781(b)(1)(A)-(D) of the Act have been satisfied, and the remaining elements under section 781(b)(3) of the Act otherwise did not detract from a finding that an action is appropriate pursuant to section 781(b)(1)(E) of the Act. This determination is consistent with our practice.[168] Informative to this discussion, in *Al Ghurair CAFC*, the Federal Circuit found harmless Commerce's failure to explain its value-added analysis under section 781(b)(2) of the Act, because Commerce's "finding of circumvention involved a multi-factor test and was supported by many findings other than its calculation of {the respondent's} value added."[169]

Commerce generally considers circumvention to be more likely to occur when the manufacturer of the input in the subject country is affiliated with the entity in the third country that performs the completion or assembly of the final product from such an input.[170] However, the presence of such affiliation is not a prerequisite for an affirmative finding of circumvention.[171] Commerce

---

[165] *See* SAA at 894 (emphasis added).
[166] *See Preliminary Determination* PDM at 22-24.
[167] *Id*.
[168] *See*, *e.g.*, *CORE from China (Vietnam) – Final* IDM at Comment 12.
[169] *See Al Ghurair CAFC*, 65 F.4th at 1363.
[170] *See*, *e.g.*, *Tissue Paper from China (Vietnam) – Prelim*, unchanged in *Tissue Paper from China (Vietnam) – Final*).
[171] *See*, *e.g.*, *CORE from China (Vietnam) – Final* IDM at Comment 12.

previously found circumvention when the producer of an input in the subject country and the entity in the third country that performs the completion or assembly using said input were not affiliated.[172] Similarly, with respect to the argument that there is no evidence that HRC producers in the subject country had special arrangements with SeAH VINA, we find that absence of such arrangements is not dispositive in this inquiry. Accordingly, Commerce finds that a lack of affiliation in this circumvention inquiry does not, by itself, preclude an affirmative determination of circumvention.

**Comment 10: Whether Commerce Properly Considered the Pattern of Trade and Sourcing**

*SeAH VINA's Arguments*[173]

- The record evidence demonstrates that SeAH VINA's total exports of CWP to the United States fell over the five-year period considered by Commerce.
- Such patterns of trade cannot support a finding that CWP from Vietnam is circumventing the order.
- The evidence demonstrates that SeAH VINA purchases HRS in a competitive market from suppliers based on price and availability. The fluctuations in SeAH VINA's purchases of HRC from different countries should not obscure the fundamental point.
- There is no basis for finding that SeAH VINA engaged in circumvention to increase its exports to the United States. Commerce's affirmative circumvention finding cannot be sustained and must be reversed in the final determination.

*Domestic Interested Parties' Rebuttal Arguments*[174]

- SeAH VINA neglects the country-wide nature of this inquiry and the overwhelming evidence supporting an affirmative determination, based on the totality of the circumstances and the consideration of all the statutory factors that Commerce must evaluate.
- Such patterns are neither dispositive of whether circumvention is occurring, nor do they dictate a particular result particularly where, as here, other factors clearly support an affirmative determination.
- While Commerce must consider the statutory "other factors" including patterns of trade and sourcing patterns in making its circumvention determination, "a clear changing pattern of trade" is not a pre-requisite for an affirmative circumvention determination under the statute.[175]
- Commerce has made affirmative circumvention determinations even where the patterns of trade or sourcing showed a mixed or declining trend. For example, in the 2019 circumvention inquiry for the AD and CVD orders on CRS from Korea, Commerce made an affirmative finding of circumvention where shipments to the United States of CRS

[172] *See, e.g.*, *CORE from China (UAE) – Prelim* PDM at 24, unchanged in *CORE from China (UAE) – Final*.
[173] *See* SeAH VINA's Second Case Brief at 23-24.
[174] *See* Domestic Interested Parties' Second Rebuttal Brief at 20-23.
[175] *Id*. at 21 (citing Section 781(b)(3) of the Act).

finished in Vietnam and shipments of the Korean-origin HRS substrate to Vietnam both declined in the period during which circumvention was alleged to have occurred.[176]

- In *CRS from Korea (Vietnam) – Prelim*, Commerce found that these declining trends did not detract from the overall circumvention finding, stating that "while the pattern of trade and export levels of CRS from Vietnam to the United States show a decline between the comparison and base periods, we nonetheless find that the export levels have not dwindled to insignificant levels. Moreover, while the Act directs that Commerce take into account the factors enumerated under 781(b)(3) of the Act, Commerce finds these factors to be non-dispositive."[177]
- Similarly, in *CORE from Taiwan (Vietnam) – Prelim*, unchanged in *CORE from Taiwan (Vietnam) – Final*, Commerce found circumvention with a mixed pattern of trade and sourcing. Company-specific data were also mixed, showing one company's imports of HRS substrate to have increased, and the other's to have decreased.[178]
- As in the CRS and CORE circumvention cases discussed above, circumvention may not always manifest itself clearly and definitively in the trade pattern and sourcing data, particularly where the input is used in many manufacturing processes or where demand for the product subject to the order has shifted.
- The relevant patterns of trade and sourcing data discussed in the allegation support a finding of circumvention on a country-wide basis. Regardless, the evidence relevant to the other statutory factors clearly supports a finding of circumvention.

**Commerce's Position:** With respect to SeAH VINA's argument that the patterns of trade cannot support a finding that CWP from Vietnam is circumventing the order, our conclusion regarding the patterns of trade remains unchanged from the *Preliminary Determination*. Specifically, we continue to find that the quantity of SeAH VINA's pipe exports to the United States produced from HRS imported from China declined from 2017 to 2021.[179] While the pattern of trade and export levels of pipe to the United States show a decline during the inquiry period, we nonetheless find that the export levels are not insignificant.[180] We disagree with SeAH VINA over the implications of this conclusion. Specifically, we do not agree this factor alone is dispositive and makes it impossible to make a finding that pipe from Vietnam is circumventing the order. Section 781(b)(3) of the Act only requires that the administering authority "take into account" certain factors, and patterns of trade are only one such factor that Commerce considers in a circumvention determination.[181] As we stated in the *Preliminary Determination* with respect to the factors in section 781(b)(3) of the Act (of which patterns of trade is one factor), "given that Commerce has a long-standing practice of not allowing one single factor of our analysis to be controlling, Commerce finds that in this instance, placing more weight on the patterns of trade is not appropriate when other factors clearly support an

---

[176] *Id*. (citing *CRS from Korea (Vietnam) - Prelim* PDM at 19; and *CRS from Korea (Vietnam) - Final* IDM at 10).
[177] *Id*. (citing *CRS from Korea (Vietnam) - Prelim* PDM at 20).
[178] *Id*. at 22 (citing *CORE from Taiwan (Vietnam) - Prelim* PDM at 19-21; and *CORE from Taiwan (Vietnam) – Final* IDM at 9-10).
[179] *See* Memorandum, "Circumvention Inquiry on the Antidumping and Countervailing Duty Orders on Circular Welded Carbon Quality Steel Pipe from the People's Republic of China: Preliminary Analysis Memorandum for SeAH Steel VINA Corporation," dated April 6, 2023, at 6-7.
[180] *Id*.
[181] *See CRS from Korea (Vietnam) - Final* IDM at 69-70.

affirmative determination."[182] With regards to SeAH VINA's fluctuations of HRS purchases from the subject country, similar fluctuations observed in *CORE from Taiwan (Vietnam) - Prelim* did not detract from the totality of evidence considerations which supported an affirmative circumvention determination.[183]

Commerce reaches its determination regarding circumvention based on the totality of the evidence as it applies to all the factors, including patterns of trade.[184] Commerce notes that in *CRS from Korea (Vietnam) - Prelim*, CRS exported from Vietnam to the United States showed a decline between the comparison and base periods, a pattern that mirrors the facts in this inquiry.[185] Nevertheless, the totality of the circumstances in that case indicated that circumvention of the CRS order was occurring, an affirmative finding that was maintained in *CRS from Korea (Vietnam) - Final*.[186] Here, based upon our analysis of all statutory factors under section 781(b) of the Act, including the patterns of trade, we find the totality of the evidence indicates that inquiry merchandise is circumventing the order.

## VIII. RECOMMENDATION

Based on the analysis of the comments received, we recommend adopting all the above positions. If the recommendations are accepted, we will publish the final determination of this circumvention inquiry in the *Federal Register*.

☒ Agree ☐ Disagree

X 

Signed by: ABDELALI ELOUARADIA

Abdelali Elouaradia
Deputy Assistant Secretary
for Enforcement and Compliance

---

[182] *See Preliminary Determination* PDM at 21-22.
[183] *See CORE from Taiwan (Vietnam) – Prelim* PDM at 21, unchanged in *CORE from Taiwan (Vietnam) – Final*.
[184] *See CORE from China (Vietnam) – Final* IDM at Comment 12.
[185] *See CRS from Korea (Vietnam) - Prelim* PDM at 20.
[186] *See CRS from Korea (Vietnam) - Final* IDM at 70.

TAB-7

Request for Information
P.R.R. 9

Barcode: 4877186-01 A-570-910 REM - Remand Slip Op. 25-157
UNITED STATES DEPARTMENT OF COMMERCE
International Trade Administration
Washington, D.C. 20230

A-570-910, C-570-911
Remand
Slip Op. 25-157
**Public Document**
E&C/OIV: KH

February 06, 2026

TO ALL INTERESTED PARTIES:

This concerns the remand order of the U.S. Court of International Trade (CIT or the Court) in *SeAH Steel VINA Corporation v. United States*, Court No. 23-00257, Slip Op. 25-157 (CIT December 16, 2025) (*Remand Order*) in connection with *Circular Welded Carbon Quality Steel Pipe From the People's Republic of China: Final Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders*, 88 FR 77287 (November 9, 2023) (*Final Determination*), and accompanying Issues and Decision Memorandum (IDM).

In the *Remand Order*, the Court remanded the *Final Determination* to the U.S. Department of Commerce (Commerce) to reconsider or further explain its basis for its affirmative circumvention finding.[1] The Court found that Commerce "failed to explain how factors that are 'mixed' {under subsection (b)(3) of the Tariff Act of 1930, as amended (the Act)} enabled the agency to reach the conclusion that action was appropriate {to prevent evasion, pursuant to section 781(b)(1)(E) of the Act}."[2] The Court explained that "Commerce did not identify any other grounds beyond the factors that it was already required to find pursuant to section 1677j(b)(1)(A)–(D)."[3]

In light of the Court's finding, Commerce determines that it is necessary to re-open the record and solicit certain new factual information. Specifically, Commerce is inviting interested parties to provide new factual information, previously absent from the record, demonstrating other grounds (apart from those under section 781(b)(1)(A)–(D) of the Act), that warrant action to prevent evasion of the order in question.

All submissions of factual information must provide a detailed narrative of exactly what information is contained in the submission and why it should be considered. Interested parties must submit this information **no later than 5:00 p.m. Eastern Time (ET), February 13, 2026**. Parties will then have 3 business days to submit information to rebut, clarify, or correct any new information placed on the record by interested parties in response to the above. There will be no surrebuttal comment opportunity.

---

[1] *See Remand Order* at 21-28.
[2] *Id.* at 27.
[3] *Id.*

Filed By: krisha hill, Filed Date: 2/6/26 4:22 PM, Submission Status: Approved

If you have any questions on this matter, please contact Krisha Hill at (202) 482-4037 or Krisha.Hill@trade.gov.

Sincerely,



Stephen Bailey
Program Manager
AD/CVD Operations, Office IV
Enforcement and Compliance



Filed By: krisha hill, Filed Date: 2/6/26 4:22 PM, Submission Status: Approved

TAB-8

Draft Remand Redetermination
P.R.R. 4; C.R.R. 3

Barcode: 4902901-01 A-570-910 REM - Remand Slip Op. 25-157

A-570-910
Remand
Slip Op. 25-157
**Public Version**
E&C/IV: KH

**SeAH Steel VINA Corporation v. United States**
**Court No. 23-00258, Slip Op. 25-157 (CIT 2025)**
**Circular Welded Carbon Quality Steel Pipe from the People's Republic of China**

# DRAFT RESULTS OF REDETERMINATION PURSUANT TO COURT REMAND

## I. SUMMARY

The U.S. Department of Commerce (Commerce) prepared these draft results of redetermination pursuant to the remand order of the U.S. Court of International Trade (CIT or the Court) in *SeAH Steel VINA Corporation v. United States*, Court No. 23-00258, Slip Op. 25-157 (CIT December 16, 2025) (*Remand Order*). These draft results of redetermination concern *Circular Welded Carbon Quality Steel Pipe From the People's Republic of China: Final Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders*, 88 FR 77287 (November 9, 2023) (*Final Determination*), and accompanying Issues and Decision Memorandum (IDM).

In the *Remand Order*, the Court remanded the *Final Determination* to Commerce to explain what other factors, besides those under sections 781(b)(1)(A) through (D) of the Tariff Act of 1930, as amended (the Act), supported its affirmative finding under section 781(b)(1)(E) of the Act.[1] On remand, we have reconsidered our determination in the *Final Determination* and continue to find that action is appropriate to prevent evasion of the *Orders*[2] pursuant to section

[1] *See Remand Order* at 21-28.
[2] *See Notice of Antidumping Duty Order: Circular Welded Carbon Quality Steel Pipe from the People's Republic of China*, 73 FR 42547 (July 22, 2008); and *Circular Welded Carbon Quality Steel Pipe from the People's Republic of China: Notice of Amended Final Affirmative Countervailing Duty Determination and Notice of Countervailing Duty Order*, 73 FR 42545 (July 22, 2008) (collectively, *Orders*).

Filed By: krisha hill, Filed Date: 3/31/26 11:56 AM, Submission Status: Approved

781(b)(1)(E) of the Act. In making this redetermination, pursuant to the Court's *Remand Order*,[3] we considered the factors under section 781(b)(3) of the Act and find that patterns of trade show that U.S. imports of circular welded carbon quality steel pipe (CWP) from the Socialist Republic of Vietnam (Vietnam) have increased, and that Vietnamese imports of hot-rolled steel (HRS) sourced from the People's Republic of China (China) have increased. In making this determination, we accounted for and further explain the factors under section 781(b)(3) of the Act in accordance with the *Remand Order*.[4] Accordingly, in these draft results of redetermination, we find that action is appropriate to prevent evasion of the *Orders* under section 781(b)(1)(E) of the Act, and as a result we continue to make an affirmative determination of circumvention.

## II. BACKGROUND

In the *Final Determination*, Commerce determined that CWP completed in Vietnam using China-origin HRS and subsequently exported from Vietnam to the United States is circumventing the *Orders* on a country-wide basis.[5] As a result, in accordance with section 781(b) of the Act, Commerce determined that the merchandise subject to the circumvention inquiry should be included within the scope of the *Orders*.[6] Commerce determined, in relevant part, that an action is appropriate to prevent evasion of the *Orders*, pursuant to section 781(b)(1)(E) of Act. Specifically, in determining whether to include merchandise completed in Vietnam within the scope of the *Orders*, Commerce considered additional factors under section 781(b)(3) of the Act, *i.e.*, the patterns of trade, including sourcing patterns, affiliation between Chinese HRS or CWP producers and SeAH VINA, and whether imports into Vietnam of

---

[3] *Id.* at 27-28.
[4] *Id*. at 27-28.
[5] *See Final Determination*, 88 FR at 77288.
[6] *Id*.



Filed By: krisha hill, Filed Date: 3/31/26 11:56 AM, Submission Status: Approved

Chinese-origin HRS have increased after the initiation of the investigations which resulted in the issuance of the *Orders*.[7]

Concerning the patterns of trade, including sourcing patterns, we first compared publicly available U.S. import statistics for HRS and CWP between the periods 2012-2016 and 2017-2021 (*i.e.*, the period of inquiry). The data show that the share of total quantity of HRS exported from China to Vietnam in relation to total quantity of HRS exported from China to all countries, increased from 23.6 percent to 26.3 percent.[8] A comparison of the same periods show that the share of the quantity of U.S. imports of CWP from Vietnam in relation to the overall U.S. imports of CWP from the world increased from 7.9 percent to 8.8 percent.[9] Further, a comparison of the five-year periods indicates that the quantity of U.S. imports of CWP from Vietnam increased by 8.2 percent, while the quantity of U.S. imports of CWP from China decreased by 16.2 percent.[10] The quantity of Chinese exports of HRS to Vietnam increased by 1.7 percent, while the quantity of Chinese exports of HRS to the rest of the world (excluding Vietnam) decreased by 12.2 percent.[11]

We then analyzed patterns of trade with respect to SeAH VINA during the 2017-2021 period. The data show that from 2017 to 2021, 1) the quantity of HRS imported from China [ ],[12] 2) the quantity of domestic and third-country sales of CWP

---

[7] *See Circular Welded Carbon Quality Steel Pipe from the People's Republic of China: Preliminary Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing Duty Order*, 88 FR 21975 (April 12, 2023) (*Preliminary Determination*), and accompanying Preliminary Decision Memorandum (PDM) at 20-23.

[8] *See Preliminary Determination* PDM at 23 (citing the Domestic Interested Parties' Letter, "Circumvention Inquiry Supplemental Questionnaire Response," dated June 28, 2022 (Circumvention Allegation Supplement), at Exhibit Supp-1). The domestic interested parties are Bull Moose Tube Company, Maruichi American Corporation, Nucor Tubular Products Inc., Wheatland Tube Company, and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC (collectively, the domestic interested parties).

[9] *See Preliminary Determination* PDM at 23 (citing Circumvention Allegation Supplement at Exhibit Supp. 2).

[10] *See Preliminary Determination* PDM at 20; *see also* Circumvention Allegation Supplement at Exhibit Supp. 2.

[11] *See Preliminary Determination* PDM at 20-21; *see also* Circumvention Allegation Supplement at Exhibit Supp-1.

[12] *See* SeAH VINA's Letter, "Response to the Department's September 6 Questionnaire," dated October 7, 2022 (SeAH VINA's IQR), at Appendix 10, "the quantity of HRS imported from China decreased from [ ] MTs in



Filed By: krisha hill, Filed Date: 3/31/26 11:56 AM, Submission Status: Approved

produced from China-origin HRS [ ],[13] and 3) the quantity of U.S. sales of CWP produced from China-origin HRS [ ].[14]

Based on this analysis, we found that the patterns of trade and sourcing of HRS are not dispositive with respect to either an affirmative or a negative circumvention determination, *i.e.*, "the evidence with respect to these factors is mixed and inconclusive."[15]

Concerning affiliation, we found that SeAH VINA is not affiliated with any Chinese CWP or HRS producer or supplier.[16] In summary, we found that the results of our analysis of factors under section 781(b)(3) of the Act (*i.e.*, patterns of trade, affiliation, and imports of HRS from China) were mixed and that none of these factors were dispositive in our circumvention analysis.[17] Commerce ultimately found that "the totality of factors in this inquiry warrant an affirmative finding of circumvention of the *Orders*."[18]

## III. REMAND ORDER

In the *Remand Order*, the Court found that "Congress's addition of subsection (b)(1)(E) to section {781}(b) indicates that it intended for the determination of whether action is appropriate with respect to merchandise completed or assembled in other foreign countries to require something more than evaluating the factors in subsection (b)(1)(A)-(D)."[19] The Court found that Commerce "failed to explain how factors that are 'mixed' {under subsection (b)(3)}

2017 to [ ] MTs in 2021." *See* PDM at 21 and Memorandum, "Preliminary Analysis Memorandum for SeAH Steel VINA Corporation," dated April 6, 2023 (SeAH VINA's Preliminary Analysis Memorandum), at 7. We confirm that we were mistaken on that aforementioned statement in the PDM, and that SeAH Vina's imports of HRS from China decreased from 2017 to 2021.

[13] *See* SeAH VINA's Preliminary Analysis Memorandum at 6; *see also* SeAH VINA's IQR at Appendix 33-C.

[14] *See* SeAH VINA's Preliminary Analysis Memorandum at 6; *see also* SeAH VINA's IQR at Appendix 10.

[15] *Id*. at 20.

[16] *Id*. at 21.

[17] *Id*. at 22-23.

[18] *Id*. at 23.

[19] *See Remand Order* at 22.



Filed By: krisha hill, Filed Date: 3/31/26 11:56 AM, Submission Status: Approved

enabled the agency to reach the conclusion that action was appropriate."[20] Specifically, the Court reasoned, Commerce's assertion in the *Final Determination* that the (b)(3) factors did not detract from a finding that an action is appropriate assumes that action was found to be appropriate on some other grounds, but Commerce did not identify any other grounds beyond the factors that it was already required to find pursuant to section 781(b)(1)(A)-(D) of the Act.[21] The Court found that, "{b}ecause section {781}(b)(1)(E) must be construed to have some operative effect… Commerce must reconsider or further explain its basis for the affirmative circumvention finding."[22] Specifically, the Court stated, "{t}o the extent that Commerce has in fact relied upon 'other' factors that are distinct from factors (b)(1)(A)–(D) to support its determination that action is appropriate pursuant to subsection (b)(1)(E), Commerce must identify what these 'other' factors are and identify the substantial evidence that supports its finding."[23] The Court also observed that subsection 781(b)(3)(C) requires consideration of "whether imports into the foreign country of the merchandise {from the country subject to the order} have increased after the initiation of the investigation which resulted in the issuance of such order or finding."[24] The Court found that, "{t}o the extent that Commerce reconsiders its analysis of the (b)(3) factors, it should explain the basis for the time periods that it used – {reconcile} the statutory requirements with its consideration of the 2012-2016 versus 2017-2021 periods, as well as changes within the latter period, *i.e.*, 2017-2021."[25]

[20] *Id*. at 27.
[21] *Id*.
[22] *Id*.
[23] *Id*. at 27-28.
[24] *Id*. at 27, footnote 21.
[25] *Id*.



Filed By: krisha hill, Filed Date: 3/31/26 11:56 AM, Submission Status: Approved

## IV. DRAFT RESULTS OF REDETERMINATION

In evaluating whether an action is appropriate under section 781(b)(1)(E) of the Act, Commerce determined that its analysis would be enhanced by additional information provided by interested parties. Thus, on February 6, 2026, Commerce reopened the record and issued a letter to interested parties, requesting information, previously absent from the record, demonstrating other grounds (apart from those under sections 781(b)(1)(A) through (D) of the Act), that warrant action to prevent evasion of the *Orders*.[26] Commerce received no additional information. On March 9, 2026, Commerce placed on the record entry data obtained from the U.S. Customs and Border Protection covering the periods 2017 through 2021 and 2025, and U.S. International Trade Commission (USITC) import data for 2025, for the Harmonized Tariff Schedule of the United States subheadings under which imports of CWP primarily entered the United States.[27] On March 13, 2026, the domestic interested parties and SeAH VINA submitted factual information to rebut, clarify, or correct the March 9, 2026, information.[28] Specifically, the domestic interested parties submitted data showing the quantity of HRS exported from China to Vietnam for the 2012-2016 and 2017-2021 periods. SeAH Vina submitted its quantity of CWP exported to the United States for the years 2022 through 2025.

In light of the Court's *Remand Order*, and absent any new information, as requested from interested parties, demonstrating other grounds, apart from those under sections 781(b)(1)(A) through (D) of the Act that warrant action to prevent evasion of the *Orders*, Commerce further evaluated its consideration of factors under section 781(b)(3) of the Act. Commerce finds that,

[26] *See* Commerce's Letter, dated February 6, 2026.
[27] *See* Memorandum, "U.S. Customs and Border Protection Entry Data," dated March 9, 2026 (Commerce's March 9, 2026, Memorandum).
[28] *See* Domestic Interested Parties' Letter, "Submission of New Factual Information," dated March 13, 2026 (Domestic Interested Parties' RFI); *see also* SeAH VINA's Letter, "Submission of Factual Information Relating to Imports," dated March 13, 2026 (SeAH VINA's RFI).


Filed By: krisha hill, Filed Date: 3/31/26 11:56 AM, Submission Status: Approved

based on its further evaluation of factors under section 781(b)(3) of the Act, discussed below, and absent any information to the contrary, continued action is appropriate to prevent evasion of the *Orders*, pursuant to section 781(b)(1)(E) of Act.

<u>Factors Under Section 781(b)(3) of the Act</u>

With respect to section 781(b)(3)(A) of the Act, aggregated data for the 2012-2016 and 2017-2021 periods show that the quantity of U.S. imports of CWP from Vietnam increased by 8.2 percent from the 2012-2016 period to the 2017-2021 period (*i.e.*, from 281,799 metric tons (MTs) to 304,987 MTs), while the quantity of U.S. imports of CWP from China decreased by 16.2 percent from the 2012-2016 period to the 2017-2021 period (*i.e.*, from 114,246 MTs to 95,730 MTs).[29] Additionally, comparisons of the 2012-2016 to the 2017-2021 periods, and of the 2017-2021 period to 2025, show that the quantity of U.S. imports of CWP from Vietnam in relation to the quantity U.S. imports of CWP from the world increased from 7.9 percent to 8.8 percent, and from 8.8 percent to 18.43 percent, respectively.[30] Moreover, SeAH Vina's exports to the United States of CWP [ ] when comparing the yearly average covering the 2017-2021 period to the yearly average covering the 2022-2025 period (*i.e.*, [ ]).[31] The above patterns of trade under section 781(b)(3)(A)) demonstrate evasion of the *Orders* has likely taken place as indicated by increases in the quantity of U.S. imports of CWP from Vietnam and decreases in the volume of U.S. imports of CWP from China, when comparing the 2012-2016 period to the 2017-2021 period. Moreover, the increase in the quantity of U.S. imports of CWP from Vietnam in relation to U.S.

---

[29] *See Preliminary Determination* PDM at 20; *see also* Circumvention Allegation Supplement at Exhibit Supp. 2.
[30] *See Preliminary Determination* PDM at 23 (citing Circumvention Allegation Supplement at Exhibit Supp. 2); *see also* Commerce's March 9, 2026, Memorandum.
[31] *See* SeAH VINA's Letter, "Response to the Department's November 28 Questionnaire," dated December 15, 2022 at Appendix S-19; *see also* SeAH VINA's RFI at Attachment.



Filed By: krisha hill, Filed Date: 3/31/26 11:56 AM, Submission Status: Approved

imports of CWP from the world demonstrate shifting trade patterns likely intended to avoid the duties associated with the *Orders*. The quantity of U.S. imports of CWP from Vietnam in relation to the quantity U.S. imports of CWP from the world increased from the 2012-2016 to the 2017-2021 period, and from the 2017-2021 period to 2025. Finally, SeAH Vina's trade practices [ ], also indicating efforts to avoid duties imposed by the *Orders*.

With respect to section 781(b)(3)(B) of the Act, Commerce found that 1) SeAH VINA is not affiliated with any of its HRS suppliers or any Chinese HRS producers; 2) there are no facts (*e.g.*, close supplier relationships) that suggest control of SeAH VINA by the Chinese producers of HRS with regards to pipe and tube production in Vietnam; 3) there is no evidence to indicate that the Chinese pipe and tube or Chinese HRS producers had arrangements with SeAH VINA which would allow them to export HRS to Vietnam for processing into pipe and tube for export to the United States and avoid the discipline of the *Orders*; and 4) SeAH VINA's purchases of HRS were not made directly from Chinese HRS producers but through unaffiliated resellers. While there is no evidence that SeAH VINA is affiliated with any company located in China that produces or exports HRS, Commerce nevertheless does not find this factor alone to be dispositive.

While affiliation can contribute towards a determination of circumvention and the need to take action to prevent evasion of the *Orders*, the lack of affiliation does not weigh against a finding that a determination of circumvention is appropriate if other factors pursuant to section 781(b)(3) of the Act demonstrate otherwise. Commerce has previously made a finding that determinations of circumvention is appropriate even when no evidence of affiliation was found.[32]

[32] *See Circular Welded Carbon Quality Steel Pipe From the People's Republic of China: Final Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders*, 91 FR 4871 (February



Filed By: krisha hill, Filed Date: 3/31/26 11:56 AM, Submission Status: Approved

An affirmative affiliation finding under section 781(b)(3)(B) of the Act naturally supports finding that it is appropriate to make an affirmative determination of circumvention as it speaks to the level of cooperation and planning between two companies that potentially share common goals concerning sales, profit, personnel, management, production planning, *etc.* However, an affirmative finding with regard to the other factors under section 781(b)(3) of the Act, and certainly an affirmative finding with regard to all of the other such factors, does not preclude Commerce from finding circumvention if there is no finding of affiliation. In such a situation, a finding of no affiliation is considered as neither helpful nor hurtful (*i.e.*, neutral). Two companies that do not share common goals concerning sales, profit, personnel, management, production planning, *etc.* are not precluded from engaging in circumvention, either knowingly or unknowingly, which is fueled by a commercial desire to avoid duties and thus, increase sales and profits. Accordingly, while affiliation is a factor to be investigated and weighed, we do not consider it to be dispositive as to the question of whether an affirmative determination of circumvention is appropriate to avoid evasion of the *Orders* without taking into consideration other factors.

With respect to section 781(b)(3)(C) of the Act, aggregate data for the periods 2012-2016 to 2017-2021 show that the quantity of Chinese exports of HRS to Vietnam increased by 1.7 percent from the 2012-2016 period to the 2017-2021 period, while the quantity of Chinese exports of HRS to the rest of the world (excluding Vietnam) decreased by 12.2 percent from the 2012-2016 period to the 2017-2021 period.[33] Additionally, the quantity of Chinese exports of HRS to Vietnam in relation to the quantity of Chinese exports of HRS to all countries, increased

---

3, 2026) and accompanying IDM at Comment 4; *see also Certain Corrosion-Resistant Steel Products from the People's Republic of China: Affirmative Final Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders*, 83 FR 23895 (May 23, 2018), and accompanying IDM at Comment 12.

[33] *See Preliminary Determination* PDM at 20-21; *see also* Circumvention Allegation Supplement at Exhibit Supp-1.



Filed By: krisha hill, Filed Date: 3/31/26 11:56 AM, Submission Status: Approved

for the 2017-2021 period compared to the 2012-2016 period from 23.6 percent to 26.3 percent.[34] The above patterns of HRS imports from China to Vietnam under section 781(b)(3)(C) demonstrate evasion of the *Orders* has likely taken place as the aggregate data indicates that Chinese exports of HRS to Vietnam increased from the 2012-2016 to the 2017-2021 periods, and the Chinese exports of HRS to Vietnam in relation to the quantity of Chinese exports of HRS to all countries, increased from the 2012-2016 to the 2017-2021 periods.

*Time Periods Used In Evaluating the Patterns of Trade, Including Sourcing Patterns*

For this redetermination, Commerce continues to rely on the comparison of the 2012-2016 to 2017-2021 periods, as it did in the underlying circumvention inquiry. Commerce published the *Orders* in 2008. Section 781(b)(3)(C) of the Act stipulates that Commerce account, *inter alia*, "whether imports into the foreign country of the merchandise described in paragraph (1)(b) have increased *after the initiation of the investigation which resulted in the issuance of such order or finding*." It has been Commerce's practice to interpret this statutory provision as providing us with discretion to select the comparison period at any time after the initiation of the investigation. For example, in *Diamond Sawblades from China 2019*, Commerce conducted two circumvention determinations.[35] In 2009, Commerce published the antidumping duty (AD) order on diamond sawblades from China, and in the first of these 2019 circumvention determinations, Commerce used the annual data between 2014-2016. In the

---

[34] *See* PDM at 23; *see also* Circumvention Allegation Supplement at Exhibit Supp-1; and Domestic Interested Parties' RFI.

[35] *See Diamond Sawblades and Parts Thereof from the People's Republic of China: Preliminary Affirmative Determination of Circumvention*, 83 FR 57425 (November 15, 2018) and accompanying PDM, unchanged in *Diamond Sawblades and Parts Thereof from the People's Republic of China: Final Determination of Anti-Circumvention Inquiry*, 84 FR 33920 (July 16, 2019), and *Diamond Sawblades and Parts Thereof from the People's Republic of China: Preliminary Affirmative Determination of Circumvention*, 84 FR 58130 (October 30, 2019) and accompanying PDM, unchanged in *Diamond Sawblades and Parts Thereof from the People's Republic of China: Final Determination of Anti-Circumvention Inquiry*, 85 FR 9737 (February 20, 2020) (collectively, *Diamond Sawblades from China 2019)*.



Filed By: krisha hill, Filed Date: 3/31/26 11:56 AM, Submission Status: Approved

second of these circumvention determinations, Commerce used the periods January-October 2017 and January-October 2018. In *OCTG from China (2021)*, the AD and countervailing duty orders were published in 2010, and Commerce compared the 2014-2016 period to the 2017-2019 period.[36] Practically, such a restrictive interpretation of this statutory provision is impracticable and does not serve the circumvention inquiry requestor, *e.g.*, the domestic interested parties, because foreign companies can commence circumvention at any time after the initiation of the investigation and the circumvention inquiry requestor should be able to propose the comparison periods accordingly. Here, in particular, aligning the comparison period to the time of the initiation of the investigation, and requesting data going back in the 2000's, considering the age of this order, is impractical, as the companies subject to the circumvention inquiry are not required to maintain such data for taxation and financial reporting purposes.

In accordance with the Court's *Remand Order*, Commerce has, as discussed above, revised certain aspects of its analysis.

## V. COMMENTS ON DRAFT RESULTS OF REDETERMINATION

We invite interested parties to comment on these draft results of redetermination pursuant to the CIT's remand. Comments are due by **5:00 PM Eastern Time on April 14, 2026**. Parties will not be granted an opportunity to submit rebuttal comments. We request that interested parties provide at the beginning of their comments a public executive summary for each issue raised in their submission.[37] Further, we request that interested parties limit their public executive summary of each issue to no more than 450 words, not including citations. We intend

[36] *See Oil Country Tubular Goods from the People's Republic of China: Preliminary Affirmative Determinations of Circumvention*, 86 FR 43627 (August 10, 2021), and accompanying PDM, unchanged in *Oil Country Tubular Goods from the People's Republic of China: Final Affirmative Determinations of Circumvention*, 86 FR 67443 (November 26, 2021) (*OCTG from China 2021)*.
[37] We use the term "issue" here to describe an argument that Commerce would normally address in a comment of the final remand redetermination.

Barcode: 4902901-01 A-570-910 REM - Remand Slip Op. 25-157

to use the public executive summaries as the basis of the comment summaries included in the final results of redetermination. We request that interested parties include footnotes for relevant citations in the public executive summary of each issue. Interested parties may not submit new factual information in their comments and should file their comments with Commerce using Enforcement and Compliance's Antidumping and Countervailing Duty Centralized Electronic Service System (ACCESS) in accordance with 19 CFR 351.303. These comments will be addressed in our final results of redetermination issued pursuant to the *Remand Order*.


Filed By: krisha hill, Filed Date: 3/31/26 11:56 AM, Submission Status: Approved

TAB 9

Final Results of Redetermination Pursuant to Court Remand
P.R.R. 1; C.R.R. 1

A-570-910
Remand
Slip Op. 25-157
**Public Version**
E&C/IV: KH

**SeAH Steel VINA Corporation v. United States**
**Court No. 23-00258, Slip Op. 25-157 (CIT 2025)**
**Circular Welded Carbon Quality Steel Pipe from the People's Republic of China**

# FINAL RESULTS OF REDETERMINATION PURSUANT TO COURT REMAND

## I. SUMMARY

The U.S. Department of Commerce (Commerce) prepared these final results of redetermination pursuant to the remand order of the U.S. Court of International Trade (CIT or the Court) in *SeAH Steel VINA Corporation v. United States*, Court No. 23-00258, Slip Op. 25-157 (CIT December 16, 2025) (*Remand Order*). These final results of redetermination concern *Circular Welded Carbon Quality Steel Pipe From the People's Republic of China: Final Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders*, 88 FR 77287 (November 9, 2023) (*Final Determination*), and accompanying Issues and Decision Memorandum (IDM).

In the *Remand Order*, the Court remanded the *Final Determination* to Commerce to explain what other factors, besides those under sections 781(b)(1)(A) through (D) of the Tariff Act of 1930, as amended (the Act), supported its affirmative finding under section 781(b)(1)(E) of the Act.[1] On remand, we have reconsidered our determination in the *Final Determination* and now find that action, in the form of an affirmative circumvention determination, is not appropriate to prevent evasion of the *Orders*[2] pursuant to section 781(b)(1)(E) of the Act. In

---

[1] *See Remand Order* at 21-28.
[2] *See Notice of Antidumping Duty Order: Circular Welded Carbon Quality Steel Pipe from the People's Republic of China*, 73 FR 42547 (July 22, 2008); and *Circular Welded Carbon Quality Steel Pipe from the People's Republic of*

making this redetermination, pursuant to the Court's *Remand Order*,[3] we considered the factors under section 781(b)(3) of the Act and find that patterns of trade show that U.S. imports of circular welded carbon quality steel pipe (CWP) from the Socialist Republic of Vietnam (Vietnam) have increased, and that Vietnamese imports of hot-rolled steel (HRS) sourced from the People's Republic of China (China) have increased. In making this determination, we accounted for and further explain the factors under section 781(b)(3) of the Act in accordance with the *Remand Order*.[4] Accordingly, in these final results of redetermination, we find that record evidence does not support that action is appropriate to prevent evasion of the *Orders* under section 781(b)(1)(E) of the Act, and as a result we make a negative determination of circumvention.

## II. BACKGROUND

In the *Final Determination*, Commerce determined that CWP completed in Vietnam using China-origin HRS and subsequently exported from Vietnam to the United States is circumventing the *Orders* on a country-wide basis.[5] As a result, in accordance with section 781(b) of the Act, Commerce determined that the merchandise subject to the circumvention inquiry should be included within the scope of the *Orders*.[6] Commerce determined, in relevant part, that action is appropriate to prevent evasion of the *Orders*, pursuant to section 781(b)(1)(E) of Act. Specifically, in determining whether to include merchandise completed in Vietnam within the scope of the *Orders*, Commerce considered additional factors under section 781(b)(3) of the Act, *i.e.*, the patterns of trade, including sourcing patterns, affiliation between Chinese

*China: Notice of Amended Final Affirmative Countervailing Duty Determination and Notice of Countervailing Duty Order*, 73 FR 42545 (July 22, 2008) (collectively, *Orders*).
[3] *See Remand Order* at 27-28.
[4] *Id*.
[5] *See Final Determination*, 88 FR at 77288.
[6] *Id*.

Barcode: 4917487-01 A-570-910 REM - Remand Slip Op. 25-157

HRS or CWP producers and SeAH VINA, and whether imports into Vietnam of Chinese-origin HRS have increased after the initiation of the investigations which resulted in the issuance of the *Orders*.[7]

Concerning the patterns of trade, including sourcing patterns, we first compared publicly available U.S. import statistics for HRS and CWP between the periods 2012-2016 and 2017-2021 (*i.e.*, the period of inquiry). The data show that the share of total quantity of HRS exported from China to Vietnam in relation to total quantity of HRS exported from China to all countries, increased from 23.6 percent to 26.3 percent.[8] A comparison of the same periods show that the share of the quantity of U.S. imports of CWP from Vietnam in relation to the overall U.S. imports of CWP from the world increased from 7.9 percent to 8.8 percent.[9] Further, a comparison of the five-year periods indicates that the quantity of U.S. imports of CWP from Vietnam increased by 8.2 percent, while the quantity of U.S. imports of CWP from China decreased by 16.2 percent.[10] The quantity of Chinese exports of HRS to Vietnam increased by 1.7 percent, while the quantity of Chinese exports of HRS to the rest of the world (excluding Vietnam) decreased by 12.2 percent.[11]

We then analyzed patterns of trade with respect to SeAH VINA during the 2017-2021 period. The data show that from 2017 to 2021, (1) the quantity of HRS imported from China

---

[7] *See Circular Welded Carbon Quality Steel Pipe from the People's Republic of China: Preliminary Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing Duty Order*, 88 FR 21975 (April 12, 2023) (*Preliminary Determination*), and accompanying Preliminary Decision Memorandum (PDM) at 20-23.
[8] *See Preliminary Determination* PDM at 23 (citing the Domestic Interested Parties' Letter, "Circumvention Inquiry Supplemental Questionnaire Response," dated June 28, 2022 (Circumvention Allegation Supplement), at Exhibit Supp-1). The domestic interested parties are Bull Moose Tube Company, Maruichi American Corporation, Nucor Tubular Products Inc., Wheatland Tube Company, and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC (collectively, the domestic interested parties).
[9] *See Preliminary Determination* PDM at 23 (citing Circumvention Allegation Supplement at Exhibit Supp-2).
[10] *See Preliminary Determination* PDM at 20; *see also* Circumvention Allegation Supplement at Exhibit Supp-2.
[11] *See Preliminary Determination* PDM at 20-21; *see also* Circumvention Allegation Supplement at Exhibit Supp-1.



Filed By: Krisha Hill, Filed Date: 4/30/26 3:57 PM, Submission Status: Approved

[ ],[12] (2) the quantity of domestic and third-country sales of CWP produced from China-origin HRS [ ],[13] and (3) the quantity of U.S. sales of CWP produced from China-origin HRS [ ].[14]

Based on this analysis, we found that the patterns of trade and sourcing of HRS are not dispositive with respect to either an affirmative or a negative circumvention determination, *i.e.*, "the evidence with respect to these factors is mixed and inconclusive."[15]

Concerning affiliation, we found that SeAH VINA is not affiliated with any Chinese CWP or HRS producer or supplier.[16] In summary, we found that the results of our analysis of factors under section 781(b)(3) of the Act (*i.e.*, patterns of trade, affiliation, and imports of HRS from China) were mixed and that none of these factors were dispositive in our circumvention analysis.[17] Commerce ultimately found that "the totality of factors in this inquiry warrant an affirmative finding of circumvention of the *Orders*."[18]

## III. REMAND ORDER

In the *Remand Order*, the Court found that "Congress's addition of subsection (b)(1)(E) to section {781}(b) indicates that it intended for the determination of whether action is appropriate with respect to merchandise completed or assembled in other foreign countries to require something more than evaluating the factors in subsection (b)(1)(A)-(D)."[19] The Court

[12] *See* SeAH VINA's Letter, "Response to the Department's September 6 Questionnaire," dated October 7, 2022 (SeAH VINA's IQR), at Appendix 10, "the quantity of HRS imported from China decreased from [ ] metric tons (MTs) in 2017 to [ ] MTs in 2021." *See* PDM at 21 and Memorandum, "Preliminary Analysis Memorandum for SeAH Steel VINA Corporation," dated April 6, 2023 (SeAH VINA's Preliminary Analysis Memorandum), at 7. We confirm that we were mistaken on that aforementioned statement in the PDM, and that SeAH VINA's imports of HRS from China decreased from 2017 to 2021.

[13] *See* SeAH VINA's Preliminary Analysis Memorandum at 6; *see also* SeAH VINA's IQR at Appendix 33-C.

[14] *See* SeAH VINA's Preliminary Analysis Memorandum at 6; *see also* SeAH VINA's IQR at Appendix 10.

[15] *See Preliminary Determination* PDM at 22.

[16] *Id*. at 22-23.

[17] *Id*. at 20-24.

[18] *Id*. at 24.

[19] *See Remand Order* at 22.

found that Commerce "failed to explain how factors that are 'mixed' {under subsection (b)(3)} enabled the agency to reach the conclusion that action was appropriate."[20] Specifically, the Court reasoned, Commerce's assertion in the *Final Determination* that the (b)(3) factors did not detract from a finding that an action is appropriate assumes that action was found to be appropriate on some other grounds, but Commerce did not identify any other grounds beyond the factors that it was already required to find pursuant to section 781(b)(1)(A)-(D) of the Act.[21] The Court found that, "{b}ecause section {781}(b)(1)(E) must be construed to have some operative effect… Commerce must reconsider or further explain its basis for the affirmative circumvention finding."[22] Specifically, the Court stated, "{t}o the extent that Commerce has in fact relied upon 'other' factors that are distinct from factors (b)(1)(A)–(D) to support its determination that action is appropriate pursuant to subsection (b)(1)(E), Commerce must identify what these 'other' factors are and identify the substantial evidence that supports its finding."[23] The Court also observed that subsection 781(b)(3)(C) requires consideration of "whether imports into the foreign country of the merchandise {from the country subject to the order} have increased after the initiation of the investigation which resulted in the issuance of such order or finding."[24] The Court found that, "{t}o the extent that Commerce reconsiders its analysis of the (b)(3) factors, it should explain the basis for the time periods that it used – {reconcile} the statutory requirements with its consideration of the 2012-2016 versus 2017-2021 periods, as well as changes within the latter period, *i.e.*, 2017-2021."[25]

---

[20] *Id*. at 27.
[21] *Id*.
[22] *Id*.
[23] *Id*. at 27-28.
[24] *Id*. at 27, FN 21.
[25] *Id*.



Filed By: Krisha Hill, Filed Date: 4/30/26 3:57 PM, Submission Status: Approved

## IV. FINAL RESULTS OF REDETERMINATION

In evaluating whether an action is appropriate under section 781(b)(1)(E) of the Act, Commerce determined that its analysis would be enhanced by additional information provided by interested parties in the Draft Remand. Thus, on February 6, 2026, Commerce reopened the record and issued a letter to interested parties, requesting information, previously absent from the record, demonstrating other grounds (apart from those under sections 781(b)(1)(A) through (D) of the Act), that warrant action to prevent evasion of the *Orders*.[26] Commerce received no additional information. On March 9, 2026, Commerce placed on the record entry data obtained from the U.S. Customs and Border Protection (CBP) covering the periods 2017 through 2021 and 2025, and U.S. International Trade Commission (USITC) import data for 2025, for the Harmonized Tariff Schedule of the United States subheadings under which imports of CWP primarily entered the United States.[27] On March 13, 2026, the domestic interested parties and SeAH VINA submitted factual information to rebut, clarify, or correct the March 9, 2026, information.[28] Specifically, the domestic interested parties submitted data showing the quantity of HRS exported from China to Vietnam for the 2012-2016 and 2017-2021 periods. SeAH VINA submitted its quantity of CWP exported to the United States for the years 2022 through 2025.

In light of the Court's *Remand Order*, and absent any new information, as requested from interested parties, demonstrating other grounds, apart from those under sections 781(b)(1)(A) through (D) of the Act that warrant action to prevent evasion of the *Orders*, Commerce further

---

[26] *See* Commerce's Letter to All Interested Parties, dated February 6, 2026.
[27] *See* Memorandum, "U.S. Customs and Border Protection Entry Data," dated March 9, 2026.
[28] *See* Domestic Interested Parties' Letter, "Submission of New Factual Information," dated March 13, 2026 (Domestic Interested Parties' RFI); *see also* SeAH VINA's Letter, "Submission of Factual Information Relating to Imports," dated March 13, 2026.


Filed By: Krisha Hill, Filed Date: 4/30/26 3:57 PM, Submission Status: Approved

evaluated its consideration of factors under section 781(b)(3) of the Act. In the Draft Remand Commerce found that, based on its further evaluation of factors under section 781(b)(3) of the Act, and absent any information to the contrary, continued action was appropriate to prevent evasion of the *Orders*, pursuant to section 781(b)(1)(E) of Act.

On March 31, 2026, we released the Draft Remand and provided interested parties with an opportunity to comment.[29] On April 14, 2026, we received comments on the Draft Remand from SeAH VINA and the domestic interested parties.[30] We have responded to those comments below.

In its comments on the Draft Remand, SeAH VINA disagreed with Commerce's analysis, primarily the use of post inquiry-period data. The domestic interested parties supported Commerce's decision in the Draft Remand. Based on our review of these comments, we find that the facts on the record do not support a determination that sections 781(b)(3)(A) and (C) support finding that action is appropriate to prevent evasion of t*he Orders* pursuant to section 781(b)(1)(E).

Factors Under Section 781(b)(3) of the Act

With respect to section 781(b)(3)(A) of the Act, aggregated data for the 2012-2016 and 2017-2021 periods show that the quantity of U.S. imports of CWP from Vietnam increased by 8.2 percent from the 2012-2016 period to the 2017-2021 period (*i.e.*, from 281,799 MTs to 304,987 MTs), while the quantity of U.S. imports of CWP from China decreased by 16.2 percent from the 2012-2016 period to the 2017-2021 period (*i.e.*, from 114,246 MTs to 95,730 MTs).[31]

---

[29] *See* Draft Results of Redetermination Pursuant to Court Remand, *SeAH Steel VINA Corporation v. United States*, Court No. 24-00085, Slip Op. 25-157 (CIT December 16, 2025), dated April 16, 2026 (Draft Remand).
[30] *See* SeAH VINA's Letter, "Comments on Draft Remand Redetermination, dated April 14, 2026 (SeAH VINA's Comments); *see also* Domestic Interested Parties' Letter, "Comments on Draft Results of Redetermination Pursuant to Court Remand in CIT Court No. 23-00256, Slip Op. 25-157," dated April 14, 2026 (Domestic Interested Parties' Comments).
[31] *See Preliminary Determination* PDM at 20; *see also* Circumvention Allegation Supplement at Exhibit Supp-2.


Filed By: Krisha Hill, Filed Date: 4/30/26 3:57 PM, Submission Status: Approved

Additionally, comparison of the 2012-2016 to the 2017-2021 periods show that the quantity of U.S. imports of CWP from Vietnam in relation to the quantity U.S. imports of CWP from the world increased from 7.9 percent to 8.8 percent.[32] However, U.S. imports of CWP from Vietnam decreased annually during the entire period of inquiry, *i.e.*, 2017 to 2021.[33] Data for SeAH VINA show [ ] in the quantity of U.S. CWP sales produced from China-origin HRS, and [ ] in the quantity of domestic and third-country sales of CWP produced from China-origin HRS, from 2017 to 2021.[34] This [ ] in the quantity of SeAH VINA's sales of U.S. exports of CWP produced from China-origin HRS, together with [ ] in the quantity of domestic and third-country sales of CWP produced from China-origin HRS, do not support a finding that Chinese producers were diverting production to Vietnam to evade antidumping duties. Therefore, the above patterns of trade under section 781(b)(3)(A)) do not demonstrate evasion of the *Orders* has likely taken place because there is only marginal increases in the quantity of U.S. imports of CWP from Vietnam in relation to small decreases in the volume of U.S. imports of CWP from China, along with [ ] in the quantity of SeAH VINA's sales of U.S. exports of CWP produced from China-origin HRS and [ ] in the quantity of domestic and third-country sales of CWP produced from China-origin HRS when comparing the 2012-2016 period to the 2017-2021 period. The quantity of U.S. imports of CWP from Vietnam in relation to the quantity U.S. imports of CWP from the world increased only marginally from the 2012-2016 to the 2017-2021 period.

---

[32] *See Preliminary Determination* PDM at 23 (citing Circumvention Allegation Supplement at Exhibit Supp-2).
[33] *See* Circumvention Allegation Supplement at Exhibit Supp-2.
[34] *See* SeAH VINA's Preliminary Analysis Memorandum at 6; *see also* SeAH VINA's IQR at Appendices 10 and 33-C.



Filed By: Krisha Hill, Filed Date: 4/30/26 3:57 PM, Submission Status: Approved

With respect to section 781(b)(3)(B) of the Act, Commerce found that: (1) SeAH VINA is not affiliated with any of its HRS suppliers or any Chinese HRS producers; (2) there are no facts (*e.g.*, close supplier relationships) that suggest control of SeAH VINA by the Chinese producers of HRS with regards to CWP production in Vietnam; (3) there is no evidence to indicate that the Chinese CWP or Chinese HRS producers had arrangements with SeAH VINA which would allow them to export HRS to Vietnam for processing into CWP for export to the United States and avoid the discipline of the *Orders*; and (4) SeAH VINA's purchases of HRS were not made directly from Chinese HRS producers but through unaffiliated resellers. While there is no evidence that SeAH VINA is affiliated with any company located in China that produces or exports HRS, and irrespective of our overall final determination, Commerce does not find this factor alone to be dispositive.

While affiliation can contribute towards a determination of circumvention and the need to take action to prevent evasion of the *Orders*, the lack of affiliation does not weigh against a finding that a determination of circumvention is appropriate if other factors pursuant to section 781(b)(3) of the Act demonstrate otherwise. Commerce has previously made a finding that determinations of circumvention is appropriate even when no evidence of affiliation was found.[35] An affirmative affiliation finding under section 781(b)(3)(B) of the Act naturally supports finding that it is appropriate to make an affirmative determination of circumvention as it speaks to the level of cooperation and planning between two companies that potentially share common goals concerning sales, profit, personnel, management, production planning, *etc.* However, an

---

[35] *See Circular Welded Carbon Quality Steel Pipe From the People's Republic of China: Final Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders*, 91 FR 4871 (February 3, 2026), and accompanying IDM at Comment 4; *see also Certain Corrosion-Resistant Steel Products from the People's Republic of China: Affirmative Final Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders*, 83 FR 23895 (May 23, 2018), and accompanying IDM at Comment 12.



Filed By: Krisha Hill, Filed Date: 4/30/26 3:57 PM, Submission Status: Approved

affirmative finding with regard to the other factors under section 781(b)(3) of the Act, and certainly an affirmative finding with regard to all of the other such factors, does not preclude Commerce from finding circumvention if there is no finding of affiliation. In such a situation a finding of no affiliation is considered as neither helpful nor hurtful (*i.e.*, neutral). Two companies that do not share common goals concerning sales, profit, personnel, management, production planning, *etc.* are not precluded from engaging in circumvention, either knowingly or unknowingly, which is fueled by a commercial desire to avoid duties and thus, increase sales and profits. Accordingly, while affiliation is a factor to be investigated and weighed, we do not consider it to be dispositive as to the question of whether an affirmative determination of circumvention is appropriate to avoid evasion of the *Orders* without taking into consideration other factors.

With respect to section 781(b)(3)(C) of the Act, aggregate data for the periods 2012-2016 to 2017-2021 show that the quantity of Chinese exports of HRS to Vietnam increased by 1.7 percent from the 2012-2016 period to the 2017-2021 period, while the quantity of Chinese exports of HRS to the rest of the world (excluding Vietnam) decreased by 12.2 percent from the 2012-2016 period to the 2017-2021 period.[36] Additionally, the quantity of Chinese exports of HRS to Vietnam in relation to the quantity of Chinese exports of HRS to all countries, increased for the 2017-2021 period compared to the 2012-2016 period from 23.6 percent to 26.3 percent.[37] Moreover, data for SeAH VINA show that the quantity of HRS it imported from China [ ] from 2017 to 2021.[38] The above patterns of HRS imports from China to Vietnam under section 781(b)(3)(C) do not demonstrate evasion of the *Orders* has

[36] *See Preliminary Determination* PDM at 20-21; *see also* Circumvention Allegation Supplement at Exhibit Supp-1.
[37] *See Preliminary Determination* PDM at 23; *see also* Circumvention Allegation Supplement at Exhibit Supp-1; and Domestic Interested Parties' RFI.
[38] *See* SeAH VINA's IQR at Appendix 10.

likely taken place as the aggregate data indicates that Chinese exports of HRS to Vietnam increased negligibly from the 2012-2016 to the 2017-2021 periods, the Chinese exports of HRS to Vietnam in relation to the quantity of Chinese exports of HRS to all countries marginally increased from the 2012-2016 to the 2017-2021 periods, and data for SeAH VINA show that the quantity of HRS it imported from China [ ] from 2017 to 2021.

Time Periods Used In Evaluating the Patterns of Trade, Including Sourcing Patterns

For this redetermination, Commerce continues to rely on the comparison of the 2012-2016 to 2017-2021 periods, as it did in the underlying circumvention inquiry. Commerce published the *Orders* in 2008. Section 781(b)(3)(C) of the Act stipulates that Commerce account, *inter alia*, "whether imports into the foreign country of the merchandise described in paragraph (1)(b) have increased *after the initiation of the investigation which resulted in the issuance of such order or finding*." It has been Commerce's practice to interpret this statutory provision as providing us with discretion to select the comparison period at any time after the initiation of the investigation. For example, in *Diamond Sawblades from China 2019*, Commerce conducted two circumvention determinations.[39] In 2009, Commerce published the antidumping duty (AD) order on diamond sawblades from China, and in the first of these 2019 circumvention determinations, Commerce used the annual data between 2014-2016. In the second of these circumvention determinations, Commerce used the periods January-October 2017 and January-October 2018. In *OCTG from China (2021)*, the AD and countervailing duty

[39] *See Diamond Sawblades and Parts Thereof from the People's Republic of China: Preliminary Affirmative Determination of Circumvention*, 83 FR 57425 (November 15, 2018) and accompanying PDM, unchanged in *Diamond Sawblades and Parts Thereof from the People's Republic of China: Final Determination of Anti-Circumvention Inquiry*, 84 FR 33920 (July 16, 2019), and *Diamond Sawblades and Parts Thereof from the People's Republic of China: Preliminary Affirmative Determination of Circumvention*, 84 FR 58130 (October 30, 2019) and accompanying PDM, unchanged in *Diamond Sawblades and Parts Thereof from the People's Republic of China: Final Determination of Anti-Circumvention Inquiry*, 85 FR 9737 (February 20, 2020) (collectively, *Diamond Sawblades from China 2019*).



Filed By: Krisha Hill, Filed Date: 4/30/26 3:57 PM, Submission Status: Approved

(CVD) orders were published in 2010, and Commerce compared the 2014-2016 period to the 2017-2019 period.[40] Practically, such a restrictive interpretation of this statutory provision is impracticable because foreign companies can commence circumvention at any time after the initiation of the investigation. Here, in particular, aligning the comparison period to the time of the initiation of the investigation, and requesting data going back in the 2000's, considering the age of this order, is impractical, as the companies subject to the circumvention inquiry are not required to maintain such data for taxation and financial reporting purposes.

## V. INTERESTED PARTY COMMENTS

*Domestic Interested Parties' Comments*

The following is a verbatim summary of arguments submitted by the domestic interested parties. For further details, *see* Domestic Interested Parties' Comments at 2 and 4.

> Domestic Interested Parties agree with and support the draft remand redeterminations that Commerce has issued in these proceedings. The draft remand redeterminations comply with the remand order by identifying substantial evidence that supports Commerce's findings that action is appropriate to prevent evasion of the antidumping duty orders on { CWP } from Korea, China, and India pursuant to Section 781(b)(1)(E) of the Tariff Act of 1930, as amended (the "Act"). Commerce should continue to reach affirmative determinations of circumvention in its final remand redeterminations in these proceedings.

*SeAH VINA's Comments*

The following is a verbatim summary of arguments submitted by SeAH VINA. For further details, *see* SeAH VINA's Comments at 4-10 (internal citations omitted).

> The Draft Redetermination fails to comply with the Court's remand instruction to identify "other factors" under 19 U.S.C. § 1677j(b)(1)(E) that are genuinely distinct from the criteria already required under subsections (A) through (D). Although {Commerce} reopened the record, it failed to find new evidence of such factors, relying instead on a mere recharacterization of the existing pattern-of-trade and

[40] *See Oil Country Tubular Goods from the People's Republic of China: Preliminary Affirmative Determinations of Circumvention*, 86 FR 43627 (August 10, 2021), and accompanying PDM, unchanged in *Oil Country Tubular Goods from the People's Republic of China: Final Affirmative Determinations of Circumvention*, 86 FR 67443 (November 26, 2021) (*OCTG from China (2021)*).



Filed By: Krisha Hill, Filed Date: 4/30/26 3:57 PM, Submission Status: Approved

affiliation data. This approach ignores the Court's finding that subsection (E) must have a unique operative effect, as evidenced by its deliberate inclusion in foreign-country circumvention cases but exclusion from domestic completion cases. Ultimately, {Commerce} has still not identified the "other factors" it previously claimed were necessary to support its affirmative determination.

{Commerce} placed CWP entry data from the U.S. Customs and Border Protection ("CBP") covering the period of 2017 through 2021 and 2025, as well as publicly available {USITC} import data for 2025 on the record. The Draft Redetermination relied on the 2025 public data to establish that Vietnam's share of U.S. CWP imports had risen from 8.8 percent to 18.43 percent from the inquiry period to 2025, which {Commerce} treated as central evidence for its 19 U.S.C. § 1677j(b)(3)(A) finding. The Draft Redetermination also relied on SeAH VINA's annual average of CWP U.S. exports from 2022 through 2025, which constituted an increase from the inquiry period, as additional evidence of circumvention. This reliance is improper. The inquiry period that led to the affirmative circumvention decision in this case only covered the period from 2017 through 2021. Any information pertaining to the time period following the inquiry period is irrelevant to {Commerce's} circumvention decision. The 2022-25 data should play no role in the final remand redetermination.

Even if the 2025 data were considered, it contradicts {Commerce's} circumvention theory. The 2025 USITC data shows Vietnam's share of U.S. CWP imports at 18.43 percent compared to 8.8 percent during the inquiry period from 2017 to 2021. This growth is particularly difficult to reconcile with a duty-evasion narrative in this case because the total CWP imports to the United States from Vietnam actually decreased from 2017 to 2021. Evasion-dependent exports do not contract during the alleged evasion period and then expand substantially after the evasion mechanism is closed. The growth following {Commerce's} imposition of anticircumvention measures reflects independent competitive factors unrelated to Chinese HRS or the China antidumping orders. If anything, the consistent rise in Vietnam's share of U.S. CWP imports from the 2012-2016 base period to the 2017-2021 inquiry period as well as in 2025 demonstrates a sustained trajectory of market growth driven by factors independent of any foreign input sources.

Although aggregate data show a modest 1.7 percent increase in Chinese HRS exports to Vietnam between the two five-year periods, the annual within-period data reveal that those exports peaked in 2016 and declined sharply thereafter, which is inconsistent with an escalating circumvention scheme. {Commerce's} own acknowledgment that SeAH VINA's Chinese HRS imports decreased during the inquiry period is irreconcilable with a finding that SeAH VINA used Chinese-origin HRS to evade the orders.

**Commerce's Position:** In the Draft Remand, Commerce found that continued action is appropriate to prevent evasion of the *Orders*, pursuant to section 781(b)(1)(E) of Act, based on



Filed By: Krisha Hill, Filed Date: 4/30/26 3:57 PM, Submission Status: Approved

an evaluation of factors under section 781(b)(3) of the Act. We reviewed parties' comments submitted for these final results of redetermination and, upon further consideration of those comments and the facts present on the record, we find that the record evidence does not support that action is appropriate to prevent evasion of the *Orders* pursuant to section 781(b)(1)(E) of the Act and, as a result, we make a negative determination of circumvention.

As a preliminary matter, we disagree with SeAH VINA that Commerce's Draft Remand "fails to comply with the Court's remand instruction to identify 'other factors' under {section 781}(b)(1)(E) that are genuinely distinct from the criteria already required under subsections (A) through (D)." Commerce's re-examination of the section 781(b)(3) factors was in accordance with the CIT's remand order. SeAH VINA's arguments misunderstand the CIT's opinion and the statute. Section 781(b)(3) of the Act states:

> In determining whether to include merchandise assembled or completed in a foreign country in a countervailing duty order or an antidumping duty order or finding under {section 781(b)(1)}, the administering authority shall take into account such factors as:
>
> (A) the pattern of trade, including sourcing patterns,
> (B) whether the manufacturer or exporter of the merchandise described in paragraph (1)(B) is affiliated with the person who uses the merchandise described in paragraph (1)(B) to assemble or complete in the foreign country the merchandise that is subsequently imported into the United States, and
> (C) whether imports into the foreign country of the merchandise described in paragraph (1)(B) have increased after the initiation of the investigation which resulted in the issuance of such order or finding.

Additionally, the SAA[41] states:

> {B}efore deciding to include imported parts within the scope of an antidumping or countervailing duty order, Commerce will consider: (1) changes in the pattern of trade; (2) whether the producer of the finished product subject to the order is related to the assembler in the United States (or the third country); and (3) whether imports of parts from the country subject to the order into the United States (or the third

[41] *See* Statement of Administrative Action accompanying the Uruguay Round Agreements Act, H.R. Doc. No. 103-316, vol. 1 (1994) (SAA).

country) have increased after the initiation of the investigation resulting in the issuance of the order.[42]

Therefore, Commerce is following the statute in considering the factors listed in section 781(b)(3). The Court's analysis that section 781(b)(1)(E) must have some operative effect does not preclude Commerce from using the section 781(b)(3) factors to determine whether action is appropriate to prevent evasion of the *Orders*.[43] The Court required that "*{t}o the extent* that Commerce has in fact relied upon 'other' factors that are distinct from factors (b)(1)(A)–(D) to support its determination that action is appropriate pursuant to subsection (b)(1)(E), Commerce must identify what these 'other' factors are and identify the substantial evidence that supports its finding."[44] Here, Commerce analyzes and relies upon the section 781(b)(3) factors, which are not part of section 781(b)(1)(A)–(D), to determine whether action is appropriate to prevent evasion of the *Orders*. We explicitly stated, "...absent any new information, as requested from interested parties, demonstrating other grounds, apart from those under section 781(b)(1)(A)-(D) of the Act that warrant action to prevent evasion of the *Orders*, Commerce further evaluated its consideration of factors under section 781(b)(3) of the Act."[45] Although Commerce found these factors mixed in the final determination, the Court permit Commerce to reconsider its basis for the affirmative circumvention finding, explicitly stating, "{t}o the extent that Commerce reconsiders its analysis of the (b)(3) factors, it should explain the basis for the time periods that it used."[46] The instructions in the *Remand Order* make it clear that our consideration of factors under section 781(b)(3) of the Act is a permissible approach in determining other grounds, apart

42 *Id.* at 894.
43 *See* Remand Order at 27-28.
44 *Id*. (emphasis added).
45 *See* Draft Remand at 6.
46 *See* Remand Order at 27-28, FN 21.



Filed By: Krisha Hill, Filed Date: 4/30/26 3:57 PM, Submission Status: Approved

from those under section 781(b)(1)(A)-(D) of the Act, that may warrant an action to prevent evasion of the *Orders* pursuant to section 781(b)(1)(E) of the Act.

We have reconsidered our use of 2022-2025 data and we have not relied on the following post-inquiry period data for these final results of redetermination: (1) USITC import data for 2025; (2) CBP Data for 2025; and (3) SeAH VINA's 2022-2025 data on CWP exports to the United States.

With regard to analyzing the periods of 2012 through 2016 to 2017 through 2021 as opposed to periods associated with the date when the *Orders* was published, we note that these are the best periods to use to analyze whether circumvention of the *Orders* is occurring. The statutory language in section 781(b)(3) of the Act does not specify that only imports immediately following the establishment of an AD/CVD order, or the initiation of the investigation that led to such an AD/CVD order, will satisfy the criteria under section 781(b)(3)(C) of the Act. However, an inquiry period that accurately reflects the start of the alleged circumvention activity of an AD or CVD order and is after the "the initiation of the investigation which resulted in the issuance of such order or finding" fulfills the requirements for this factor of the circumvention analysis. Periods of inquiry and comparison periods are based on the timing of the suspected circumvention, which can occur any time, even years after an AD/CVD investigation is initiated, as is the case here. While the circumvention inquiry period usually involves a comparison of periods before and after the publication of the *Orders*, the *Orders* were published in 2008. Any data collected and analyzed for that time would have very little probative value to a potential remedy were Commerce to find circumvention.

With respect to sourcing and patterns of trade, when we consider data only from the inquiry period and the comparison period, we find that the facts do not support a determination



Filed By: Krisha Hill, Filed Date: 4/30/26 3:57 PM, Submission Status: Approved

that sections 781(b)(3)(A) and (C) support finding action is appropriate to prevent evasion of the *Orders*. Specifically, with respect to section 781(b)(3)(A) of the Act, while the quantity of U.S. imports of CWP from Vietnam increased by 8.2 percent from the 2012-2016 period to the 2017-2021 period, U.S. imports of CWP from Vietnam decreased annually during the entire period of inquiry, *i.e.*, 2017 to 2021. Data for SeAH VINA show [ ] in the quantity of U.S. CWP sales produced from China-origin HRS, and [ ] in the quantity of domestic and third-country sales of CWP produced from China-origin HRS, from 2017 to 2021.[47] This [ ] in the quantity of SeAH VINA's sales of U.S. exports of CWP produced from China-origin HRS, together with [ ] in the quantity of domestic and third-country sales of CWP produced from China-origin HRS, do not support a finding that Chinese producers were diverting production to Vietnam to evade antidumping duties.

With respect to section 781(b)(3)(B) of the Act, as noted above, there are no affiliations.

With respect to section 781(b)(3)(C) of the Act, import statistics show a negligible 1.7 percent increase in Chinese HRS exports to Vietnam from the 2012-2016 period to the 2017-2021 period. A closer look at the data also shows that Chinese HRS exports to Vietnam decreased annually from 2016 to 2020.[48] Additionally, data for SeAH VINA show that the quantity of HRS it imported from China [ ] from 2017 to 2021.[49]

As discussed above, for these final results of redetermination, Commerce finds that the statutory factor under section 781(b)(1)(E) of the Act has not been met.

---

[47] *See* SeAH VINA's Preliminary Analysis Memorandum at 6; *see also* SeAH VINA's IQR at Appendices 10 and 33-C.
[48] *See* Circumvention Allegation Supplement at Exhibit Supp-1.
[49] *See* SeAH VINA's IQR at Appendix 10.

In accordance with the Court's *Remand Order*, Commerce has, as discussed above, revised certain aspects of its analysis. Because our final remand results in a revision from the *Final Determination*, should the Court affirm these final results of redetermination, we intend to publish a notice of court decision not in harmony with the results of the *Final Determination*[50] and notice of amended final determination in the *Federal Register*, and issue appropriate instructions to CBP, consistent with the discussion above.

4/30/2026

X

Signed by: CHRISTOPHER ABBOTT

Christopher Abbott
Deputy Assistant Secretary
for Policy and Negotiations,
performing the non-exclusive functions and duties
of the Assistant Secretary for Enforcement and Compliance

[50] *See Timken Co. v. United States*, 893 F.2d 337 (Fed. Cir. 1990); *see also Diamond Sawblades Manufacturers Coalition v. United States*, 626 F.3d 1374 (Fed. Cir. 2010).



Filed By: Krisha Hill, Filed Date: 4/30/26 3:57 PM, Submission Status: Approved