Slip Op. 26-141

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| SEAH STEEL VINA CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant,<br><br>and<br><br>BULL MOOSE TUBE COMPANY; MARUICHI AMERICAN CORPORATION; WHEATLAND TUBE COMPANY; THE UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC; NUCOR TUBULAR PRODUCTS INC.,<br><br>Defendant-Intervenors. | Before: Mark A. Barnett, Chief Judge<br>Court Nos. 23-00256, 23-00257, 23-00258 |

## OPINION AND ORDER

[Remanding the U.S. Department of Commerce's affirmative findings of circumvention of the antidumping duty orders on certain circular welded steel pipe products from the Republic of Korea and India and remanding the U.S. Department of Commerce's negative finding of circumvention of the antidumping and countervailing duty orders on certain circular welded steel pipe products from the People's Republic of China.]

Dated: November 24, 2026

Vi N. Mai, Winton & Chapman PLLC, of Washington, DC, argued for Plaintiff SeAH Steel VINA Corporation. Also on the briefs were Jeffrey M. Winton, Amrietha Nellan, and Rachel Hauser.

Tate Walker, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for Defendant United States. On the briefs were Brett A. Shumate, Assistant Attorney General, Patricia M. McCarthy, Director, and Franklin E. White, Jr., Assistant Director. Of counsel on the briefs were Alyson Finley, Attorney, Charlie Chung, Attorney, and Vania Wang, Senior Counsel, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

Nicholas C. Phillips, Schagrin Associates, of Washington, DC, argued for Defendant-Intervenors Bull Moose Tube Company; Maruichi American Corporation; Wheatland Tube Company; The United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC. Also on the briefs were Roger B. Schagrin and Jeffrey D. Gerrish.

Alan H. Price, Robert E. DeFrancesco, III, Theodore P. Brackemyre, Kimberly A. Reynolds, and Paul A. Devamithran, Wiley Rein LLP, of Washington, DC, for Defendant-Intervenor Nucor Tubular Products Inc.

Barnett, Chief Judge: These cases initially came to the court as parallel challenges to three circumvention determinations by the U.S. Department of Commerce ("Commerce" or "the agency"). The challenged determinations each concerned some type of circular welded steel pipe ("CWP") (and tube, in the case of India) exported from the Socialist Republic of Vietnam ("Vietnam") and made using hot-rolled steel ("HRS") produced in the Republic of Korea ("Korea"), India, or the People's Republic of China ("China"). *See Certain Circular Welded Non-Alloy Steel Pipe From the Republic of Korea*, 88 Fed. Reg. 77,270 (Dep't Commerce Nov. 9, 2023) ("*Korea Final Determination*") (final affirmative determination of circumvention of the antidumping duty order), and accompanying Issues & Decision Mem., A-580-809 (Nov. 2, 2023) ("Korea I&D Mem.");[1] *Certain Welded Carbon Steel Standard Pipes and Tubes From India*, 88

[1] Plaintiff challenged *Korea Final Determination* in Court No. 23-00256.

Fed. Reg. 77,279 (Dep't Commerce Nov. 9, 2023) ("*India Final Determination*") (final affirmative determination of circumvention of the antidumping duty order), and accompanying Issues & Decision Mem., A-533-502 (Nov. 2, 2023) ("India I&D Mem.");[2] *Circular Welded Carbon Quality Steel Pipe From the People's Republic of China*, 88 Fed. Reg. 77,287 (Dep't Commerce Nov. 9, 2023) ("*China Final Determination*") (final affirmative determination of circumvention of the antidumping duty and countervailing duty orders), and accompanying Issues & Decision Mem., A-570-910/C-570-911 (Nov. 2, 2023) ("China I&D Mem.") (collectively "*Circumvention Determinations*").[3]

The court joined the cases for hearing and decision and, in *SeAH Steel VINA Corp. v. United States* (*SeAH I*), 49 CIT __, __, 815 F. Supp. 3d 1369, 1385–86 (2025), remanded all three circumvention determinations to Commerce for reconsideration or further explanation. Commerce's redeterminations upon remand are now before the court. *See* Final Results of Redetermination Pursuant to Ct. Remand ("Korea Remand Results"), ECF No. 80-1, Ct. No. 23-00256; Final Results of Redetermination Pursuant to Ct. Remand ("India Remand Results"), ECF No. 75-1, Ct. No. 23-00257; Confid. Final Results of Redetermination Pursuant to Ct. Remand ("China Remand Results"), ECF No. 76-1, Ct. No. 23-00258.[4] In its redeterminations (collectively referred to herein as

---

[2] Plaintiff challenged *India Final Determination* in Court No. 23-00257.
[3] Plaintiff challenged *China Final Determination* in Court No. 23-00258.
[4] Commerce filed the *Federal Register* notices and Issues and Decision Memoranda as part of the Administrative Record on the docket of each respective case. Likewise, Commerce filed separate remand redeterminations and parties filed comments in opposition to or in support of each remand redetermination on the docket of the appropriate case. Plaintiff submitted joint appendices on the docket of each case

"Remand Results"), while revising certain aspects of its analysis, Commerce continued to reach affirmative circumvention determinations with respect to Korea and India and a negative determination with respect to China. Korea Remand Results at 1, 16; India Remand Results at 1, 17; China Remand Results at 1, 18. For the reasons discussed herein, the court remands all three Remand Results for reconsideration or further explanation consistent with this opinion.

## BACKGROUND

The court recounts the factual and procedural history of the proceedings as relevant herein and presumes familiarity with the background stated in *SeAH I*, 815 F. Supp. 3d 1369. The United States has antidumping ("AD") and countervailing duty ("CVD") orders on various CWP products from Korea, India, and China, respectively. *Id.* at 1375 (cataloging relevant AD/CVD orders). In 2022, domestic interested parties requested that Commerce initiate anti-circumvention inquiries into whether CWP products completed in Vietnam were circumventing the AD/CVD orders on CWP products from Korea, India, or China. *See id.* at 1376. Commerce initiated all three anti-circumvention inquiries and reached final affirmative determinations. *See Circumvention Determinations*.

---

containing record documents that were cited in the parties' comments on remand for each respective proceeding. *See* Confid. J.A. ("23-256 CJA"), ECF No. 90, Ct. No. 23-00256; Public J.A., ECF No. 91, Ct. No. 23-00256; Confid. J.A. ("23-257 CJA"), ECF No. 84, Ct. No. 23-00257; Public J.A., ECF No. 85, Ct. No. 23-00257; Confid. J.A., ECF No. 88, Ct. No. 23-00258; Public J.A., ECF No. 89, Ct. No. 23-00258.

Plaintiff SeAH Steel VINA Corporation ("SeAH"), a producer and exporter of CWP products from Vietnam, challenged the *Circumvention Determinations* in three separate actions, which, as noted above, the court joined for consideration. Bull Moose Tube Company, Maruichi American Corporation, Wheatland Tube Company, the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC, and Nucor Tubular Products, Inc. (collectively, "Defendant-Intervenors") intervened on the side of Defendant United States ("the Government") to support the *Circumvention Determinations*. *See SeAH I*, 815 F. Supp. 3d at 1373 & n.5.

The court rejected three of SeAH's arguments applicable to all three *Circumvention Determinations*. While SeAH argued "that Commerce was bound by its previous determinations that CWP products from Vietnam . . . could not be subject to antidumping or countervailing duty duties," *id.* at 1377, the court found that "Commerce's prior negative AD/CVD determinations on CWP products from Vietnam do not constrain Commerce's ability to find circumvention with respect to those same CWP products made from HRS inputs produced in Korea, India or China," *id.* at 1378. Next, in response to Plaintiff's argument that "'production' of a finished good, here, the CWP products in question, is not completion or assembly," *id.*, the court found that "Plaintiff ha[d] failed to identify any flaw in Commerce's minor or insignificant completion or assembly analysis," *id.* at 1380. Lastly, the court disagreed with SeAH that "its operations in Vietnam cannot be minor or insignificant because the operations are essentially identical to those of U.S. producers of CWP products that requested the

circumvention inquiry." *Id.* The court found that Commerce conducted its minor or insignificant analysis in accordance with the statutory criteria, *id.* at 1380–81, and that SeAH provided "no statutory basis for [its] preference" for using U.S. production as a comparator or, for that matter, any basis to consider the U.S. industry "relevant for the purposes of the circumvention determination[s]," *id.* at 1381.[5]

Commerce erred, however, in its analysis of the statutory factors in 19 U.S.C. § 1677j(b)(3). Before detailing the basis for the court's remand order, the court summarizes the relevant legal background. Commerce's circumvention determinations are governed by 19 U.S.C. § 1677j. In section 1677j(b), Congress authorized Commerce, upon making certain findings, to include "[m]erchandise completed or assembled in other foreign countries" within the scope of the orders. 19 U.S.C. § 1677j(b). The court previously summarized the five so-called "mandatory" factors:

> First, the merchandise imported into the United States must be "of the same class or kind" of merchandise that is subject to the duty order. Second, the imported merchandise must have been "completed or assembled in another foreign country from merchandise which . . . is subject to such an order or finding, or . . . is produced in the foreign country with respect to which such order or finding applies." Third, "the process of assembly or completion" must be "minor or insignificant." Fourth, "the value of the merchandise produced in the foreign country" to which the antidumping duty order applies must be "a significant portion of the total value of the merchandise exported to the United States." Finally, Commerce must "determine[ ] that action is appropriate . . . to prevent evasion of such order."

[5] The court also held that SeAH had failed to administratively exhaust, properly develop, or timely raise, several additional arguments. *See SeAH I*, 815 F. Supp. 3d at 1377–78 nn.12–14.

*SeAH I*, 815 F. Supp. 3d at 1374 (internal citations and footnote omitted) (quoting 19 U.S.C. § 1677j(b)(1)(A)–(E)).

In addition, section 1677j(b)(2) provides the criteria for Commerce to determine whether the process of assembly or completion is "minor or insignificant,"[6] and section 1677j(b)(3) directs Commerce to consider several other factors to determine whether to include the assembled or completed merchandise in the underlying order. The (b)(3) factors are:

> (A) the pattern of trade, including sourcing patterns,
> (B) whether the manufacturer or exporter of the merchandise [from the country subject to the order] is affiliated with the [third-country] person who uses [that] merchandise . . . to assemble or complete in the foreign country the merchandise that is subsequently imported into the United States, and
> (C) whether imports into the foreign country of the merchandise [from the country subject to the order] have increased after the initiation of the investigation which resulted in the issuance of such order or finding.

19 U.S.C. § 1677j(b)(3).

The court noted that Commerce found the (b)(3) factors to be mixed and non-dispositive in the agency's circumvention analysis. *SeAH I*, 815 F. Supp. 3d at 1382–83 (citing Korea I&D Mem. at 35; India I&D Mem. at 35; China I&D Mem. at 37).

---

[6] Those criteria are:

> (A) the level of investment in the foreign country,
> (B) the level of research and development in the foreign country,
> (C) the nature of the production process in the foreign country,
> (D) the extent of production facilities in the foreign country, and
> (E) whether the value of the processing performed in the foreign country represents a small proportion of the value of the merchandise imported into the United States.

19 U.S.C. § 1677j(b)(2).

"Commerce acknowledged that SeAH is not affiliated with any company producing HRS in any of the subject countries." *Id.* at 1383. For each of the subject countries, Commerce analyzed "SeAH's patterns of trade and imports of HRS" during "the inquiry period (i.e., 2017–2021)," and further analyzed country-wide data for "changes within the 2017–2021 period" and "compared the pre-inquiry 2012–2016 period to the 2017–2021 period." *Id.* "Commerce ultimately concluded that the (b)(3) factors were 'mixed and inconclusive' for all countries but nevertheless found that action was appropriate to prevent evasion." *Id.* at 1384 (citations omitted).

The court found that Commerce did not adequately "explain how factors that are 'mixed' enabled the agency to reach the conclusion that action was appropriate." *Id.* The court explained that Commerce's decision memoranda indicated that the agency based its determinations on the agency's consideration of four of the five mandatory factors in section 1677j(b)(1). *Id.* at 1384–85. With respect to the fifth mandatory factor, whether "action is appropriate," Commerce looked to the factors articulated in section 1677j(b)(3). Commerce found "that a lack of affiliation under section [1677j(b)(3)(B)], in itself, does not outweigh our determination that the statutory criteria under sections [1677j(b)(1)(A)–(D)] have been satisfied, and the remaining elements under section [1677j(b)(3)] otherwise *did not detract from a finding that an action is appropriate* pursuant to section [1677j(b)(1)(E)]." *Id.* at 1385 (quoting Korea I&D Mem. at 35; India I&D Mem. at 35; China I&D Mem. at 37) (alterations in original). The court directed Commerce to reconsider or further explain its determinations, taking into account that "section 1677j(b)(1)(E) must be construed to have some operative effect,"

and, "[t]o the extent that Commerce . . . relied upon 'other' factors that are distinct from factors (b)(1)(A)–(D) to support its determination that action is appropriate pursuant to subsection (b)(1)(E), Commerce must identify what these 'other' factors are and identify the substantial evidence that supports its finding." *Id.* In other words, the court could not ascertain whether Commerce had relied on the (b)(1)(A)–(D) factors alone to make the required determination under subsection (b)(1)(E), or whether Commerce had relied on those *and* other unidentified factors, all of which summed to the "totality of the factors in this inquiry," to determine "that an affirmative finding of circumvention of the order is warranted." *Id.*

The court also directed Commerce to reconcile "its consideration of the 2012–2016 versus 2017–2021 periods, as well as changes within the latter period, i.e., 2017–2021, for each of the three countries" with the statutory requirement to consider "whether imports into the foreign country of the merchandise [from the country subject to the order] have increased after the initiation of the investigation which resulted in the issuance of such order or finding" and Commerce's indication in the preliminary decision memoranda that such analysis involved looking further back in time. *Id.* at n.21 (first quoting 19 U.S.C. § 1677j(b)(3)(C), then citing Commerce's preliminary decision memoranda noting that the orders resulting from the investigations dated back to 1986, 1992, and 2008, for India, Korea, and China, respectively).

Commerce has filed its redeterminations. *See* Remand Results. SeAH opposes Commerce's affirmative redeterminations regarding Korea and India. Cmts. of [SeAH] on Final Redetermination on Remand ("Pl.'s Korea Cmts."), ECF No. 85, Ct. No. 23-

00256; Cmts. of [SeAH] on Final Redetermination on Remand ("Pl.'s India Cmts."), ECF No. 80, Ct. No. 23-00257. The Government and Defendant-Intervenors each support the Korea Remand Results and India Remand Results. Confid. Def.'s Resp. to Cmts. on the Remand Redetermination ("Def.'s Korea Cmts."), ECF No. 88, Ct. No. 23-00256; Confid. Def.-Ints.' Cmts. in Supp. of Final Redetermination on Remand ("Def.-Ints.' Korea Cmts."), ECF No. 86, Ct. No. 23-00256; Confid. Def.'s Resp. to Cmts. on the Remand Redetermination ("Def.'s India Cmts."), ECF No. 82, Ct. No. 23-00257; Def.-Ints.' Cmts. in Supp. of Final Redetermination on Remand ("Def.-Ints.' India Cmts."), ECF No. 81, Ct. No. 23-00257. Defendant-Intervenors oppose Commerce's negative redetermination regarding China. Confid. Def.-Ints.' Cmts. in Opp'n to Final Redetermination on Remand ("Def.-Ints.' China Cmts."), ECF No. 83, Ct. No. 23-00258. The Government and SeAH each support Commerce's China Remand Results. Confid. Def.'s Resp. to Cmts. on the Remand Redetermination ("Def.'s China Cmts."), ECF No. 86, Ct. No. 23-00258; Cmts. of [SeAH] on Final Redetermination on Remand ("Pl.'s China Cmts."), ECF No. 85, Ct. No. 23-00258. The court heard oral argument on October 27, 2026. Oral Arg., (Oct. 27, 2026), ECF No. 98.[7]

[7] Subsequent citations to the oral argument include the time stamp from the recording, which is available at https://www.cit.uscourts.gov/sites/cit/files/20261027_23-00256_23-00257_23-00258_MAB.mp3.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to section 516A(a)(2)(B)(vi) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(vi), and 28 U.S.C. § 1581(c).[8] The court will uphold an agency determination that is supported by substantial evidence and otherwise in accordance with law. 19 U.S.C. § 1516a(b)(1)(B)(i). "Substantial evidence is defined as more than a mere scintilla, as well as evidence that a reasonable mind might accept as adequate to support a conclusion," and "[a]n agency finding may still be supported by substantial evidence even if two inconsistent conclusions can be drawn from the evidence." *Downhole Pipe & Equip., L.P. v. United States*, 776 F.3d 1369, 1374 (Fed. Cir. 2015) (internal quotation marks omitted).

## DISCUSSION

### I. Whether Commerce was Required on Remand to Identify "Other" Factors

#### A. Parties' Contentions

Plaintiff argues that, with respect to the Korea Remand Results and the India Remand Results, Commerce was required to identify "'other' factors distinct from those in section 1677j(b)(1)(A)–(D)" in order to give operative effect to section 1677j(b)(1)(E) consistent with this court's order in *SeAH I*. Pl.'s Korea Cmts. at 2–3; Pl.'s India Cmts. at 2–3. Plaintiff further argues that Commerce's redeterminations, devoid of analysis of any such "other" factors, are therefore simply a "reweighing of the same [(b)(3)] factors

[8] Citations to the Tariff Act of 1930, as amended, are to Title 19 of the U.S. Code. All references to the U.S. Code are to the 2024 edition unless otherwise specified.

that were . . . found lacking by this [c]ourt." Pl.'s Korea Cmts. at 2–5; Pl.'s India Cmts. at 2–5.

Defendant argues that Commerce followed the court's remand instruction to "further explain" its analysis of the (b)(3) factors, and that the (b)(3) factors are inherently distinct from the factors in section 1677j(b)(1)(A)–(D). Def.'s Korea Cmts. at 9–10; Def.'s India Cmts. at 8–9; *see also* Def.-Ints.' Korea Cmts. at 6; Def.-Ints.' India Cmts. at 6–7. Defendant further argues that the court "explicitly recognized in its Remand Order that Commerce could comply with its remand by reweighing the (b)(3) factors," and that Commerce was "not required to look for factors beyond those set out in [section] 1677j(b)(3)." Def.'s Korea Cmts. at 10; Def.'s India Cmts. at 9–10.

**B. Analysis**

Plaintiff's argument stretches the court's remand order beyond its plain meaning. The court stated that "[t]*o the extent that* Commerce has in fact relied upon 'other' factors that are distinct from factors (b)(1)(A)–(D) to support its determination . . . Commerce must identify what these 'other' factors are." *SeAH I*, 815 F. Supp. 3d at 1385 (emphasis added). Nothing in the court's order required Commerce to rely upon "other" factors; rather, the court directed Commerce to substantiate any such "other" factors with record evidence *to the extent that* Commerce did, in fact, rely upon "other" factors. *See id.*

## II. Time Periods Used in (b)(3) Factor Analyses

### A. Parties' Contentions[9]

With respect to the Korea Remand Results and the India Remand Results, Plaintiff argues that Commerce failed to explain the basis for the specific time periods it selected for comparison within its (b)(3) factor analyses. Pl.'s Korea Cmts. at 5–7; Pl.'s India Cmts. at 5–7. Plaintiff also avers that these two remand redeterminations do not comply with the court's order to explain "changes within the latter period, i.e., 2017–2021." Pl.'s Korea Cmts. at 7 (citing *SeAH I*, 815 F. Supp. 3d at 1385 n.21); Pl.'s India Cmts. at 7 (citing same). Plaintiff argues that Commerce ignored year-on-year trends in trade data within each five-year period and, instead, improperly based its determinations on a comparison of trade data between the two five-year periods on an aggregate basis. Pl.'s Korea Cmts. at 7–8; Pl.'s India Cmts. at 7–8.

Defendant argues that Commerce "identified an appropriate comparison time frame based on the requirements of [section] 1677j(b)(3) and the record before it," which duly incorporated the underlying allegation that circumvention occurred during the 2017–2021 period (the "inquiry period"). Def.'s Korea Cmts. at 13; Def.'s India Cmts. at

[9] The court notes that, while Plaintiff challenged Commerce's initial reliance on post-inquiry period data in its comments on the Draft Remand Results for both Korea and India, the time-period challenges Plaintiff raises before the court were not properly raised before the agency. *See* [SeAH] Cmts. on [Korea] Draft Remand Redetermination (Apr. 14, 2026) at 2–3, 23-256 CJA Tab 12; [SeAH] Cmts. on [India] Draft Remand Redetermination (Apr. 14, 2026) at 2–3, 23-257 CJA Tab 12. The Government did not argue that SeAH failed to exhaust its administrative remedies with respect to these arguments. *See* Def.'s Korea Cmts.; Def.'s India Cmts. Non-jurisdictional exhaustion claims are "subject to waiver and forfeiture." *Santos-Zacaria v. Garland*, 598 U.S. 411, 423 (2023). The Government has therefore waived any failure-to-exhaust claim with respect to these arguments, and the court will consider and address them.

12–13. Defendant further argues that Commerce "properly exercised its discretion" when the agency selected a "comparison time period" of 2012–2016. Def.'s Korea Cmts. at 13–14; Def.'s India Cmts. at 13–14; *see also* Def.-Ints.' Korea Cmts. at 8–9 (citing *Al Ghurair Iron & Steel LLC v. United States*, 45 CIT __, __, 536 F. Supp. 3d 1357, 1368 (2021), *aff'd*, 65 F.4th 1351 (Fed. Cir. 2023) ("Based on the absence of a designated methodology, Commerce has the discretion to decide on its own method of analysis.")); Def.-Ints.' India Cmts. at 8–9. With respect to the court's order to provide "analysis detailing changes in the latter period, i.e., 2017–2021," Defendant argues that Commerce did so in the context of its (b)(3)(C) analysis on remand. Def.'s Korea Cmts. at 15 (citing Korea Remand Results at 15), Def.'s India Cmts. at 15 (citing India Remand Results at 15); *see also* Def.-Ints.' Korea Cmts. at 10.

**B. Analysis**

With respect to the court's instruction to explain the basis for the time periods that it used, the court notes that this instruction was within the court's identification of inconsistencies in the time-period discussion in the original determination. *SeAH I*, 815 F. Supp. 3d at 1385 n.21. In the Remand Results, Commerce now appears to have abandoned any discussion of the period immediately after initiation of the underlying investigation that resulted in the issuance of the orders. However, Commerce continues to combine comparisons of the inquiry period to the comparison period with discussions of changes within the inquiry period. *See* Korea Remand Results at 7 (discussing comparisons of the inquiry period to the comparison period regarding CWP imports to the United States and patterns of trade analysis within the inquiry period regarding

SeAH); India Remand Results at 7, 9–10 (discussing the same); China Remand Results at 7–8, 10–11 (discussing, among other things, CWP imports to the United States from Vietnam during the inquiry period). Because the Remand Results will be remanded on other grounds, SeAH may renew its arguments regarding the relevant time periods and Commerce may further explain its treatment of the two time periods, both on an aggregate comparative basis as well as a "within period" basis.

The court finds that Commerce otherwise adequately explained its exercise of discretion to choose the comparison period of 2012–2016, when the inquiry period was 2017–2021. When choosing a methodology, "Commerce must provide an explanation that is adequate to enable the court to determine whether its choices are actually reasonable, including as to calculation methods." *Mid Continent Steel & Wire, Inc. v. United States*, 941 F.3d 530, 537 (Fed. Cir. 2019) (first citing *CS Wind Vietnam Co. v. United States*, 832 F.3d 1367, 1376–77 (Fed. Cir. 2016); then citing *SKF USA Inc. v. United States*, 263 F.3d 1369, 1383 (Fed. Cir. 2001)). Commerce must connect its chosen method to the governing statutory standard and evidentiary record by "indicating what statutory interpretations the agency is adopting and what facts the agency is finding." *CS Wind*, 832 F.3d at 1376. The issue is whether Commerce "engaged in reasoned decision making within the boundaries of its delegated authority." *Lesko v. United States*, 161 F. 4th 1352, 1362 (Fed. Cir. 2025).

In the context of a section 1677j anticircumvention proceeding, Commerce has the discretion to use an inquiry period "based on when petitioners alleged circumvention to have begun" and to select an appropriate comparison period of equal length.

*Deacero S.A.P.I. de C.V. v. United States*, 50 CIT __, __, 838 F. Supp. 3d 1351, 1376 (citing *Al Ghurair*, 536 F. Supp. 3d at 1380). Commerce did just that here. *See, e.g.*, [Korea] Req. for Circumvention Inquiry (May 17, 2022) at 9–11, 23-256 CJA Tab 1; *see also* Korea Remand Results at 9–10; India Remand Results at 10–11; *cf.* China Remand Results at 16.

While Commerce certainly could have more clearly explained its exercise of discretion, the court is able to discern that, consistent with its practice, Commerce's selection aligned with the allegation made by the domestic industry and the comparison period constituted a period of comparable length immediately preceding the inquiry period. *See, e.g.*, Korea Remand Results at 9–10 & nn.34–35;[10] *see also Lesko*, 161 F. 4th at 1358; *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (stating that courts will "uphold a decision of less than ideal clarity if the agency's path may be reasonably discerned"). Because the court is reasonably able to discern the agency's rationale for choosing the comparison period,

[10] Commerce cites two circumvention determinations to illustrate the agency's practice of choosing time periods that take place after an initial order. *See Diamond Sawblades and Parts Thereof From the People's Republic of China*, 84 Fed. Reg. 33,920 (Dep't Commerce July 16, 2019) (final determination of anti-circumvention inquiry); *Diamond Sawblades and Parts Thereof From the People's Republic of China*, 85 Fed. Reg. 9,737 (Dep't Commerce Feb. 20, 2020) (final determination of anti-circumvention inquiry). The periods in these proceedings were selected from five to nine years after the initial AD order. *See id.* Commerce next cites *Oil Country Tubular Goods From the People's Republic of China*, 86 Fed. Reg. 67,443 (Dep't Commerce Nov. 26, 2021) (final affirmative determinations of circumvention), as an example of the agency selecting congruent time periods for analysis.

Commerce's use of the comparison period beginning in 2012 and ending in 2016 will be sustained.

## III. Country-Specific (b)(3) Analyses and Determinations

### A. Summary of (b)(3) Factors on Remand

Commerce reevaluated the (b)(3) factors for each country-specific proceeding on remand to determine whether action was appropriate pursuant to subsection (b)(1)(E). *See* Korea Remand Results at 7–9, 12–16; India Remand Results at 7–10, 13–17; China Remand Results at 7–11, 13–18. The court summarizes the relevant portions of the Remand Results in each of the proceedings here.

#### 1. Korea

Commerce continued to find that action was appropriate to prevent evasion of the underlying antidumping duty order on CWP from Korea based solely on an affirmative (b)(3)(A) "pattern of trade" finding. Korea Remand Results at 16.

Commerce found that the (b)(3)(A) "pattern of trade" statutory factor was met for Korea because of (1) "significant increases" in both the quantity of U.S. imports of CWP from Vietnam between the comparison period and the inquiry period and the share of U.S. imports of CWP from Vietnam in relation to overall U.S. imports of CWP between the comparison period and the inquiry period, *id.* at 7, and, "[m]ost importantly" according to Commerce, (2) a substantial increase in SeAH's exports of CWP produced from Korean-origin HRS to the United States during the inquiry period, *id.* at 15. Commerce continued to find no affiliation pursuant to (b)(3)(B), "a factor [Commerce] found to be neutral." *Id.* at 16. With respect to (b)(3)(C), Commerce made a negative

finding due to (1) "a substantial decrease in the quantity of HRS exported from Korea to Vietnam between [the] 2012-2016 and 2017-2021 periods," and (2) the absence of any "discernible increase in the quantity of HRS [that SeAH] imported from Korea during the inquiry period." *Id.* at 15.

**2. India**

Commerce continued to find that an affirmative circumvention finding was necessary to prevent evasion of the underlying antidumping duty order on CWP from India. India Remand Results at 17. In support of this finding, Commerce re-evaluated the (b)(3) factors and made an affirmative (b)(3)(A) "pattern of trade" finding, a negative or "neutral" (b)(3)(B) affiliation finding, and an affirmative (b)(3)(C) finding based on an "increase in Vietnamese imports of India-origin HRS." *Id.* at 7–10.

With respect to (b)(3)(A), Commerce found that the statutory factor was met because of "significant increases" in (1) the quantity of U.S. imports of CWP from Vietnam between the comparison period and the inquiry period; and (2) the share of U.S. imports of CWP from Vietnam in relation to overall U.S. imports of CWP between the comparison period and the inquiry period. *Id.* at 7. According to Commerce, "[t]hese significant increases, along with the substantial increase in the quantity of Indian-origin HRS imported into Vietnam, as well as by SeAH VINA itself . . . indicate that India-origin HRS is likely to have been made into [CWP] not in India but in Vietnam and then exported to the United States to evade the [underlying antidumping] *Order*." *Id.* On the (b)(3)(B) factor, while Commerce found "no evidence that SeAH VINA is affiliated with any company located in India that produces or exports HRS," the agency

"nevertheless [did] not find this factor alone to be dispositive." *Id.* at 8. With respect to the (b)(3)(C) factor, Commerce found "that the statutory factor . . . is met because aggregate data show a . . . 580.3 percent increase in exports of India-origin HRS to Vietnam from the 2012-2016 period to the 2017-2021 period," and because "SeAH VINA's data show a substantial increase in imports of Indian-origin HRS during the inquiry period." *Id.* at 9–10.

**3. China**

Commerce reconsidered its determination in the China Remand Results and found that "action, in the form of an affirmative circumvention determination, is not appropriate to prevent evasion of the [underlying antidumping and countervailing duty] *Orders* pursuant to section [1677j](b)(1)(E)." China Remand Results at 1.

Commerce found that the (b)(3)(A) "pattern of trade" factor did "not demonstrate evasion of the *Orders* has likely taken place" because the record reflected (1) "only *marginal* increases in the quantity of U.S. imports of CWP from Vietnam in relation to small decreases in the volume of U.S. imports of CWP from China"; (2) a decrease in the quantity of SeAH's exports of CWP produced from Chinese-origin HRS to the United States; and (3) a decrease "in the quantity of domestic and third-country sales of CWP produced from Chinese-origin HRS" between the comparison period and the inquiry period. *Id.* at 8 (emphasis added). Commerce found no affiliation pursuant to (b)(3)(B). *Id.* at 9. With respect to (b)(3)(C), Commerce found that the statutory factor did "not demonstrate evasion of the *Orders* has likely taken place" because (1) "Chinese exports of HRS to Vietnam increased *negligibly* from the 2012-2016 to the 2017-2021 periods";

(2) "Chinese exports of HRS to Vietnam in relation to the quantity of Chinese exports of HRS to all countries marginally increased from the 2012-2016 and the 2017-2021 periods"; and (3) SeAH's HRS imports from China decreased from 2017 to 2021. *Id.* at 10–11 (emphasis added).

**B. Parties' Contentions**

The parties challenge several aspects of Commerce's (b)(3) determinations across all three country-specific proceedings.

In response to the Korea Remand Results, Plaintiff argues that "Commerce offer[ed] no coherent economic explanation" within its (b)(3) analyses for the fact that U.S. imports of CWP from Vietnam decreased annually over the course of the inquiry period. Pl.'s Korea Cmts. at 8. With respect to Commerce's (b)(3)(A) finding, Plaintiff argues that the "pattern of trade" data "do not constitute the kind of significant, targeted increase in trade flows that characterizes circumvention," and that Commerce failed to rule out "alternative explanations," such as "Vietnam's general growth as a CWP exporter over time." *Id.* Plaintiff avers that Commerce's (b)(3)(B) finding "undercuts the evasion theory." *Id.* at 11. Finally, Plaintiff argues that "[s]ection 1677j(b)(3)(C) is the most probative statutory factor and that Commerce's negative (b)(3)(C) finding for Korea compelled the agency to reach a negative determination pursuant to subsection (b)(1)(E). *Id.* at 9–10.

Defendant refutes Plaintiff's argument that Commerce's (b)(3)(C) finding compels a negative determination pursuant to section 1677j(b)(1)(E), arguing instead that "[t]he statute does not require Commerce to weigh the [(b)(3)(C)] factor more heavily than the

other (b)(3) factors." Def.'s Korea Cmts. at 17; *see also* Def.-Ints.' Korea Cmts. at 10–11. Defendant avers that Commerce's affirmative (b)(3)(A) finding, in particular, the "staggering . . . increase in SeAH's export sales of CWP produced from Korea-origin HRS to the United States across the period of inquiry," was enough to overcome the absence of affirmative (b)(3)(B) and (b)(3)(C) findings and for Commerce to conclude that circumvention was likely occurring. Def.'s Korea Cmts. at 12 (citing Korea Remand Results at 7); *see also* Def.-Ints.' Korea Cmts. at 12–13.

With respect to the India Remand Results, Plaintiff again identifies Commerce's omission of the fact that U.S. imports of CWP from Vietnam declined over the course of the inquiry period. Pl.'s India Cmts. at 7–8. Plaintiff generally challenges Commerce's interpretation of data within the agency's (b)(3)(A) analysis, *see id.* at 10, and argues that Commerce's (b)(3)(C) finding does not support an affirmative determination because of "India's 113.9 percent global HRS export growth and nearly doubled direct U.S. imports of [CWP] from India." *Id.* at 11. Plaintiff also avers that "[t]he absence of affiliation undercuts the evasion theory." *Id.*

Defendant argues that record evidence of U.S. imports of CWP from Vietnam "increas[ing] significantly" coupled with evidence of Vietnamese imports of Indian-origin HRS "increas[ing] by almost six fold[]" between the comparison period and the inquiry period supports an affirmative finding. Def.'s India Cmts. at 17; *see also* Def.-Ints.' India Cmts. at 10–11. Defendant further argues that "Commerce demonstrated that the pattern of trade . . . supports the affirmative circumvention finding . . . because the quantity of U.S. imports of CWP from Vietnam and its proportion compared to imports of

CWP from the rest of the world increased significantly" between the comparison period and the inquiry period. Def.'s India Cmts. at 17. Defendant avers that this increase in CWP imports from Vietnam coupled with the sixfold increase in Vietnamese imports of Indian-origin HRS "indicate[s] that India-origin HRS is likely to have been made into CWP not in India but in Vietnam and then exported to the United States." *Id.* at 18 (citing India Remand Results at 7). Defendant-Intervenors argue that Commerce is "free to weigh the evidence" as it sees fit, and that the agency has "no obligation to eliminate every other possible explanation for a pattern of trade that is consistent with circumvention." Def.-Ints.' India Cmts. at 11.

With respect to China, Defendant-Intervenors argue that Commerce should have weighed countrywide and respondent-specific data differently. Def.-Ints.' China Cmts. at 8–11. Defendant-Intervenors further argue that the China Remand Results are "mutually incompatible" with the Korea Remand Results and the India Remand Results insofar as Commerce treated identical data differently across the three Remand Results. *Id.* at 4–5. Specifically, Defendant-Intervenors challenge Commerce's characterization of U.S. imports of CWP from Vietnam, an identical data point across identical time periods in all three Remand Results, as "significant" in the Korea Remand Results and the India Remand Results, but "marginal" in the China Remand Results. *Id.* at 5–8.

Defendant argues that Commerce properly considered and weighed both respondent-specific and countrywide data. Def.'s China Cmts. at 12–14; *see also* Pl.'s China Cmts. at 7–9. Regarding Commerce's characterization of the increase of U.S.

imports of CWP from Vietnam as “significant” in the Korea Remand Results and the India Remand Results but “marginal” in the China Remand Results, Defendant argues that “the information on the record of [the] circumvention inquiry [for China] differs greatly from the information on the records of the circumvention inquiries for Korea or India” and “Commerce made its determination based on the record before it, not upon the record of other circumvention inquiries.” Def.’s China Cmts. at 11–12; *see also* Pl.’s China Cmts. at 5–7.

**C. Analysis**

The anticircumvention statute is silent as to the analytical methodologies Commerce must or should employ to arrive at its section 1677j(b)(3) findings. *See* 19 U.S.C. § 1677j(b). Rather, the statute directs Commerce to “take into account such factors as— [(A), (B), and (C)].” *Id.* § 1677j(b)(3). As discussed in the Background section above, the purpose of the (b)(3) analysis is to help Commerce determine whether action is appropriate under section 1677j(b)(1)(E). *See id.* Absent any statutory provision mandating a particular approach, it is not the prerogative of the court to second guess Commerce’s choice of methodology, weighing of evidence, or subsequent conclusions within the context of its (b)(3) factor analysis so long as such choices and conclusions are supported by substantial evidence. *See id.* § 1516a(b)(1)(B)(i). The substantial evidence standard permits “the possibility of

drawing two inconsistent conclusions" from the record. *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).[11]

The court here reviews the three circumvention redeterminations, each based on its own record. Those records, however, contain shared data points. Some are identical; for example, each record contains aggregate data on exports of CWP from Vietnam to the U.S. during the comparison and inquiry periods. *See* Korea Remand Results at 14–15; India Remand Results at 7; China Remand Results at 8. Others are record- and country-specific; for example, SeAH's inquiry period exports of CWP from Vietnam using HRS imported from each of the three subject countries. *See, e.g.*, Korea Remand Results at 15; China Remand Results at 8. Despite that overlap, Commerce may treat separate proceedings independently and reach different determinations on their respective records. *See Cerro Flow Prods., LLC v. United States*, 38 CIT 1079, 1088 (2014). However, "[r]easoned decision-making requires a certain measure of consistency." *AG der Dillinger Hüttenwerke v. United States*, 43 CIT __, __, 399 F. Supp. 3d 1247, 1257 (2019) (addressing inconsistent treatment of the same issue in parallel proceedings). Thus, while Commerce retains discretion over its methodologies, it must apply them with a level of consistency to avoid arbitrariness. *See JTEKT Corp. v. United States*, 33 CIT 1797, 1832–34, 675 F. Supp. 2d 1206, 1238–40 (2009).

[11] "While 'the substantial evidence standard applies to review of factual determinations,' . . . 'the arbitrary and capricious (or contrary to law) standard' applies to review of the agency's reasoning." *New Mexico Garlic Growers Coal. v. United States*, 42 CIT __, __, 352 F. Supp. 3d 1281, 1297–98 (2018), *aff'd*, 953 F.3d 1358 (Fed. Cir. 2020) (quoting *Changzhou Wujin Fine Chemical Factory Co. v. United States*, 701 F.3d 1367, 1377 (Fed. Cir. 2012)).

Absent a reasoned explanation, treating identical facts differently across proceedings, or overlooking contrary evidence in one proceeding that Commerce considers highly relevant in another, is indicative of arbitrariness. *See Cerro Flow*, 38 CIT at 1088; *SunPower Corp. v. United States*, 40 CIT __, __, 179 F. Supp. 3d 1286, 1294–96 & n.52 (2016) (stating that an agency may not disregard "inconvenient factual determinations that it made in the past, any more than it can ignore inconvenient facts when it writes on a blank slate" (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 537 (2009) (J. Kennedy, concurring in part and concurring in judgment))); *cf. CS Wind*, 832 F.3d at 1373 ("The substantiality of evidence must take into account whatever in the record fairly detracts from its weight." (quoting *Gerald Metals, Inc. v. United States*, 132 F.3d 716, 720 (Fed. Cir. 1997))). Although different outcomes are permissible, Commerce must reasonably explain the distinctions justifying those differences. *See SKF USA Inc.*, 263 F.3d at 1382.

As the court has previously stated, Commerce must explain how its assessment of the section 1677j(b)(3) factors, together with any other relevant considerations on which it relies, supports its conclusion that action is appropriate under section 1677j(b)(1)(E). *SeAH I*, 815 F. Supp. 3d at 1385. Commerce's justification for such a finding must be explained in a non-arbitrary manner. As discussed below, Commerce has failed to provide a non-arbitrary explanation for any of the Remand Results.

**1. CWP Import Data Using Country-Specific HRS**

The court turns first to the Korea Remand Results and the India Remand Results. Commerce's country-specific affirmative findings were based in large part on

two data points that are shared across all three inquiries: (1) the increase in the quantity of U.S. imports of CWP from Vietnam between the comparison period and the inquiry period, and (2) the increase in the quantity of U.S. imports of CWP from Vietnam in relation to the total quantity of U.S. imports of CWP from the world between the comparison period and the inquiry period (together, the "CWP Import Data"). Korea Remand Results at 14–15; India Remand Results at 7. Then, in the case of Korea, Commerce stated that its affirmative (b)(3)(A) finding was premised "[m]ost importantly" on the substantial increase of SeAH's exports of CWP to the United States produced from Korea-origin HRS during the inquiry period. Korea Remand Results at 15. To the extent that this was indeed the "[m]ost important[]" data point in Commerce's (b)(3)(A) "pattern of trade" analysis, Commerce's failure to consider the analogous data point in its analysis for the India Remand Results, or to reconcile the omission of such a data point therefrom, suggests arbitrariness.[12]

Commerce's failure to consider the analogous data point in its India analysis is material to the court's decision because that data point cuts in the opposite direction:

---

[12] While Commerce need not be entirely consistent across all three parallel proceedings, it must either apply its methodology with a level of consistency, *see JTEKT Corp.*, 33 CIT at 1832–35, 675 F. Supp. 2d at 1238–40, or explain any divergence in approach. *See SKF USA*, 263 F.3d at 1382; *Garlic Growers*, 352 F. Supp. 3d at 1297–98. Moreover, Commerce must explain how it arrived at the same conclusions despite the existence of contrary facts. *See SunPower Corp.*, 179 F. Supp. 3d at 1295 n.52. If Commerce considers CWP imports with country-specific HRS data to be the "[m]ost important[]" factor in its (b)(3)(A) analysis, Korea Remand Results at 15, Commerce must account for or otherwise explain its consideration of this factor in the parallel cases, particularly when the country-specific HRS data is absent or runs contrary to Commerce's overall determination regarding the existence of circumvention.

SeAH's exports of CWP produced from Indian-origin HRS to the United States decreased during the inquiry period. [India] Prelim. Analysis Mem. (Apr. 6, 2023) at 6; *see also CS Wind*, 832 F.3d at 1373 (stating that Commerce must consider "whatever in the record fairly detracts from its weight"). While Commerce observed that "[t]he data do not show" an "increase in the quantity of pipe and tube exports [from SeAH] to the United States produced from HRS imported from India," [India] Prelim. Analysis Mem. (Apr. 6, 2023) at 6, Commerce failed to consider what the data *did* show, namely, a decrease in SeAH's exports of CWP made from Indian HRS, notwithstanding Commerce's reliance on that analogous data point in its analysis in the Korea Remand Results. Commerce also failed to offer any explanation for its seemingly inconsistent approach to consideration of SeAH's exports. The court cannot uphold this inconsistency upon review. *See SunPower Corp.*, 179 F. Supp. 3d at 1304–05, 1308 (discussing Commerce's inconsistent rationale with regard to factual findings between proceedings and later remanding for reconsideration consistent with the opinion); *SKF USA Inc.*, 263 F.3d at 1382. To the extent that there are significant distinctions in the data between the two countries, Commerce must address those distinctions in its analyses and conclusions.

---

*See, e.g.*, [India] Prelim. Analysis Mem. (Apr. 6, 2023) at 6, 23-257 CJA Tab 5, ECF No. 84. Here, Commerce's failure, in the India Remand Results, to consider the data point that it found "[m]ost important[]" in the Korea Remand Results, illustrates a level of arbitrariness.

**2. HRS Export Data**

In Commerce's affirmative finding in India, Commerce relied on "the substantial increase in the quantity of Indian-origin HRS imported into Vietnam, as well as by SeAH VINA itself" to arrive at its affirmative (b)(3)(A) determination. India Remand Results at 7. The agency's rationale for considering this evidence particularly weighty is not discernible for two reasons. First, while Commerce points to increasing HRS export data from India to Vietnam, Commerce fails adequately to consider the record evidence indicating that SeAH's CWP imports into the United States from Vietnam made using HRS from India declined during the inquiry period. Second, as discussed during oral argument, HRS is a commodity product used to produce a variety of downstream products. Oral Arg. 0:33:10–0:33:20. The court is unable to discern Commerce's reasons for concluding that the section 1677j(b)(3)(A) data rendered action appropriate under section 1677j(b)(1)(E) when the increased imports of HRS from India to Vietnam coincided with a decrease in Vietnamese exports of CWP made from Indian HRS.[13]

---

[13] SeAH points to evidence that India's direct exports of CWP to the United States almost doubled from the comparison period to the inquiry period. *See, e.g.*, Pl.'s India Cmts. at 9. While Commerce perhaps went too far in concluding that the HRS export data "indicate[d] that India-origin HRS is likely to have been made into [CWP] *not in India* but in Vietnam and then exported to the United States," India Remand Results at 7 (emphasis added), Commerce otherwise addressed this data point by reference to the increase in Indian-origin HRS imported into Vietnam between the comparison period and the inquiry period, and the aggregate increase over the same period in U.S. imports of CWP from Vietnam. *See id.* at 16. Commerce is free to reconsider the weight it places on evidence regarding India's direct exports of CWP on remand, but for now, the court discerns from Commerce's explanation that both things can be true, i.e., circumvention can occur even if the subject country is exporting more subject merchandise to the United States.

Upon remand, Commerce must reconsider or reasonably explain how it reached its conclusion regarding India.[14]

**3. CWP Import Decline During Inquiry Period**

A similar issue of arbitrariness arises from Commerce's reliance on the fact that "U.S. imports of CWP from Vietnam decreased annually during the entire period of inquiry, *i.e.*, 2017 to 2021" as support for a negative determination in the China Remand Results, while the same data point is not given similar consideration in the "pattern of trade" analyses for Korea and India. China Remand Results at 8 ("[C]omparison of the 2012-2016 to the 2017-2021 periods show that the quantity of U.S. imports of CWP from Vietnam in relation to the quantity [of] U.S. imports of CWP from the world increased from 7.9 percent to 8.8 percent. *However*, U.S. imports of CWP from Vietnam decreased annually during the entire period of inquiry, *i.e.*, 2017 to 2021.") (emphasis added) (footnote omitted); *cf.* Korea Remand Results at 7, 14–15; India Remand Results at 7, 15. With no explanation for the difference in its treatment of the CWP import data, Commerce reached opposite determinations with respect to the (b)(3)(A) factor in the China Remand Results, in which the data point was included, and the Korea and India Remand Results, in which the data point was excluded.

---

[14] As discussed above, the purpose of weighing the (b)(3) factors is to determine whether action is appropriate is under section 1677j(b)(1)(E), which is indeed a mandatory requirement under the statute. 19 U.S.C. § 1677j(b)(1)(E), (b)(3). Contrary to Defendant-Intervenor's claim, Oral Arg. 1:26:05–1:26:20, it is not the case that action is appropriate under the statute simply when "one coil of HRS" is formed into CWP. Neither is it the case that "any circumvention is illegal circumvention," Oral Arg. 1:26:20–1:26:35, such that action would necessarily be appropriate under section 1677j(b)(1)(E).

Commerce has failed to apply its methodology across these parallel proceedings in a non-arbitrary manner. Commerce enjoys wide discretion in its determinations, and the court will not reweigh the evidence in an effort to reconcile this analysis in the first instance to determine whether the (b)(3) factors satisfy the section 1677j(b)(1)(E) requirement. However, Commerce may not, without explanation, place significant weight on data points in some proceedings and minimize consideration of them in others, particularly when those data points are shared across all three proceedings.[15] For these reasons, the court must remand all three determinations for Commerce to reconcile or otherwise reconsider its conclusions.

**4. CWP Import Data Contradiction**

Relatedly, Commerce's characterizations of CWP imports into the United States from Vietnam as representing a "significant" increase in the case of Korea and India but only a "marginal" increase in the case of China are facially irreconcilable. *See* Korea Remand Results at 7; India Remand Results at 7; China Remand Results at 8. If Commerce treats identical facts differently across proceedings without explaining its basis for so doing, Commerce's actions appear arbitrary on their face. *See Cerro Flow*, 38 CIT at 1088; *SunPower Corp.*, 179 F. Supp. 3d at 1304–05. Because there is no discernable explanation for Commerce's inconsistent characterization of identical data

[15] As previously noted, Commerce must consider evidence that "fairly detracts" from the substantiality of the evidence. *CS Wind*, 832 F.3d at 1373. Similarly, it is no less important for Commerce to account for contrasting treatment of similar facts in parallel determinations in order to guard against arbitrariness.

points, Commerce's treatment of these facts cannot survive judicial review. *See SKF USA Inc.*, 263 F.3d at 1382.

**5. Conclusion**

Pursuant to the plain language of the statute, none of the section 1677j(b)(3) factors are dispositive on their own. But insofar as Commerce's analyses necessarily inform its determination whether "action is appropriate . . . to prevent evasion of [underlying antidumping or countervailing duty orders]" pursuant to 19 U.S.C. § 1677j(b)(1)(E), the agency must articulate a fact- and record-based rationale for each of its section 1677j(b)(3) findings, and proffer a logical nexus to its related subsection section 1677j(b)(1)(E) determination that is, at minimum, "reasonably discernable" to the court. *See State Farm*, 463 U.S. at 43. All three determinations are remanded for reconsideration in accordance with the above analyses.

**CONCLUSION AND ORDER**

In accordance with the foregoing, it is hereby

**ORDERED** that Commerce's Remand Results are remanded to the agency for reconsideration or further explanation consistent with this opinion; it is further

**ORDERED** that Commerce shall file a separate remand redetermination for each of the Remand Results on the docket of the appropriate case on or before February 22, 2027; it is further

**ORDERED** that subsequent proceedings shall be governed by CIT Rule 56.2(h); and it is further

**ORDERED** that any comments or responsive comments must not exceed 5,000 words.

/s/ Mark A. Barnett
Mark A. Barnett, Chief Judge

Dated: November 24, 2026
New York, New York